1   LATHAM & WATKINS LLP
   Pamela S. Palmer (SBN 107590)
2    *pamela.palmer@lw.com*
   Melinda M. Luthin (SBN 254071)
3    *melinda.luthin@lw.com*
  650 Town Center Drive, 20th Floor
4   Costa Mesa, California  92626-1925
  Telephone:  +1.714.540.1235
5   Facsimile:  +1.714.755.8290

6   LATHAM & WATKINS LLP
   Miles N. Ruthberg (SBN 086742)
7    *miles.ruthberg@lw.com*
   Jason J. Kim (SBN 221476)
8    *jason.kim@lw.com*
  633 W. Fifth Street, Suite 4000
9   Los Angeles, California  90071-2007
  Telephone:  +1.213.485.1234
10  Facsimile:  +1.213.891.8763

11  Attorneys for Defendant Michael P. McGee

12             **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | IN RE INTERNATIONAL RECTIFIER CORPORATION SECURITIES LITIGATION | CASE NO. CV 07-02544-JFW (VBKX)<br><br>**DEFENDANT MICHAEL P. McGEE'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   May 5, 2008<br>Time:   1:30 p.m.<br>Place:  Hon. John F. Walter, Ctrm. 16<br><br>Trial Date:  None<br><br>Consolidated Class Action<br>Complaint Filed:  04-17-2007 |

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

MCGEE NOTICE OF MOTION AND MOTION TO
DISMISS CONSOLIDATED COMPLAINT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.   STATEMENT OF FACTS AND ALLEGATIONS ..................................... 4

    A.    The Parties and Claims ................................................................. 4

    B.    IRF's Disclosures Regarding the Investigation and
        Restatement ................................................................................... 5

    C.    The Alleged Misrepresentations .................................................. 8

    D.    The Allegations Against McGee ................................................... 9

III.  ARGUMENT ............................................................................................. 13

    A.    Plaintiffs Must Satisfy Heightened Pleading Standards ................ 13

    B.    Plaintiffs Do Not Plead Scienter with Respect to McGee ............... 14

        1.    McGee's Position as CFO Does Not Demonstrate
            Scienter ........................................................................... 15

        2.    IRF's Restatement Does Not Demonstrate Scienter .............. 16

        3.    Signing SEC Filings and SOX Certifications Does
            Not Demonstrate Scienter ............................................... 17

        4.    Access to Unspecified Internal Reports Does Not
            Demonstrate Scienter ...................................................... 19

        5.    The Confidential Witnesses Do Not Demonstrate
            Scienter ........................................................................... 20

        6.    McGee's Stock Sales Do Not Support Scienter .................... 23

    C.    Plaintiffs Have Not Pled Control Liability ................................... 25

IV.   CONCLUSION ......................................................................................... 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

i

MCGEE NOTICE OF MOTION AND MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## CASES

4

*Abrams v. Baker Hughes, Inc.*,
   292 F.3d 424 (5th Cir. 2002) ........................................................... 17

5

6

*Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
   497 F.3d 546 (5th Cir. 2007) ...................................................... 18, 20

7

8

*Chill v. GE*,
   101 F.3d 263 (2d Cir. 1996) ........................................................... 17

9

10

*Deutschman v. Beneficial Corp.*,
   841 F.2d 502 (3d Cir. 1988) ........................................................... 24

11

12

*DSAM Global Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ..................................................... 3, 17

13

14

*Dura Pharms. Inc. v. Broudo*,
   544 U.S. 336 (2005) .......................................................................... 5

15

16

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ........................................................................ 13

17

*Ezra Charitable Trust v. Tyco Int'l, LTD*,
   466 F.3d 1 (1st Cir. 2006) .............................................................. 16

18

19

*Fin. Acquisition Ptnrs. v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) .......................................................... 17

20

*Garfield v. NCD Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ................................................... 2, 18

21

22

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ....................................................... 24

23

24

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) ......................................................... 25

25

26

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) .............................................. 19, 20, 21

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

ii

MCGEE NOTICE OF MOTION AND MOTION TO
DISMISS CONSOLIDATED COMPLAINT

*In re Apple Computer, Inc.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002) ....................................................passim

*In re Cree, Inc. Sec. Litig.*,
333 F. Supp. 2d 461 (D.N.C. 2004) ................................................................ 17

*In re GlenFed Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1995) .......................................................................... 13

*In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*,
103 Fed. Appx. 465 (3d Cir. 2004) ................................................................ 18

*In re Green Tree Sec. Litig.*,
61 F. Supp. 2d 860 (D. Minn. 1999) ............................................................... 16

*In re Guess?, Inc. Sec. Litig.*,
174 F. Supp. 2d 1067 (C.D. Cal. 2001) .......................................................... 17

*In re Hansen Natural Corp. Sec. Litig.*,
2007 U.S. Dist. LEXIS 84391 (C.D. Cal. 2007) ........................................... 18

*In re Hypercom Corp. Sec. Litig.*,
No. 05-0455, 2006 U.S. Dist. LEXIS 45482 (D. Ariz. July 5, 2006) ............. 18

*In re IMPAX Labs., Inc. Sec. Litig.*,
No. 04-4802, 2006 U.S. Dist. LEXIS 81420 (N.D. Cal. Mar. 1,
2006) ............................................................................................................... 18

*In re Interpool, Inc. Sec. Litig.*,
No. 04-321, 2005 U.S. Dist. LEXIS 18112 (D.N.J. 2005) .............................. 18

*In re Invision Tech. Inc. Sec. Litig.*,
No. C04-03181, 2006 U.S. Dist. LEXIS (N.D. Cal. Jan 24, 2006) ................ 18

*In re Lockheed Martin Corp. Sec. Litig.*,
272 F. Supp. 2d 944 (C.D. Cal. 2003) ............................................................ 19

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) ................................................................. 24

*In re Read-Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003) .................................................................... 15, 21

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ............................................................ 14, 20, 23

MCGEE NOTICE OF MOTION AND MOTION TO
DISMISS CONSOLIDATED COMPLAINT

*In re Software Toolworks, Inc.*,
  50 F.3d 615 (9th Cir. 1995) ............................................................................. 17

*In re United States Office Prods. Sec. Litig.*,
  326 F. Supp. 2d 68 (D.D.C. 2004) ................................................................... 17

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) .......................................................... 19, 23, 24

*Limantour v. Cray, Inc.*,
  432 F. Supp. 2d 1129 (W.D. Wash. 2006) ...................................................... 18

*Lipton v. PathoGenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .......................................................... 19, 24, 25

*McCall v. Scott*,
  239 F.3d 808 (6th Cir. 2001) ............................................................ 13, 23, 24

*Plevy v. Haggerty*,
  38 F. Supp. 2d 816 (C. D. Cal. 1998) .............................................................. 23

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d 671 (6th Cir. 2004) ........................................................................... 17

*Reiger v. Price Waterhouse Coopers LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000) .......................................................... 17

*Rogal v. Costello*,
  1992 U.S. Dist. LEXIS 22179 (N.D. Cal. 1992) ............................................ 17

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ........................................................................... 23

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999) .............................................................................. 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007) ..................................................................... 2, 14, 23

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194 (11th Cir. 2001) ....................................................................... 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

iv

MCGEE NOTICE OF MOTION AND MOTION TO
DISMISS CONSOLIDATED COMPLAINT

## STATUTES

15 U.S.C. § 78j(b) ................................................................................................ 5

15 U.S.C. § 78t(a) .......................................................................................... 5, 25

15 U.S.C. § 78u-4(b)(2) ................................................................................ 2, 13

## RULES

Fed. R. Civ. P. 8(a) ............................................................................................ 13

Fed. R. Civ. P. 8(d) ............................................................................................ 13

Fed. R. Civ. P. 9(b) ............................................................................................ 13

## REGULATIONS

17 C.F.R. § 240.13a-15(e) ................................................................................. 18

17 C.F.R. § 240.15d-15(e) ................................................................................. 18

17 C.F.R. §240.10b-5 ........................................................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

v

MCGEE NOTICE OF MOTION AND MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1   **TO THE COURT, AND TO EACH PARTY AND ITS ATTORNEYS OF**

2   **RECORD:**

3          PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Civil

4   Procedure 12(b)(6), Defendant Michael P. McGee ("McGee") will and hereby does

5   move to dismiss all claims against him in the Consolidated Class Action Complaint

6   ("Complaint") in the above-captioned action.  The hearing on the Motion will be at

7   1:30 p.m. on May 5, 2008, or as soon thereafter as the parties may be heard before

8   The Honorable John F. Walter in Courtroom 16 of the United States District Court

9   for the Central District of California, located at 312 N. Spring Street, Los Angeles,

10  California.  This Motion is made on the grounds that the Complaint fails to state a

11  claim under the pleading requirements of the Private Securities Litigation Reform

12  Act ("PSLRA"), 15 U.S.C. § 78u-4, and Federal Rule of Civil Procedure 9(b).

13         Count One under Section 10(b) of the Securities Exchange Act of

14  1934 fails to state a claim because, among other things, the allegations do not plead

15  fraudulent conduct or scienter by McGee as required by the PSLRA.  Count Two

16  under Section 20(a) for secondary liability fails to state a claim because, among

17  other things, the Complaint does not allege a primary violation of Section 10(b) by

18  any person or entity under the "control" of McGee.

19         PLEASE TAKE FURTHER NOTICE THAT McGee hereby joins in

20  the Motion to Dismiss filed on behalf of Defendant International Rectifier

21  Corporation ("IRF"), and all papers filed in support of that Motion.

22         This Motion is based on this Notice of Motion and Motion, the

23  accompanying Memorandum of Points and Authorities, the separately filed

24  Request for Judicial Notice (and exhibits thereto) and Declaration of Melinda M.

25  Luthin, the Motion to Dismiss and supporting papers filed on behalf of IRF, the

26  complete files and records in this action, and oral argument as the Court may

27  consider in deciding this Motion.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

1

MCGEE NOTICE AND MOTION TO DISMISS
CONSOLIDATED COMPLAINT

1     This Motion is made following a conference among counsel, pursuant

2 to Local Rule 7-3, held on February 7, 2008 in which counsel for McGee advised

3 counsel for Plaintiffs of McGee's intent to file this Motion to Dismiss and

4 discussed the basis for the Motion.

5 Dated:  March 6, 2008

6                                          LATHAM & WATKINS LLP
                                           Miles N. Ruthberg
7                                          Pamela S. Palmer
                                           Jason J. Kim
8                                          Melinda M. Luthin

9
                                           By /s/ Pamela S. Palmer
10                                            Pamela S. Palmer
                                              Attorneys for Defendant
11                                            Michael P. McGee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This is a securities fraud class action lawsuit filed by plaintiff investors against International Rectifier Corporation, Inc. ("IRF") – a power supply and semi-conductor manufacturer – and five individual defendants.  Plaintiffs sued on sheer speculation in April 2007 after IRF announced that an Audit Committee investigation had uncovered revenue accounting problems of undetermined magnitude at a foreign subsidiary.  In the ensuing months, IRF reported that a restatement would be forthcoming, and updated investors on further findings as the investigation continued.  By the time Plaintiffs finally filed their Consolidated Complaint ("Complaint") on January 14, 2008, IRF had reported that employees at its subsidiary in Japan had apparently stockpiled inventory in advance of customer orders, which resulted in premature recognition of sales revenue.  IRF's in-depth review had also identified accounting for restructuring and taxes that, in hindsight, IRF determined to be in error, but that involved no reported misconduct by anyone.

This Motion to Dismiss is brought on behalf of IRF's former CFO Michael P. McGee ("McGee").  Invoking "fraud by hindsight," Plaintiffs contend that McGee – given his title and role – must have known about the accounting errors and misconduct in Japan and, *ipso facto*, must have misrepresented IRF's financial results in order to fraudulently inflate the stock price.  Although Plaintiffs had more than nine months to investigate their claims, nothing in their prolix 182-page Complaint could support any rational inference that McGee was involved in, or directed, any misconduct that resulted in premature revenue recognition, or that he was aware of any such conduct, or that he was aware of any accounting or financial reporting errors of any kind.

As Plaintiffs themselves allege, IRF is an international corporation with operations and subsidiaries in the U.S., Europe, Asia and Mexico.  Complaint ¶¶ 47, 303-04.  As a matter of law, McGee cannot be held answerable for alleged

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

1

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

securities fraud based on misconduct by others in a far flung subsidiary, of which he had no knowledge or involvement.  Plaintiffs' claims against McGee typify the kind of speculative lawsuit that Congress sought to bar at the pleading stage under the Private Securities Litigation Reform Act ("PSLRA") by requiring plaintiffs to meet rigorous pleading requirements.  Under the PSLRA, Plaintiffs' claims against McGee must be dismissed absent particularized allegations of *fact* supporting a "strong inference" that he made misrepresentations with the fraudulent intent to deceive IRF's investors.  15 U.S.C. § 78u-4(b)(2).  As the Supreme Court recently held in *Tellabs*, a "strong inference" must be "cogent and at least as compelling as any opposing inference of non-fraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-05 (2007).  Plaintiffs' allegations do not support any inference of wrongdoing by McGee, let alone a "strong inference."  In summary, the Complaint's fatal pleading deficiencies include the following:

- Plaintiffs claim that McGee "knew" that IRF's financial reports were inaccurate because he signed SOX (Sarbanes-Oxley) certifications (which every public company CFO is required to sign), affirming his belief that internal controls were designed to give reasonable assurance of accurate financial reporting.  Courts have uniformly rejected this bootstrapping argument:  SOX certifications do not imply CFO omniscience or infallibility.  Liability for fraud requires intent to deceive investors.  If internal controls prove to be deficient in hindsight, or are circumvented by others, this does not state a claim for fraud against a signing CFO.  *See Garfield v. NCD Health Corp.*, 466 F.3d 1255, 1265-67 (11th Cir. 2006); *see* discussion *infra* Section III.B.3.

- Likewise, the fact that accounting errors under GAAP (Generally Accepted Accounting Principles) were found at IRF *in hindsight* does not establish that McGee or anyone else knew that IRF's financial statements were incorrect when originally issued.  A restatement to correct accounting errors is fully consistent with good faith efforts to get the accounting right in the first place.

1   *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir.

2   2002) ("[T]he mere publication of inaccurate accounting figures, or a failure to

3   follow GAAP, without more, does not establish scienter." (Citation omitted.)); *see*

4   discussion *infra* Section III.B.2.

5   •   Plaintiffs do not identify any contemporaneous document or

6   information in the possession of McGee that exposed improper practices or

7   premature revenue recognition in Japan or anywhere else, or any other error in

8   IRF's GAAP accounting or financial reporting.  Plaintiffs' allegation that McGee

9   reviewed unspecified reports from IRF's business information and reporting

10   systems (such as the "Vision" database, Complaint ¶ 52) is toothless:  One would

11   expect any manufacturing and sales business to have such information systems,

12   and for corporate officers and employees to review reports.  Plaintiffs cannot plead

13   securities fraud by pointing to the existence of routine business records.  *See*

14   discussion *infra* Section III.B.4.

15   •   None of Plaintiffs' anonymous commentators (the so-called

16   "Confidential Witnesses" or "CWs") report any contemporaneous information in

17   the hands of McGee that contradicted IRF's financial reports.  The CWs' job

18   descriptions generally place them multiple levels below McGee in the IRF

19   corporate hierarchy.  Only four of the sixteen CWs even mention McGee (CWs 1,

20   3, 8 and 9).  Only one (CW3) ever allegedly reported to McGee – but that was in

21   2001-2003 before the alleged Class Period.  *Id.* ¶ 98.  None of the CWs purport to

22   have heard any relevant conversations with McGee, or to have provided him with

23   any documents or other information that contradicted IRF's financial reports, or

24   that exposed misconduct affecting financial reporting, or any errors in the

25   application of GAAP to restructuring charges, taxes, or any other matter.  *See*

26   discussion *infra* Section III.B.5.

27   •   Although allegations of motive are legally insufficient to

28   plead fraud, Plaintiffs have not even alleged a credible motive theory against

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

3

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1   McGee.  They weakly assert that McGee was motivated to inflate the stock price in

2   order to sell IRF securities (*id*. ¶¶ 290-92), but Plaintiffs can identify only two

3   occasions in the alleged four-year Class Period when McGee even sold stock (*id*. at

4   p. 159), and they allege nothing remarkable or remotely suspicious about these

5   sales.  Both sales occurred years before IRF's April 2007 investigation and

6   announcement of revenue problems at a foreign subsidiary.  The trading records on

7   which Plaintiffs necessarily rely show that McGee was merely exercising stock

8   option compensation – as he was entitled and expected to do – and that he

9   otherwise maintained his holdings throughout the Class Period, remaining very

10  much invested in IRF.  Luthin Decl. ¶¶ 5, 10-12; *see* discussion *infra*

11  Section III.B.6.  In sum, Plaintiffs' allegations against McGee do not plead fraud

12  and must be dismissed.

13  **II.    STATEMENT OF FACTS AND ALLEGATIONS**

14       **A.    <u>The Parties and Claims</u>**

15            IRF "is a designer, manufacturer and marketer of power management

16  product devices that use power semiconductors . . . including computers,

17  communications networking, consumer electronics, energy-efficient appliances,

18  lighting, satellites, launch vehicles, aircraft and automotive diesel injection."

19  Complaint ¶ 1.  The individual defendants are current and former IRF officers

20  and/or directors:  Eric Lidow (founder and Chairman of the Board), Alexander

21  Lidow (former CEO and director), Michael P. McGee (former CFO), Robert Grant

22  (former Executive Vice President, Global Sales and Marketing), Ivo Jurek (former

23  Vice President, International Rectifier Automotive Products) and Fumihide Esaka

24  (former Vice President of IRF's Japanese subsidiary).  *Id*. ¶¶ 28-33.

25            Plaintiffs purport to represent a class of investors who bought IRF

26  stock between July 31, 2003 and August 29, 2007 ("Class Period").  Plaintiffs

27  presumably designed the exceptionally lengthy Class Period to encompass the

28  quarterly and annual financial statements that IRF anticipates will be restated.  *Id*.

¶¶ 266, 272, 280-81 (plan to restate periods ending September 30, 2003 through December 31, 2006).  The Class Period opens with IRF's report on July 31, 2003 of its fourth quarter 2003 results.[1]  *Id.* ¶ 110.  The Class Period ends, oddly, on August 29, 2007 when IRF announced that Alex Lidow, the CEO, would take a leave of absence:[2]  Plaintiffs declare that this disclosure "remov[ed] the artificial inflation" in the stock price.  *Id.* ¶¶ 300-01.

Plaintiffs lump all of the defendants together and claim that they fraudulently misrepresented IRF's financial results and position in press releases, SEC filings and during investor calls during the alleged Class Period.  *Id.* ¶¶ 110-265.  Plaintiffs accuse everyone of securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5.  *Id.* ¶¶ 326-29.  They claim that each individual defendant is secondarily liable as a "controlling person" of IRF under Section 20(a), an alleged primary violator, 15 U.S.C. § 78t(a).  *Id.* ¶¶ 334-39.

**B.**  **IRF's Disclosures Regarding the Investigation and Restatement**

Plaintiffs' January 14, 2008 Complaint is based on a series of disclosures by IRF regarding its investigation and findings made between April 9, 2007 and November 13, 2007.  Plaintiffs' claims against McGee are based on speculative inferences and conclusions that these disclosures do not logically or factually support.  We briefly recap IRF's disclosures:

---

[1]   IRF has a June 30 fiscal year-end for financial reporting purposes. Accordingly, IRF's first quarter (1Q) is July 1-September 30, its second quarter (2Q) is October 1-December 31; its third quarter (3Q) is January 1-March 31, and its fourth quarter (4Q) is April 1-June 30.

[2]   Most of the disclosures on which Plaintiffs rely were made by IRF after the close of the Class Period.  Plaintiffs evidently selected the August 29 disclosure of Lidow's leave of absence as the end of the Class Period, however, because IRF's stock price conveniently dropped the next day, but did not react as serviceably (for Plaintiffs' purposes) to IRF's later disclosures.  This raises a significant issue concerning Plaintiffs' ability to establish the required element of "loss causation."  *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

5

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1    On April 9, 2007, IRF issued a press release advising investors that an

2    investigation conducted under the auspices of the Audit Committee had found

3    accounting "irregularities" at a foreign subsidiary, including premature revenue

4    recognition on product sales.  Complaint ¶ 266; Request for Judicial Notice

5    ("RJN"), Exh. D.  IRF warned that certain financial statements should not be relied

6    upon while the Audit Committee and IRF's management worked to determine the

7    extent of the errors and the need for any restatement.  *Id.*  The Audit Committee

8    concluded that there were material weaknesses in internal controls at the foreign

9    subsidiary.  *Id.*  Plaintiffs rushed to the courthouse with their first complaint on

10   April 17, 2007.  *Koller v. IRF*, Case No. CV-07-2544 JFW.

11   On May 11, 2007, IRF reported that it would be late filing its Form

12   10-Q for the third quarter of 2007 (March 31, 2007), as the Audit Committee's

13   investigation was ongoing.  Complaint ¶ 272; RJN, Exh. E.  By then, the

14   investigation had found that from "time to time" "unsubstantiated orders" were

15   entered at the foreign subsidiary, that product sales had been inappropriately

16   recorded, and product had been shipped to warehouses "not on the Company's

17   logistical systems."  *Id.*  IRF listed additional financial statements that should not

18   be relied upon while the Audit Committee's investigation continued.

19   On August 31, 2007, IRF reported that it would be late filing its Form

20   10-K for year-end 2007 (June 30, 2007) in light of the continuing investigation and

21   determination that various errors would require restatement.  Complaint ¶¶ 280,

22   281; RJN, Exhs. F, G.  IRF identified the location of the problematic "foreign

23   subsidiary" as Japan, and said that members of the "Japanese management team"

24   had been put on administrative leave.  IRF explained that the Japanese subsidiary

25   had "circumvented established controls and processes to record false or premature

26   sales by creating fictitious customer purchase orders in the existing control

27   system."  Complaint ¶ 281; RJN, Exh. G.  IRF said that it was "reconstructing

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

6

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1  certain financial records and accounts" of the Japanese subsidiary, that the records
2  were "primarily in a foreign language," and that the process would take time. *Id*.

3      IRF's August 31 report also advised investors of two accounting
4  issues completely *unrelated* to the Japanese subsidiary, which involved no hint of
5  misconduct by anyone:  One, IRF determined that certain charges associated with
6  IRF's restructuring initiatives starting in 2002 should be reclassified in other line
7  items of the income statement.  *Id*.  That restructuring initiative concerned IRF's
8  2002 decision to exit some of its businesses over the course of several years and
9  take one-time charges for costs of closing factories, severance pay, and other
10  expenses as incurred.  RJN, Exh. G.  Two, while preparing for adoption of FASB
11  No. 48 ("Accounting for Uncertainty in Income Taxes") for the quarter ended
12  September 30, 2007, IRF identified issues in its transfer pricing methodology for
13  intercompany transactions that could change its tax liability.  *Id*.  In contrast to
14  IRF's report on the matters uncovered at the Japanese subsidiary, *the report on*
15  *accounting for restructuring and tax suggests no improper conduct*.

16      Finally, on November 13, 2007, IRF reported that it would be late
17  filing its Form 10-Q for the first quarter of 2008 (September 30, 2007), given the
18  ongoing investigation and restatement effort.  Complaint ¶ 288; RJN, Exh. H.  IRF
19  explained that reconstruction of the Japanese subsidiary's financial records was
20  complex and relied in part on third-party records and confirmations.  IRF reported
21  that some of the improper sales invoices had been sold pursuant to financing
22  facilities, and those sales would be restated as short-term loans.  *Id*.  IRF also
23  reported, however, that the improper invoices had been "satisfied in [the] ordinary
24  course," thus indicating that the sales were prematurely recognized, but ultimately
25  were consummated and paid by customers.  *Id*.

26      IRF's November 13 report also updated investors on the restructuring
27  and tax accounting matters.  IRF had determined to reclassify certain expenses
28  from restructuring impairment to other income statement line items (*i.e.*, $31

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

7

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

million of costs from consolidation of facilities would be reclassified as "cost of goods sold" and another $20 million would be reclassified in other line items).  *Id.* In addition, IRF reported that, based on analysis of its transfer pricing methodology (with the help of "an independent accounting firm"), IRF made a qualified determination to pay $74 million in additional U.S. federal and state taxes and would be looking for refunds from other countries.  *Id.*  Again, IRF's November 13 report does not suggest any improper conduct by anyone with respect to IRF's prior financial reporting on these restructuring and tax matters.

### C.   The Alleged Misrepresentations

Plaintiffs advance five theories upon which they base their allegations that IRF and the individual defendants committed securities fraud by fraudulently misrepresenting IRF's financial results during the Class Period.  Four of the theories are based on IRF's disclosures, discussed above.  Complaint ¶¶ 3, 36. Plaintiffs reach back to 2006 for their fifth fraud theory.  On May 15, 2006, IRF had announced that it had reviewed its classification of excess tax benefits from the exercise of stock options under newly adopted SFAS No. 123R (part of GAAP). Although the tax benefits were related to compensation (generally an operating expense), IRF determined that $4.3 million in excess tax benefits should be reclassified in its statement of cash flows, under technical accounting rules, as cash provided by "financing activities" rather than by "operating activities."  *Id.* ¶ 102; RJN, Exh. B.  There was no suggestion whatsoever of any improper conduct by anyone in connection with this reclassification.

Plaintiffs' five theories consist, in their argumentative terminology, of the following:

1.   "creating fictitious purchase orders and recognizing revenue for bogus shipments of product;"
2.   "selling fictitious accounts receivables;"
3.   "categorizing ordinary operating expenses as one-time restructuring costs;"

4.   "underreporting the Company's taxes and exposing the Company to recourse by governmental agencies;" and

5.   "incorrectly recording tax benefits from the exercise of stock options as cash flow from operations rather than cash flow from financing."

Plaintiffs draw no distinction between the misconduct in Japan and other accounting corrections identified by IRF. Rather, they declare all accounting that is subject to IRF's restatement as "fraudulent" and allege the usual boilerplate that "defendants" were engaged in a "fraudulent scheme." Complaint ¶¶ 3, 35, 36, 39. Apart from IRF's own disclosures, the only factual allegations on which Plaintiffs rely are statements by anonymous commentators (CWs) who add nothing of significance as to McGee. The CWs either make benign observations about how IRF ran its business (e.g., *id*. ¶¶ 52, 303-09, miscellaneous commentary), offer gossipy irrelevant opinions (*id*. ¶¶ 107-08, CW8's opinions on personnel decisions), or pile on top of IRF's already detailed disclosures about the alleged misconduct in Japan (*id*. ¶¶ 54-63, CWs 4, 5, and 6), which, according to CW1, involved Tijuana too (*id*. ¶¶ 48-51, CW1).

Plaintiffs take their fraud accusations for a tedious march through each of IRF's quarterly and annual press releases, investor calls and SEC filings from the fourth quarter of 2003 (reported July 23, 2003) through the second quarter of 2007 (reported January 25, 2007) – *i.e.*, all of the financial reporting periods to be restated. *Id*. ¶¶ 110-265. For each disclosure, they allege that defendants misrepresented the financial results by means of some or all of the five alleged fraud theories. *Id*. ¶¶ 114, 122, 130, 139 (and so on). Starkly missing from Plaintiffs' allegations, however, are any facts that McGee had any knowledge or contemporaneous information that IRF's financial reporting was inaccurate.

D.   **The Allegations Against McGee**

Indeed, Plaintiffs provide few particulars as to McGee. They recite his title and tenure as IRF's CFO from 1993 until July 2, 2007. *Id*. ¶ 30. Plaintiffs do not allege (nor could they) that McGee had any particular operating

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

9

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1   responsibilities in IRF's Japanese subsidiary.  Plaintiffs make an irrelevant

2   observation that, from 2001 to 2003 (before the Class Period), McGee was an

3   officer of a separate Japanese company in which IRF held an investment interest.

4   *Id*.  They also allege IRF's employment action in terminating McGee.  *Id*.  While

5   this may suggest employer dissatisfaction, it provides no factual or legal basis to

6   infer any wrongdoing whatsoever by McGee, much less fraudulent conduct.

7          Since Plaintiffs have no substantive allegations against McGee, they

8   rely on boilerplate assertions that he "participated in drafting and/or approved the

9   Company's false and misleading press releases," "met with analysts and the media

10  to discuss the Company," and "participated in the Company's conference calls

11  with analysts and investors."  *Id*.  They observe that McGee signed SOX

12  certifications and SEC filings (as required of every public company CFO), and

13  attach his SOX certifications as exhibits to the Complaint.  *Id*.  As discussed

14  below, it is well established that these certifications do not show scienter where, as

15  here, the allegations do not demonstrate that the signer acted fraudulently by

16  knowingly or recklessly disregarding any material error in the financial statements

17  when the certifications were signed.

18                                        ***

19          Taking each of Plaintiffs' five fraud theories in turn, their allegations

20  are patently insufficient to show knowledge or participation by McGee:

21          <u>Fraud Theory No. 1</u> (premature sales, *id*. ¶¶ 41-65):  Plaintiffs

22  reiterate IRF's disclosures and add commentary by CWs who reported at several

23  levels below McGee in IRF's corporate hierarchy.  *Id*.  None of these CWs identify

24  any communications with McGee, or any information in McGee's possession, that

25  would have exposed financial misreporting in Japan or anywhere else.  CW3 says

26  that McGee reviewed reports from IRF's "Vision" database which provided sales

27  forecasts, production data, purchase orders, shipments and inventory data from

28  around the world.  *Id*. ¶ 52.  This is precisely the kind of information, however, that

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1  a CFO and other officers and employees of an international manufacturing

2  company would be expected to review on a daily basis.  Plaintiffs do not identify

3  any specific report from this system – much less any report provided to McGee –

4  that exposed any fraud or misreporting of sales, inventory, or anything else in

5  Japan, Tijuana, or anywhere else in the world.[3]

6  Fraud Theory No. 2 (sales of "fictitious" receivables, *id*. ¶¶ 66-73):

7  Plaintiffs quote from IRF's November 13, 2007 report that the Japanese subsidiary

8  had sold some premature invoices (characterized as "fictitious") to financing

9  sources.[4]  They say nothing to suggest, however, that McGee had any

10  contemporaneous information, knowledge, or involvement in these sales.

11  Fraud Theory No. 3 (misclassification of certain restructuring costs,

12  *id*. ¶¶ 74-91):  Again, Plaintiffs quote from IRF's November 13 report that certain

13  charges for restructuring would be reclassified to operating expenses (*i.e.*, as "costs

14  of goods sold" and other items).  *Id*.; *see also* RJN, Exh. H (describing IRF's 2002

15  restructuring initiative to exit certain businesses).  Plaintiffs contend that the initial

16  misclassification "inflated" IRF's gross margins (Complaint ¶ 87), but fail to show

17  that McGee was personally at fault for the error, much less engaged in any conduct

18  intended to deceive investors.  Plaintiffs cite only alleged comments by CW1, who

19  says that defendant Jurek improperly reported restructuring expenses for his area

20  (automotive division), and that Jurek reported to a non-defendant, Mike Love, who

21

22

23  [3]  Plaintiffs credit CW1 with asserting that "shipments made without a purchase order would show up on the Vision system as shipments without a

24  corresponding customer order" (*id*. ¶ 52), but Plaintiffs do not identify any such report, put any such report in the hands of McGee, or plead any facts to

25  demonstrate how missing customer numbers should have alerted McGee to any accounting or financial reporting errors or fraud.

26  [4]  Plaintiffs do not seem to have a grasp on the financial statement impact, if any, of this alleged fraud.  Plaintiffs make the internally inconsistent allegation that

27  these sales somehow disguised "poor earnings" (*id*. ¶ 73), yet allege (as IRF

28  disclosed) that the invoices sold were paid "in [the] ordinary course" (*id*. ¶ 68).

1    in turn reported to McGee.  *Id.* ¶¶ 88-91.  Even if Jurek misclassified the expenses

2    in his division, these allegations do not show that McGee was so informed.

3            Fraud Theory No. 4 (inter-company transfer tax, *id.* ¶¶ 92-100):

4    Plaintiffs reiterate IRF's report on its changed reassessment of potential income tax

5    liability based on allocation of profits among different subsidiaries and products.

6    IRF's report, however, suggested no wrongdoing by anyone.  Beyond their

7    accusatory conclusions, Plaintiffs say only that, according to CW3, McGee and the

8    former Director of Tax who reported to McGee (non-defendant Chip Morgan) had

9    developed a transfer tax "matrix" used to allocate profits among IRF business

10   units.  *Id.* ¶¶ 98, 100.  This allegation does not show that the "matrix" was

11   misleading or inaccurate, much less that McGee or anyone else created or used it

12   fraudulently to miscalculate or misrepresent IRF's tax liability.

13           Fraud Theory No. 5 (classification of tax benefits from stock option

14   compensation expense, *id.* ¶¶ 101-06):  When IRF determined in May 2006 to

15   reclassify $4.3 million in tax benefits from operating cash flow to financing cash

16   flow, IRF noted that the error was caused by a material weakness in internal

17   controls over presentation of cash flow.  *Id.* ¶ 103.  Plaintiffs leap from here to the

18   baseless inference that McGee therefore misrepresented the adequacy of IRF's

19   internal controls in his SOX certifications.  Plaintiffs allege nothing, however, to

20   suggest that McGee had any information that at the time that cash flows should be

21   reported any differently, or that there were any deficiencies in internal controls.

22           McGee's Alleged Motives:  Plaintiffs attempt to shore up their

23   deficient scienter allegations by claiming that McGee was motivated to falsely

24   report IRF's financial results in order to profit on sales of stock at inflated prices.

25   *Id.* ¶ 292.  They allege that McGee sold IRF stock twice during the alleged Class

26   Period – on November 12, 2004 and August 10, 2005.  *Id.* at p. 159.  These sales,

27   however, do not support Plaintiffs' spurious scienter allegations.  The sales took

28   place years before IRF announced its discovery of any accounting errors.  *Id.*

1   Plaintiffs make no allegations to suggest that McGee knew about those errors when

2   he sold stock.  The public trading information upon which Plaintiffs rely shows

3   that there was nothing suspicious, unusual or improper about the timing or amount

4   of McGee's sales.  *See* Luthin Decl. ¶ 10 and RJN, Exhs I-T. McGee simply

5   exercised stock options paid to him as compensation, as he was entitled and

6   expected to do.  *McCall v. Scott*, 239 F.3d 808, 825 (6th Cir. 2001) (stock trading

7   by insiders is normal, lawful, and expected).

8   **III.   ARGUMENT**

9         **A.   Plaintiffs Must Satisfy Heightened Pleading Standards**

10               To state a securities fraud claim against McGee, Plaintiffs must meet

11   the rigorous pleading standards established by the PSLRA, which are higher than

12   under Federal Rule 9(b).[5]  Even under Rule 9(b), "a plaintiff must set forth, as part

13   of the circumstances constituting [the defendant's] fraud, …" "an explanation as to

14   why the disputed statement was untrue or misleading <u>when made</u>."  *In re GlenFed*

15   *Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1995) (emphasis in original).

16   "[T]his requires pleading facts that by any definition are 'evidentiary.'"  *Id.* at

17   1548, n.7.  The PSLRA raises the bar by requiring Plaintiffs to allege "with

18   particularity facts giving rise to a strong inference" that the defendant acted with

19   "the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The "required state of

20   mind" for violation of Section 10(b) is scienter – *i.e.*, the "intent to deceive,

21   manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12

22   (1976.  In the Ninth Circuit, the pleading of "intent to deceive" must be shown "in

23   great detail, [by] facts that constitute strong circumstantial evidence of deliberately

24   _____

25   [5]   Plaintiffs are not excused from the most basic pleading requirement that the
     Complaint set forth "a short and plain statement of the claim showing that the
     pleader is entitled to relief" (Fed. R. Civ. P. 8(a)), and that "[e]ach allegation …
26   be simple, concise, and direct."  *Id.* 8(d).  Plaintiffs' verbose Complaint
     attempts to substitute size for substance in violation of Rule 8, Rule 9 and the
27   PLSRA.  *See May v. Borick*, 1997 WL 3166 *8 (C.D. Cal. 1997) (dismissing
     securities fraud complaint citing Rule 8).

28

1  reckless or conscious misconduct." *In re Silicon Graphics, Inc. Sec. Litig.*, 183

2  F.3d 970, 974 (9th Cir. 1999).  Those facts must "come closer to demonstrating

3  intent, as opposed to mere motive and opportunity." *Id.*

4          Under *Tellabs*, when assessing the adequacy of factual allegations of

5  scienter against McGee, this Court must consider "not only inferences urged by the

6  plaintiff[s]," but also "competing inferences" and "non-culpable explanations"

7  urged by McGee that may be "rationally drawn from the facts alleged." *Tellabs*,

8  127 S. Ct. at 2504-05.  The "inference of scienter must be more than merely

9  plausible or reasonable – it must be cogent and at least as compelling as any

10 opposing inference of non-fraudulent intent." *Id.*  The Court must also take into

11 account documents referenced in the Complaint, such as IRF's disclosures, and

12 matters subject to judicial notice, such as McGee's publicly available stock trading

13 records. *Id.* at 2509; *see* RJN.  Plaintiffs' boilerplate assertions and unsupported

14 contentions and conclusions fail to meet their pleading burden.

15         **B.**     <u>**Plaintiffs Do Not Plead Scienter with Respect to McGee**</u>

16         Plaintiffs proceed from the premise that IRF's expected restatement is

17 an admission that its earlier financial statements were materially inaccurate.

18 Accordingly, Plaintiffs assume that each time McGee signed IRF's SEC filings and

19 SOX certifications, or recited IRF's financial results during conference calls,

20 McGee, *ipso facto*, made a material misstatement or omission.  Obviously,

21 however, statements that turn out, in hindsight to have been incorrect or mistaken,

22 unbeknownst to the speaker, are not fraudulent.  Plaintiffs must allege facts

23 demonstrating that, when McGee made each of the statements charged to him, he

24 knew, or was "deliberately reckless" or "consciously disregarded" that the

25 statements were materially misleading. *Silicon Graphics*, 183 F.3d at 974.

26         As discussed above, Plaintiffs assert five bases on which IRF's

27 financial reports were inaccurately stated:  (1) premature sales in Japan, (2) sales of

28 "fictitious" receivables, (3) misclassification of certain restructuring charges,

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

14

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1   (4) under-reporting income tax obligations, and (5) misclassification of tax benefits

2   on stock option compensation.  Plaintiffs' claims against McGee fail because they

3   do not (and cannot) show that McGee had any contemporaneous information or

4   knowledge of any of these matters when reporting on IRF's financial results.

### 1.      McGee's Position as CFO Does Not Demonstrate Scienter

6           McGee's position as CFO does not support an inference that he knew

7   about any of the alleged operational, accounting and financial reporting issues later

8   reported by IRF as a result of its investigation.  The federal securities laws do not

9   require CFOs to be omniscient with respect to all activities and decisions within a

10   corporate enterprise that may impact accounting or financial reporting.  The

11   unreasonableness of any such standard is especially clear where, as here, the

12   company is an international corporation with far flung operations and subsidiaries

13   in the U.S., Europe, Asia and Mexico.  *Id.* ¶¶ 47, 303-04.  McGee cannot be liable

14   under Section 10(b) for matters of which he had no knowledge or involvement.

15          The Ninth Circuit's decision in *In re Read-Rite Corp. Securities*

16   *Litigation,* 335 F.3d 843 (9th Cir. 2003), is instructive.  The Ninth Circuit <u>rejected</u>

17   the notion that even "facts critical to a business's core operations or an important

18   transaction generally are so apparent that their knowledge may be attributed to …

19   key officers."  *Id.* at 848.  Similarly, in *In re Apple Computer, Inc.*, the court

20   rejected allegations that senior officers had a "hands on management style" and

21   that the CEO "runs every aspect of the business" as sufficient to plead their

22   knowledge or involvement with respect to the particular matters at issue:

23                  <u>It is not enough</u> for Plaintiffs to allege that Defendants

24                  <u>could have known</u> about the [] problems, <u>or even</u> that

25                  they <u>should have known</u> about them.  <u>Plaintiffs must</u>

26                  <u>allege something approaching actual knowledge</u> on the

27                  part of [senior officers] who made statements regarding

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

15

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1    the company.  Because they do not, their claim regarding

2    alleged misrepresentations [] fails.

3  *In re Apple Computer, Inc.*, 243 F. Supp. 2d 1012, 1026 (N.D. Cal. 2002)

4  (emphasis added); *see also Ezra Charitable Trust v. Tyco Int'l, LTD*, 466 F.3d 1, 9

5  (1st Cir. 2006) ("While … chief financial officer, might be expected to have some

6  general supervisory role over the accounting issues … there is no indication that he

7  was aware of any impropriety").  McGee's position as CFO did not infuse him

8  with knowledge of any accounting or financial reporting errors, much less of

9  misconduct by others to "circumvent established controls" over IRF's financial

10  accounting and financial reporting.  Complaint ¶ 281.  In short, McGee's CFO title

11  does not carry the ball forward on Plaintiffs' burden to plead scienter.

12    **2.    IRF's Restatement Does Not Demonstrate Scienter**

13    The fact that IRF's financial statements will be restated provides no

14  basis to infer that McGee had contemporaneous knowledge or information that the

15  original financial statements were incorrect.  Courts overwhelmingly have rejected

16  Plaintiffs' attempts to leverage restatements, *per se*, into securities fraud claims.

17  As shown below, Plaintiffs must demonstrate with particular factual allegations

18  that the defendant who made the original financial disclosure acted "with scienter."

19    Restatements are matters of GAAP accounting (Statement of

20  Financial Accounting Standards No. 154), and are defined as the revision of

21  previously issued financial statements "to reflect the correction of an **error** in

22  those financial statements."  RJN, Exh. U, at p. 3 (emphasis added).  "[T]he

23  purpose of a restatement is to correct mistakes or oversights."  *In re Green Tree*

24  *Sec. Litig.*, 61 F. Supp. 2d 860, 877, n.21 (D. Minn. 1999).  Thus, a restatement is

25  fully consistent with honest error and "is not an admission that defendants

26  knowingly made accounting mistakes or overlooked material information."  *Id.*

27    In accordance with these principles, the cases are legion in the Ninth

28  Circuit and elsewhere that "the mere publication of inaccurate accounting figures,

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

16

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1    or a failure to follow GAAP, without more, does not establish scienter." *DSAM*

2    288 F.3d at 391 (quoting *In re Software Toolworks, Inc.*, 50 F.3d 615, 627-28 (9th

3    Cir. 1995)); *In re Guess?, Inc. Sec. Litig.*, 174 F. Supp. 2d 1067, 1078 (C.D. Cal.

4    2001) ("violations of GAAP are just as consistent with the existence of an

5    accounting problem of unknown scope as they are with intentions to hide the

6    performance of the company"); *Reiger v. Price Waterhouse Coopers LLP*, 117 F.

7    Supp. 2d 1003, 1009-10 (S.D. Cal. 2000) ("Violations of GAAP or GAAS,

8    standing alone, … provide no specific facts upon which a court can infer … state

9    of mind").[6]  IRF's restatement does not plead scienter against McGee.

10              **3.    Signing SEC Filings and SOX Certifications Does Not**

11                   **Demonstrate Scienter**

12              Plaintiffs misplace reliance on the fact that McGee signed IRF's

13   quarterly and annual SEC filings and SOX certifications.  *See, e.g.*, Complaint ¶¶

14   37, 115, 117, 123, 124 (and so on).  Those signatures were required by SEC rules

15   _____

16   [6]   *Acccord Fin. Acquisition Partners. v. Blackwell*, 440 F.3d 278, 290 (5th Cir.
     2006) ("failure to follow accounting standards, without more, does not establish

17   scienter"); *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) (no
     scienter on part of chief financial officer based on "the mere publication of

18   inaccurate accounting figures or failure to follow GAAP"); *PR Diamonds, Inc.
     v. Chandler*, 364 F.3d 671, 684 (6th Cir. 2004) ("a strong inference of scienter

19   cannot be drawn from speculative and conclusory allegations of GAAP
     violations"); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1207 (11th Cir.

20   2001) ("allegations of violations of GAAS or GAAP, standing alone, do not
     satisfy the particularity requirement of Rule 9(b)"); *Chill v. GE*, 101 F.3d 263,

21   269 (2d Cir. 1996) ("allegations of a violation of GAAP provisions or SEC
     regulations, without corresponding fraudulent intent, are not sufficient to state a

22   securities fraud claim"); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d
     Cir. 1999) ("[Plaintiff]'s arguments with regard to [defendant]'s accounting

23   irregularities … by themselves, appear to amount to allegations of 'fraud by
     hindsight,' which this Court has rejected as a basis for a securities fraud

24   complaint"); *In re United States Office Prods. Sec. Litig.*, 326 F. Supp. 2d 68,
     77 (D.D.C. 2004) (the "fact that [the company] had to restate earnings pursuant

25   to an SEC rule does not give rise to a strong inference of scienter"); *Rogal v.
     Costello*, 1992 U.S. Dist. LEXIS 22179, at *5 (N.D. Cal. 1992) ("accounting

26   allegations" failed to satisfy Rule 9(b) where plaintiffs did not "state any factual
     basis for their conclusions that defendants have committed fraud in preparing

27   their financial statements."); *In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461,
     477 (D.N.C. 2004) ("[m]ere allegations that statements in one report should

28   have been made in earlier reports do not make out a claim of securities fraud").

1    and regulations governing public company SEC filings.[7]  While signers must take

2    their duties seriously, the fact of signing provides no logical basis to infer that a

3    signer knew the underlying disclosures were false or misleading – to the contrary,

4    a more compelling inference is that the signer was unaware of any material

5    misstatement.  If Plaintiffs could point to SOX certifications and SEC filings to

6    demonstrate scienter, then "scienter would be established in every case where there

7    was an accounting error or auditing mistake made by a publicly traded company,

8    thereby eviscerating the pleading requirements for scienter set forth in the

9    PSLRA."  *In re Hansen Natural Corp. Sec. Litig*, 2007 U.S. Dist. LEXIS 84391, at

10   *47-48 (C.D. Cal. 2007) (quoting *Central Laborers' Pension Fund v. Integrated

11   Electrical Servs., Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)).  Accordingly, the fact

12   that an officer signs public disclosures is not probative unless the signer acted with

13   scienter – *i.e.*, knowledge or deliberate recklessness – that the underlying

14   disclosures were materially false.  *See Garfield*, 466 F.3d at 1266.[8]  McGee's

15   signature on SEC filings and SOX certifications does not plead scienter.

---

7   SOX certifications are mandatory under Exchange Act Rules 13a-14 and 13a-15(e) and (f), 17 C.F.R. § 240.13a-15(e), 17 C.F.R. § 240.15d-15(e) and do not provide a shortcut for pleading scienter.  *Garfield*, 466 F.3d at 1265-67.

8   *Accord In re Interpool, Inc. Sec. Litig.,* No. 04-321, 2005 U.S. Dist. LEXIS 18112, at *49 (D.N.J. 2005) ("[T]he fact that Defendants signed financial disclosures indicating that they complied with GAAP does not imply that they made misstatements with scienter"); *In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.*, 103 Fed. Appx. 465, 470 (3d Cir. 2004) (signature stating that defendants complied with GAAP does not show that they knew procedures violated GAAP); *Limantour v. Cray, Inc.*, 432 F. Supp. 2d 1129, 1160 (W.D. Wash. 2006) ("Plaintiffs must allege not only that the . . . SOX 302 certifications were false or misleading, but also that Defendants . . . were deliberately reckless in issuing such statements at the time."); *In re Hypercom Corp. Sec. Litig.*, No. 05-0455, 206 U.S. Dist. LEXIS 45482, *36-37 (D. Ariz. July 5, 2006) ("an incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter"); *In re Invision Tech. Inc. Sec. Litig.*, No. C04-03181, 2006 U.S. Dist. LEXIS 12166, *21 (N.D. Cal. 2006)  (plaintiffs must allege "facts concerning actual knowledge on the part of the . . . Defendants" for a SOX certification to suggest scienter); *In re IMPAX Labs., Inc. Sec. Litig.*, No. 04-4802, 2006 U.S. Dist. LEXIS 81420, *22-24 (N.D. Cal. Mar. 1, 2006) (attempting to allege scienter from text of SOX certification is improper "bootstrapping at best").

4.     **Access to Unspecified Internal Reports Does Not Demonstrate Scienter**

One way plaintiffs often attempt to plead scienter is by demonstrating that a defendant possessed specific, contemporaneous information that controverts the challenged statement.  *See Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).  Here, Plaintiffs make a faint attempt in this direction by alleging that McGee reviewed unspecified reports from IRF's "Vision" database which allegedly contained global data on forecasts, sales, production, inventory, shipments and orders.  Complaint ¶¶ 52-53.  This allegation, however, describes unremarkable, ordinary course corporate management.  One would expect IRF's officers and employees to review reports from Vision every day.  Plaintiffs do not identify any specific report supposedly reviewed by McGee, much less attempt to show how the report would have exposed accounting or financial reporting errors, or conduct at the Japanese subsidiary misreporting operating and financial results.

It is well established that "[m]ere access to data is insufficient to support a securities claim under the PSLRA."  *Apple Computer*, 243 F. Supp. 2d at 1026 (citing *Lipton*, 284 F.3d at 1035-36).  Because "internal reports" are ubiquitous in public companies, Plaintiffs cannot carry their burden to plead scienter by vague allusions to such reports.  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002) (allegations of "negative internal reports" are not sufficient to allege scienter) (citation omitted).[9]  Plaintiffs must identify the report, plead facts demonstrating defendants' possession of them, and explain how the

_____

[9]  *Id.* at 985 (where a complaint "purports to rely on the existence of internal reports [it must] contain at least some specifics from those reports as well as such facts as may indicate their reliability"); *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944, 956 (C.D. Cal. 2003) (allegations that defendant "received regular updates regarding the status of the Company's major projects" are insufficient to allege scienter); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) (noting "a big difference between knowing about the reports … and knowing that the reports are false").

1  report contradicts the defendants' contemporaneous public disclosures.  *Id.*; *Silicon*

2  *Graphics*, 183 F.3d at 984-85 (rejecting allegations that the defendants' receipt of

3  "Flash Reports" and "Monthly Financial Statements/Packages" gave rise to a

4  "strong inference" of scienter).  Plaintiffs' boilerplate allegations fall well short.

5          **5.**     **The Confidential Witnesses Do Not Demonstrate Scienter**

6         Another way plaintiffs often attempt to plead scienter is by using

7  witnesses to show that a defendant possessed contemporaneous information that

8  controverts the defendant's challenged statements.  Here, Plaintiffs have peppered

9  their Complaint with commentary by anonymous informants, most of whom have

10  absolutely nothing to say with respect to McGee.  Only one of the CWs alleges to

11  have reported directly to McGee (CW3), but that was in 2001 to 2003, before all or

12  most of the Class Period.  Complaint ¶ 98.  Of the four CWs who allegedly

13  commented regarding McGee, nothing they supposedly said supports scienter.

14         As a preliminary matter, courts recognize that CWs are inherently

15  weak indicators of scienter and must be "discounted" when considering the

16  adequacy of competing inferences of scienter.  *Higginbotham v. Baxter Int'l, Inc.*,

17  495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information from

18  anonymous sources could be deemed 'compelling' or how we could take account

19  of plausible opposing inferences.  Perhaps these confidential sources have axes to

20  grind.  Perhaps they are lying.  Perhaps they don't even exist."); *see Central*

21  *Laborers'*, 497 F.3d at 552 (declining to credit CW allegations that "lack sufficient

22  detail").  Here, Plaintiffs' CWs said nothing about McGee that would be probative

23  of scienter, even if credited as true.  Not one of Plaintiffs' CWs purports to identify

24  any relevant contemporaneous statement or contradictory report made by or to

25  McGee.  Plaintiffs do not allege any communication between any CW and McGee

26

27

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

20

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1    to suggest that McGee was aware of the CW's views at the relevant time. The four

2    CWs who mention McGee are discussed below.[10]

3            CW1:  Plaintiffs allege comments by CW1 regarding the classification

4    of restructuring charges (*i.e.*, fraud theory number 3).  Complaint ¶¶ 88-90.  CW1

5    claims to have "worked with" the Director of Finance for the automotive division,

6    non-defendant Mike Love.  *Id.* ¶ 90.  According to CW1, Love worked with

7    defendant Jurek, the VP of Automotive Products, to deliberately misallocate

8    operating expenses in the automotive division to restructuring expenses.

9    *Id.* ¶¶ 88, 90.  CW1 does not specify the time frame, magnitude, or financial

10   impact of any such misallocations.  CW1 says that Love reported to McGee, but

11   does not claim that McGee himself knew of the alleged conduct.  *See Read-Rite*,

12   335 F.3d at 848.

13           CW3:  Plaintiffs allege comments by CW3 regarding allocation of

14   intercompany profits and tax liability (*i.e.*, fraud theory number 4).  *Id.* ¶¶ 98-100.

15   According to CW3, "IRF headquarters" provided a matrix to the business units to

16   use in allocating profits among entities and profits.  *Id.* ¶ 100.  CW3 claims that the

17   matrix was compiled by McGee and the VP of Tax, non-defendant Chip Morgan.

18   *Id.*  Nothing in CW3's account suggests, however, that McGee possessed any

19   contemporaneous information that the matrix was flawed in any way– or that

20   McGee knew of any errors in IRF's tax accounting or reporting.  CW3 does not

21   indicate that McGee designed the profit allocation matrix for the purpose of

22   evading taxes and overstating earnings, or that the matrix might result in any

23   overstatement of IRF's earnings.

24           CW3 also reportedly commented that "McGee and Alex Lidow

25   exercised tight control over the whole company, including the international

26   _____

27   [10]  Notably, these four CWs are *former* IRF employees.  Their allegations can and
     should be "discounted" accordingly due to the possibility that "these
28   confidential sources have axes to grind."  *Higginbotham*, 495 F.3d at 757.

1    subsidiaries." *Id.* ¶ 310.  As noted above, Plaintiffs cannot plead scienter by way

2    of such generalized assertions.  *Apple Computer*, 243 F. Supp. 2d at 1026

3    (rejecting similar attempt to plead scienter by alleging CEO had "hands on

4    management style" and ran "every aspect of the business.").

5           CW8:  Plaintiffs allege comments by CW8 which are nothing but

6    pointless gossip and opinion about IRF's personnel decisions.  Complaint ¶¶ 108-

7    09.  According to CW8, IRF promoted non-defendant Jeff Allen as its Global

8    Controller "because Allen was considered to be defendant 'Mike McGee's

9    prodigy.'" *Id.* ¶ 108.  In CW8's personal opinion, IRF should have filled the

10   position with someone "from outside the Company." *Id.*  CW8 does not allege that

11   McGee made the decision to hire Allen.  Plaintiffs fail to allege how any of these

12   assertions are relevant to their claims against McGee.

13          CW8 also allegedly asserted that "one of the Company's internal

14   auditors, Mark Larson ("Larson"), was laid off after he started investigating

15   suspicious activities in Japan." *Id.* ¶ 109.  "According to CW8, Larson was

16   investigating the activities of defendant McGee," and "was instructed to

17   discontinue his investigation and was not allowed to go to Japan." *Id.*  CW8 does

18   not allege when these events occurred, however, or what Larson was

19   "investigating," or that McGee ever instructed Larson to discontinue his

20   investigation, or that McGee even knew of Larson or of his alleged investigation.

21   CW8 does not specify the reasons for Larson's layoff.  Plaintiffs' conclusory

22   inference of a "cover-up" contradicts the fact that IRF investigated and continues

23   to investigate activities at its Japanese subsidiary. *Id.* at ¶ 4.  The bottom line is,

24   nothing allegedly said by CW8 suggests that McGee had any contemporaneous

25   information that would have contradicted IRF's financial reports.

26          CW9:  Plaintiffs allege comments by CW9 that IRF's Japanese

27   subsidiary "rolled up its numbers each quarter and sent them to McGee at

28   headquarters." *Id.* ¶ 306.  This is unremarkable since IRF reported its financial

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

22

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1   results on a consolidated basis, including the results of the Japanese subsidiary.

2   CW9 does not suggest that McGee knew that the Japanese subsidiary's numbers

3   were inaccurate.  *Apple Computer*, 243 F. Supp. 2d at 1026 ("Mere access to data

4   is insufficient to support a securities claim under the PSLRA.").  In sum, Plaintiffs'

5   CW allegations fail to support any inference of scienter against McGee.

6                    **6.    McGee's Stock Sales Do Not Support Scienter**

7                    Plaintiffs allege that McGee was motivated to inflate IRF's stock in

8   order to profit on insider trading.  Complaint ¶ 291.  Plaintiffs concede, however,

9   that they "do not rely upon allegations of insider trading to establish scienter."  *Id.*

10  ¶ 292.  Plaintiffs know that, in the Ninth Circuit, stock sales by insiders are

11  insufficient to carry Plaintiffs' burden to plead a "strong inference" of scienter.

12  *See Vantive*, 283 F.3d 1079 at 1092; *Silicon Graphics*, 183 F.3d at 974, 986;

13  *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) ("not every sale of stock by a

14  corporate insider shows that the share price is about to decline.").  The fact is,

15  some level of trading by insiders is perfectly normal and thus cannot provide a

16  "cogent" and "compelling" inference of scienter under the PSLRA or *Tellabs*.  *See*

17  127 S. Ct. at 2505; *McCall*, 239 F.3d at 825.  Here, McGee's trading activity does

18  not support any inference that he was motivated to deceive investors in order to

19  profit on inflated stock prices.

20                    Plaintiffs have the burden to demonstrate the relevance of McGee's

21  stock sales by showing that the sales were "unusual" or "suspicious."  *Plevy v.*

22  *Haggerty*, 38 F. Supp. 2d 816, 835 (C.D. Cal. 1998).  "[I]nsider trading is

23  suspicious only when it is 'dramatically out of line with prior trading practices at

24  times calculated to maximize the personal benefit from undisclosed inside

25  information.'"  *Silicon Graphics*, 183 F.3d at 986.  "Among the relevant factors to

26  consider are:  (1) the amount and percentage of shares sold by insiders; (2) the

27  timing of the sales; and (3) whether the sales were consistent with the insider's

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

23

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT

1  prior trading history." *Id.*  Plaintiffs do not even attempt to meet their burden on

2  any of these factors – presumably because they know the facts cut against them.

3       Notwithstanding Plaintiffs' super-sized four year Class Period,[11] they

4  can allege only that McGee sold IRF stock twice – on November 12, 2004 and

5  August 10, 2005. *Id*. at p. 159.  There is nothing suspicious about the timing or

6  circumstances of these sales.  The sales were on or after dates on which IRF

7  released earnings to the public.  Luthin Decl. ¶ 10; s*ee Lipton*, 284 F.3d at 1037

8  (stock sales after release of financials not suspicious).[12]  The sales took place well

9  over a year before IRF announced its discovery of any accounting errors.  *See*

10 *Vantive*, 283 F.3d at 1093 (sales more than a year before the press release on which

11 Plaintiffs base their action are not suspicious).  Plaintiffs allege nothing to suggest

12 that McGee knew about accounting errors when he sold stock.

13      Moreover, as the public trading records show, McGee simply

14 exercised stock options that had been paid to him as compensation, as he was

15 entitled to do.  *McCall*, 239 F.3d at 825 (trading by insiders is normal, lawful, and

16 expected).  Luthin Decl. ¶ 5 and RJN, Exhs. L, O.  McGee actually increased his

17 overall holdings in IRF over the Class Period (Luthin Decl. ¶¶ 11-12) – a fact

18 entirely inconsistent with the contention that he fraudulently inflated IRF's stock

19 prices.  Finally, Plaintiffs dramatically overstate McGee's sales proceeds by

20

21 [11] Long class periods that "sweep as many stock sales into [the] totals as possible" make stock sales even less relevant to scienter.  As the Ninth Circuit observed in *Vantive*, 283 F.3d at 1093:  "[T]he [63-week] class period alleged is so long, and the virtually identical allegations recycled throughout the complaint so many times, that it becomes difficult to see how particular stock sales would strengthen allegations that particular statements were uttered with deliberate recklessness at the times they were made."

22

23

24 [12] *See also Guttman v. Huang*, 823 A.2d 492, 503-04 (Del. Ch. 2003) (timing of the trades were "more obviously consistent with the idea that [the company] permitted stock sales in such periods because it diminished the possibility that insiders could exploit outside market buyers"); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 312 (D.N.J. 2001) (trading following public announcement evidences compliance with securities laws); *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 506 (3d Cir. 1988) (insiders permitted to trade in "window" after public announcement is made).

25

26

27

28

1   ignoring his purchase of the stock upon exercise of his options.  *Id.* ¶¶ 6-9.

2   Plaintiffs' failure to meet their burden to show that McGee's trades were

3   suspicious is the last nail in the coffin of their fatally defective scienter allegations.

4   **C.   Plaintiffs Have Not Pled Control Liability**

5   Plaintiffs allege that McGee is secondarily liable under Section 20(a)

6   of the Exchange Act.  Complaint ¶¶ 333-41.  Section 20(a) imposes liability on

7   those who "control[] any person liable" for a violation of another provision of the

8   Exchange Act.  15 U.S.C. § 78t(a).  To establish "control person" liability under

9   Section 20(a), Plaintiffs must allege:  (1) a primary violation and (2) that the

10   defendant exercised actual control over the primary violator.  *See Heliotrope Gen.,*

11   *Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999).  For the reasons set

12   forth in this Motion and in the moving papers of the other defendants, Plaintiffs

13   have failed to plead any primary liability against McGee, or that McGee had any

14   control over the alleged conduct of others on which Plaintiffs' primary liability

15   claims rest.  Accordingly, Plaintiffs' Section 20(a) claim against McGee must be

16   dismissed.  *See Heliotrope*, 189 F.3d at 978; *Lipton*, 284 F.3d at 1035.

17   **IV.   CONCLUSION**

18   Michael P. McGee respectfully requests that all claims against him be

19   dismissed.

20   Dated:  March 6, 2008

21                                              LATHAM & WATKINS LLP
                                                Miles N. Ruthberg
22                                              Pamela S. Palmer
                                                Jason J. Kim
23                                              Melinda M. Luthin

24
                                                By /s/ Pamela S. Palmer
25                                              _____
                                                   Pamela S. Palmer
26                                                 Attorneys for Defendant
                                                   Michael P. McGee

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

LA\1824497.5

25

MCGEE MEMO IN SUPPORT OF MOTION TO
DISMISS CONSOLIDATED COMPLAINT