1  Robert A. Sacks (SBN 150146)
   (sacksr@sullcrom.com)
2  Jason de Bretteville (SBN 195069)
   (debrettevillej@sullcrom.com)
3  Diane L. McGimsey (SBN 234953)
   (mcgimseyd@sullcrom.com)
4  Edward E. Johnson (SBN 241065)
   (johnsonee@sullcrom.com)
5  SULLIVAN & CROMWELL LLP
   1888 Century Park East
6  Los Angeles, CA  90067
   Telephone:   (310) 712-6600
7  Facsimile:    (310) 712-8800

8  *Attorneys for Defendant Alexander Lidow*

9

10

11  **UNITED STATES DISTRICT COURT**

12  **CENTRAL DISTRICT OF CALIFORNIA**

13

14  In re INTERNATIONAL RECTIFIER          )   Case No.  CV 07-02544-JFW (VBKx)
    CORPORATION SECURITIES                 )
15  LITIGATION                             )   **DEFENDANT ALEXANDER
                                           )   LIDOW'S NOTICE OF MOTION
16                                         )   AND MOTION TO DISMISS THE
                                           )   CONSOLIDATED CLASS ACTION
17                                         )   COMPLAINT FOR VIOLATIONS
                                           )   OF THE FEDERAL SECURITIES
18                                         )   LAWS; MEMORANDUM OF
                                           )   POINTS AND AUTHORITIES IN
19                                         )   SUPPORT THEREOF**
                                           )
20                                         )   Date: May 5, 2008
                                           )   Time: 1:30 p.m.
21                                         )   Courtroom: 16
                                           )
22                                         )   [Filed Concurrently With Request for
                                           )   Judicial Notice; Declaration of Robert
23                                         )   A. Sacks;  [Proposed] Order]
                                           )
24                                         )
                                           )
25  _____    )

26

27

28

SULLIVAN
&
CROMWELL LLP

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 5, 2008, at 1:30 p.m., or as soon thereafter as the matter may be heard in the United States District Court, Central District of California, located at 312 N. Spring Street, Los Angeles, California, 90012, Defendant Alexander Lidow ("Lidow"), through his undersigned counsel, will, and hereby does, move to dismiss the Consolidated Second Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4.

This Motion will be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of Robert A. Sacks, the complete files and records in this action, and such additional material as may be considered at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 7, 2008, and during which counsel for Lidow advised plaintiffs' counsel of Lidow's intent to file this Motion to Dismiss and discussed both the basis of the Motion and its potential resolution.

Dated: March 6, 2008

                                         /s/ Robert A. Sacks
                                         Robert A. Sacks
                                         Jason de Bretteville
                                         Diane L. McGimsey
                                         Edward E. Johnson
                                         SULLIVAN & CROMWELL LLP
                                         1888 Century Park East
                                         Los Angeles, California 90067
                                         Telephone    (310) 712-6600
                                         Facsimile:    (650) 461-5700

                                         *Attorneys for Defendant Alexander Lidow*

# <u>TABLE OF CONTENTS</u>

**PAGE**

I. PRELIMINARY STATEMENT ...................................................................................1

II. STATEMENT OF FACTS..........................................................................................2

III. ARGUMENT ............................................................................................................3

    A.  Plaintiffs' Section 10(b) And Rule 10b-5 Claims Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.......................................................4

        1.  Legal Standard ...........................................................................................4

        2.  Lidow's Position As CEO Is Insufficient To Establish Scienter ............................6

        3.  Lidow Access To A Sales Database And Revenue Reports Is Insufficient To Establish Scienter.......................................................................................8

        4.  Lidow's Stock Sales Do Not Support an Inference of Scienter..........................10

    B.  Plaintiffs Have Not Pled Control Person Liability ....................................................13

IV. CONCLUSION.........................................................................................................15

SULLIVAN & CROMWELL LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

C<small>ASES</small>

3

*Acito* v. *IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ...........................................................................10, 11

4

5

*Boguslavsky* v. *Kaplan*,
   159 F.3d 715,720 (2d Cir. 1998)........................................................................14

6

*Branch* v. *Tunnell*, 14 F.3d 449 (9th Cir. 1994) ........................................................12

7

*Carpenter* v. *Harris, Upham & Co.*,
   594 F.2d 388 (4th Cir. 1979) ........................................................................13, 14

8

9

*Central Laborers' Pension Fund* v. *Integrated Elec. Svcs., Inc.*,
   497 F.3d 546 (5th Cir.2007) .................................................................................7

10

11

*DSAM Global Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ................................................................................7

12

*Dura Pharms., Inc.* v. *Broudo*,
   544 U.S. 336 (2005)..............................................................................................4

13

14

*Ernst & Ernst* v. *Hochfelder*,
   425 U.S. 185 (1976)..........................................................................................4, 14

15

16

*Galbraith* v. *County of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) ............................................................................12

17

*Global Value Fund* v. *Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ............................................................................5, 7

18

19

*Gompper* v. *VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ..............................................................................12

20

21

*Greene* v. *Emersons, Ltd.*,
   86 F.R.D. 66 (S.D.N.Y. 1980) ..............................................................................5

22

*Higginbotham* v. *Baxter Int'l., Inc.*,
   495 F.3d 753 (7th Cir. 2007) ................................................................................9

23

24

*Hollinger* v. *Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) .........................................................................13, 14

25

26

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999)..................................................................................7

27

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004)..................................................................10

28

S<small>ULLIVAN</small>
&
C<small>ROMWELL LLP</small>

M<small>OTION TO</small> D<small>ISMISS</small> C<small>ONSOLIDATED</small> C<small>LASS</small> A<small>CTION</small> C<small>OMPLAINT</small>

*In re Apple Computer, Inc.*,
    243 F. Supp. 2d 1012 (N.D. Cal. 2002) ...................................................................9

*In re Carter-Wallace, Inc. Sec. Litig.*,
    220 F.3d 36 (2d Cir. 2000).......................................................................................5

*In re Copper Mountain Sec. Litig.*,
    311 F. Supp. 2d 857 (N.D. Cal. 2004) ....................................................................7

*In re Dura Pharmaceuticals, Inc. Sec. Litig.*,
    452 F. Supp. 2d 1005 (S.D. Cal. 2006).....................................................................8

*In re Hanson Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................7

*In re IPO Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)......................................................................4

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)....................................................................14

*In re Metwave Commc'ns Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003)...............................................................8

*In re Northpoint Commc'ns Group Inc., Sec. Litig.*,
    184 F. Supp. 2d 991 (N.D. Cal. 2001))....................................................................8

*In re Peerless Sys., Corp. Sec. Litig.*,
    182 F. Supp. 2d 982 (S.D. Cal. 2002).....................................................................10

*In re PetSmart, Inc. Sec. Litig.*,
    61 F. Supp. 2d 982 (D. Ariz. 1999) .......................................................................12

*In re Read-Rite Corp. Sec. Litig.*,
    335 F.3d 843 (9th Cir. 2003) ...................................................................................7

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001).....................................................................................11

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ..................................................................5, 9, 10, 11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................10

*In re U.S. Aggregates, Inc. Securities Litigation*,
    235 F. Supp.2d 1063 (N.D. Cal. 2002) ....................................................................6

*In re Vantive Corp. Sec. Litig.*,
    110 F. Supp. 2d 1209 (N.D. Cal. 2000), *aff'd* 283 F.3d 1079 (9th Cir. 2002) ..............6, 11, 12

*In re Verisign, Inc. Deriv. Litig.*,
   -- F. Supp. 2d --, 2007 WL 2705221 (N.D. Cal. 2007) ......................................................5, 10

*In re White Elec. Designs Corp. Sec. Litig.*,
   416 F. Supp. 2d 754 (D. Ariz. 2006) .........................................................................................5

*Limantour* v. *Cray Inc.*,
   432 F. Supp. 2d 1129 (W.D. Wash. 2006).................................................................................9

*Lipton* v. *Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ...............................................................................................6, 10

*McHenry* v. *Renne*,
   84 F.3d 1172 (9th Cir. 1996) .....................................................................................................3

*Rochez Brothers, Inc.* v. *Rhoades*,
   527 F.2d 880 (3d Cir. 1975)................................................................................................13, 14

*Ronconi* v. *Larkin*,
   253 F.3d 423 (9th Cir. 2001) ...................................................................................................12

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007)..........................................................................................1, 5, 6, 9

*United States* v. *Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................................................12

*Wenger* v. *Lumisys*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) .......................................................................................10

*Wietschner* v. *Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (2003) ...............................................................................................11, 12

*Wu Group* v. *Synopsys, Inc.*,
   No. C04-3580, 2005 WL 1926626 (N.D. Cal. 2005) ...............................................................9

STATUTES

15 U.S.C. § 78j(b) ..........................................................................................................................1, 4

15 U.S.C. § 78t(a) .....................................................................................................................1, 13, 14

15 U.S.C. § 78u-4(b)(2) ....................................................................................................................4

Fed. R. Civ. P. 8(a), (e) ....................................................................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................................................................3

Fed. R. Civ. P. 12(b)(6)....................................................................................................................12

SULLIVAN
&
CROMWELL LLP

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The gist of plaintiffs' 333-paragraph, 183-page page Complaint is that over a 49-month period, International Rectifier Corp. ("IR") issued public statements concerning the company's financial condition that allegedly appear to be false or misleading in light of subsequently disclosed accounting errors and tax law violations. Plaintiffs do not allege that IR's former Chief Executive Officer ("CEO"), Alexander Lidow ("Lidow") participated in any such financial manipulations.  In fact, despite its heft, the Complaint does not plead a single fact that even suggests that Lidow had reason to suspect that IR's financial condition or controls were other than as represented, let alone facts indicating that Lidow *knew* any public statement was false or misleading at the time it was made.  As a result, the Complaint fails to allege facts that might raise *any* inference of scienter as to Lidow, much less the "strong inference" required by the Private Securities Litigation Reform Act ("PSLRA").  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2510 (2007).

Nonetheless, as part of their securities fraud case against IR and the individuals who allegedly perpetrated the alleged fraud, plaintiffs sue Lidow under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, claiming that because, as CEO, he allegedly made or "acquiesced" in some of IR's public statements during the purported Class Period he is necessarily liable.  Plaintiffs are wrong.  Absent allegations of knowledge or recklessness as to Lidow, the Complaint stands on the premise that a CEO is inherently liable for false or misleading statements by his company solely by reason of his title.  That premise is unfounded.  Likewise, plaintiffs' claim that every individual defendant, including Lidow, is secondarily liable under Section 20(a), 15 U.S.C. § 78t(a), fails as to Lidow because they do not allege a primary violation  by anyone under Lidow's "control."  For these reasons, plaintiffs' fraud claims against Lidow must be dismissed.

## II.    STATEMENT OF FACTS

IR designs, manufactures and markets power management products.  Compl. ¶ 1.  Lidow served as CEO of IR, and occupied a position on its Board of Directors, during the purported class period of July 31, 2003 through August 29, 2007 (the "Class Period").  *Id.* ¶¶ 2, 19, 29.  The Complaint alleges that IR's pro forma net income and reported gross margin figures were falsely inflated during this period through classification of ordinary operating expenses as restructuring costs, inclusion of "bogus and/or premature shipments of product," and failure to properly account for certain tax liabilities resulting in part from its "transfer pricing methodologies."  *Id.*  In addition, plaintiffs assert that IR failed to disclose "deficiencies or material weaknesses in the internal controls" and the existence of an alleged "fraudulent scheme" at a "foreign subsidiary" that apparently resulted in the aforementioned fictitious or "premature" recognition of sales revenue.  *Id.* ¶ 134.  Plaintiffs claim to have purchased stock on different days during the 49-month period, and to have suffered losses as a result of various allegedly corrective disclosures subsequently issued by IR regarding these alleged accounting failures.  *Id.* ¶ 20.

The Complaint's factual allegations are derived from two sources: (1) IR's subsequent disclosures, and (2) sixteen purported confidential witnesses.  *Id.* ¶¶ 44, 48-63, 68, 85-86, 90, 93-95, 98, 100, 102, 107-09.  None of the disclosures addresses Lidow's knowledge of any fraud.  And none of the professed confidential informants, each of whom reported to someone other than Lidow, purports to offer any evidence that Lidow was involved in or had knowledge of any fraud.  Instead, plaintiffs' entire Complaint against Lidow rests on four *factual* allegations, none of which comes anywhere close to supporting a strong inference of scienter:  (1) that Lidow formerly served as IR's CEO and on its Board of Directors. Compl. ¶¶ 29; (2) that in his capacity as CEO, Lidow made public statements about IR's financial condition and signed certain filings with the SEC, Compl. ¶¶ 29, 37, 112-13, 121, 243, 245, 253, 256-57; (3) that in

1   his capacity as CEO, Lidow set sales forecasts, monitored sales figures, had access to

2   management software that purportedly *could* have enabled him to detect some,

3   unspecified, prematurely booked sales, Compl. ¶ 49, 52-53; and (4) that Lidow entered

4   into 10b5-1, non-discretionary "sales plans for common stock" on various occasions

5   during the class period, Compl. ¶¶ 131, 160, 186, 227, 291, 292, sales that collectively

6   comprised less than a quarter of his IR shares/exercisable stock options and left him

7   holding over two million shares/exercisable options, comprising approximately 3% of

8   IR's outstanding common stock.

9   **III.   ARGUMENT**

10          The Complaint, by virtue of its sheer length, redundant assertions, and

11  dizzying internal references violates Rule 8's demand for a "short and plain statement"

12  made in a "simple" and "direct" manner.  Fed. R. Civ. P. 8(a), (e).  The Complaint is

13  neither short nor plain, and for this reason alone the Court should dismiss it.  *See*

14  *McHenry* v. *Renne*, 84 F.3d 1172 (9th Cir. 1996) (affirming district court's dismissal of

15  third amended complaint with prejudice for repeatedly failing to plead short, clear

16  statement of claims).

17          But the Complaint's failings are not restricted to its prolixity.  Despite its

18  length, the Complaint does not put forth a single fact in support of its claim that Lidow

19  made any particular misstatement *with scienter*.  As to Lidow, the 341-paragraph

20  Complaint merely alleges that: (1) Lidow formerly served as IR's CEO; (2) as IR's CEO,

21  Lidow made or "acquiesced" in some of IR's public statements that later turned out to be

22  false, (3) as IR's CEO, Lidow had access to voluminous, unspecified sales and forecast

23  information that, at unspecified times during the 49-month class period, would have

24  included unspecified information concerning prematurely booked sales, and (4) Lidow

25  had a motive to inflate IR's revenues because he entered into 10b5-1 plans for the

26  non-discretionary sale of IR stock.  Missing from the Complaint is a fact, any fact, that

27  might give rise to a strong inference that Lidow *knew* that any specific statement was

28

false or misleading at the time it was made.  The Complaint's failure to connect the alleged misconduct of others to Lidow, other than simply lumping him into various allegations concerning all "Defendants," leads to only one reasonable inference: that Lidow was deceived by the alleged wrongdoers.  Because this nonculpable explanation is based on facts alleged in the Complaint, while plaintiffs' assertions of scienter are pure speculation, the Complaint fails to support the strong and compelling inference required by law to state a claim, and the claims against Lidow should be dismissed.[1]

### A.   Plaintiffs' Section 10(b) And Rule 10b-5 Claims Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.

#### 1.   Legal Standard.

To state a valid claim for a violation of Section 10(b) and Rule 10b-5, plaintiffs must allege, with particularity, (1) a material misrepresentation or omission of fact, (2) made with scienter, (3) on which plaintiff relied, and that (4) proximately caused plaintiff's economic loss in connection with the purchase or sale of securities.  *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 341-42 (2005).  The Supreme Court has defined "scienter" in the context of Section 10(b) as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 193 n.12 (1976). To plead scienter, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added); *see also In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) ("[P]articularity means the who, what, when, where, and how: the first paragraph of any newspaper story." (internal quotation marks, brackets, and emphasis omitted)).  A "strong inference" is to be distinguished from "a mere speculative inference . . . or even a reasonable inference."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999).  Moreover, when considering the allegations of a

---

[1]   For the reasons set forth in the briefs filed by the other Defendants, the Complaint should also be dismissed for failure adequately to allege a material misrepresentation or omission, reliance and causation.

SULLIVAN & CROMWELL LLP

1    complaint, a court "must consider plausible nonculpable explanations for the defendant's

2    conduct, as well as inferences favoring the plaintiff. . . . A complaint will survive . . . only

3    if a reasonable person would deem the inference of scienter cogent and at least as

4    compelling as any opposing inference one could draw from the facts alleged." *Tellabs*,

5    127 S.Ct. at 2510.

6            Even a plaintiff seeking to satisfy the PSLRA's strict pleading requirements

7    through allegations of recklessness "must plead, in great detail, facts that constitute

8    strong circumstantial evidence of *deliberately reckless or conscious misconduct*." *Silicon*

9    *Graphics*, 183 F.3d at 974 (emphasis added).  Thus, where a plaintiff seeks to plead

10   scienter by a reckless failure to act, "even if such failure might be characterized as

11   'reckless,' [t]he law, in such circumstances, requires something closer to an actual intent

12   to aid in a fraud." *Greene* v. *Emersons, Ltd*., 86 F.R.D. 66, 73 (S.D.N.Y. 1980) (internal

13   quotation omitted); *see also In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp. 2d

14   754, 763 (D. Ariz. 2006) ("The complaint must aver facts strongly suggesting actual

15   intent to commit fraud.")  In order to show conscious misbehavior or reckless conduct

16   sufficient to raise a "strong inference" of scienter, the allegations must describe conduct

17   that was "either known to the defendant or so obvious that the defendant must have been

18   aware of it." *In re Carter-Wallace, Inc. Sec. Litig*., 220 F.3d 36, 39 (2d Cir. 2000)

19   (internal quotations omitted); *see also Global Value Fund* v. *Altris Software, Inc.*, 288

20   F.3d 385 (9th Cir. 2002) (even facts giving rise to a "compelling case" of gross

21   negligence are insufficient to give rise to strong inference of deliberate recklessness).

22           Accordingly, the repeated, conclusory assertions that "defendants knew or

23   recklessly disregarded" the inaccuracies in IR's public statements, Compl. ¶¶ 39, 41, 47,

24   66, 74, 88, 92, 98, 290, 326, are insufficient to plead scienter.  *E.g.*, *In re Verisign, Inc.*

25   *Deriv. Litig.*, -- F. Supp. 2d ---, 2007 WL 2705221 (N.D. Cal. 2007) ("boilerplate

26   allegation that '[t]he director defendants . . . knew or recklessly disregarded the fact that

27   the Company's financial statements were misleading,'" insufficient to state a claim).

28

SULLIVAN & CROMWELL LLP

1    Likewise, plaintiffs' speculative claims that Lidow knew about improper accounting and

2    obscured it in order to enhance some fraction of his stock holdings prior to their sale are

3    without factual support and, as a result, cannot be "at least as compelling" as the

4    conclusion that the specific employees who allegedly engaged in the purported

5    misconduct obscured their actions from Lidow.  Because the Complaint here fails to

6    allege facts showing knowledge of the fraud or a conscious disregard, it falls far short of

7    satisfying the PSLRA's "stringent pleading standard," set out in *Tellabs* and *Silicon*

8    *Graphics*.  *Lipton* v. *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).

9             **2.**      **Lidow's Position As CEO Is Insufficient To Establish Scienter.**

10          The Complaint is devoid of any facts showing that Lidow had knowledge of,

11    or recklessly disregarded, any of the alleged misconduct that purportedly rendered his

12    public statements false or misleading.  Instead, plaintiffs apparently assume that Lidow,

13    solely by virtue of his position as CEO, must have known about, or been deliberately

14    reckless in failing to detect, the conduct of the alleged wrongdoers.  Compl. ¶ 29.

15    Plaintiffs are wrong.

16          Allegations that internal controls were inadequate, or that other employees

17    managed to evade such controls, do not suffice to state a claim against a CEO.  *See In re*

18    *U.S. Aggregates, Inc. Securities Litigation*, 235 F. Supp.2d 1063, 1074 (N.D. Cal. 2002)

19    ("Defendants are correct in their argument that plaintiffs must do more than allege that

20    these key officers had the requisite knowledge by virtue of their 'hands on' positions,

21    because that would eliminate the necessity for specially pleading scienter, as any

22    corporate officer could be said to possess the requisite knowledge by virtue of his or her

23    position.") (citation omitted).  Rather, courts in this Circuit and others have repeatedly

24    held that allegations that a defendant exercised "hands on" management are insufficient

25    to plead scienter.  *See, e.g., In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1218

26    (N.D. Cal. 2000), *aff'd* 283 F.3d 1079 (9th Cir. 2002) (characterizing as "boilerplate"

27    allegations that defendants knew the alleged deficiencies "because of their 'hands-on'

28

management style and their 'interaction with other corporate officers and employees'"); *see also In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (rejecting argument that "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to . . . key officers"); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 872 (N.D. Cal. 2004) (rejecting assertion that defendants can be presumed to have had knowledge of certain information by virtue of their position as officers in the company); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("[A]llegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.").

Nor do plaintiffs' allegations that Lidow signed various SEC filings and made statements to the financial press about IR's financial results support an inference of scienter.  Compl. ¶¶ 29, 37, 112-13, 121, 243, 245, 253, 256-57.  Courts have consistently held that signing an SEC filing that turns out to be false or misleading does not imply that the signer had any knowledge of the inaccuracy.  *See, e.g., In re Hanson Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 , (C.D. Cal. 2007); *Central Laborers' Pension Fund* v. *Integrated Elec. Svcs., Inc.*, 497 F.3d 546, 555 (5th Cir.2007) (noting that if signing SEC filings were sufficient to create an inference of scienter, then "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA"); *see also DSAM Global Value Fund*, 288 F.3d at 390 (9th Cir. 2002) ("[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.") (citation omitted).  While the Complaint quotes Lidow's statements to the financial press at length and alleges that certain of those statements were false, it fails to allege facts suggesting that Lidow himself knew that any of the statements were false at the time they were made.  Compl.

¶¶ 29, 37, 112-13, 121, 243, 245, 253, 256-57.  As such, those allegations do not support an inference of scienter.

### 3. Lidow's Access To A Sales Database And Revenue Reports Is Insufficient To Establish Scienter.

The Complaint relies on sixteen confidential witnesses to describe the purported misconduct of others at IR, none of whom reported to Lidow and none of whom asserts that Lidow was involved in any misconduct.  The *only* statement by a confidential witness concerning Lidow consists of an allegation that, according to Confidential Witness Number 3 ("CW3"), Lidow received daily revenue reports and utilized an internal database system that contained sales and forecast information. Compl. ¶¶ 52-53.  That allegation does not even begin to establish scienter.

As an initial matter, the Court should disregard CW3's allegations as to Lidow because the Complaint fails to establish that CW3 had personal knowledge as to Lidow's access to and use of the alleged database.  In order to rely on confidential witnesses, a plaintiff "must plead 'with substantial specificity' how confidential witnesses 'came to learn of the information they provide in the complaint.'"  *In re Metwave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1068 (W.D. Wash. 2003) (quoting *In re Northpoint Commc'ns Group Inc., Sec. Litig.*, 184 F. Supp. 2d 991, 1000 (N.D. Cal. 2001)); *see also*, *e.g.*, *In re Dura Pharmaceuticals, Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1024 (S.D. Cal. 2006) ("If a plaintiff relies on the accounts of confidential witnesses, the complaint must describe such personal sources with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." (internal quotation and citation omitted)).  Here, CW3 never reported directly to Lidow, and in fact never even worked in the same office. Compl. ¶ 98.  Thus, based on the facts alleged in the Complaint, CW3's assertions as to what information Lidow reviewed "appear[] to be based more on speculation or assumption than on actual knowledge" and should be disregarded.  *Wu Group* v.

*Synopsys, Inc.*, No. C04-3580, 2005 WL 1926626, at *9 (N.D. Cal. Aug. 10, 2005); *see also Limantour* v. *Cray Inc.*, 432 F. Supp. 2d 1129, 1141 (W.D. Wash. 2006) ("The Court must be able to tell whether a confidential witness is speaking from personal knowledge, or merely regurgitating gossip and innuendo."  (citation and quotations omitted)).[2]

Moreover, even if CW3 did have personal knowledge of the information reviewed by Lidow, citation to unnamed documents and reports fall far short of the PSLRA's requirement of "specific facts" giving rise to a "strong inference" of scienter. Under *Silicon Graphics*, a plaintiff must allege facts beyond the mere existence of internal reports that might contradict the public information.  *Silicon Graphics*, 183 F.3d at 984-985.  Rather, a plaintiff must provide both "facts as may indicate [the reports'] reliability" *and* "an adequate description of their contents."  *Id.* at 985.  The Complaint does not allege with specificity the particular information in any particular report that Lidow supposedly reviewed, or explain how any particular information or report could have alerted Lidow to the alleged fraud.  Instead, the Complaint relies on a blanket assertion that Lidow *could* have reviewed sales information on a company database and "received daily reports with revenue information."  Comp. ¶ 53.  Absent any specifics, there is no basis to infer that Lidow had any knowledge of the premature booking of certain unspecified sales.  *See*, *e.g.*, *In re Apple Computer, Inc.*, 243 F. Supp. 2d 1012, 1026 (N.D. Cal. 2002) ("Mere access to data is insufficient to support a securities claim under the PSLRA." (citing *Lipton*, 284 F.3d at 1035-36)); *In re Peerless Sys., Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 993 (S.D. Cal. 2002) (dismissing complaint on the grounds

---

[2]  Even if the confidential witnesses could state facts as to Lidow, the Seventh Circuit's recent decision interpreting *Tellabs* confirms that the speculative, generalized assertions of unnamed sources should be given little weight.  *See Higginbotham* v. *Baxter Int'l., Inc.*, 495 F.3d 753 (7th Cir. 2007).  As the Seventh Circuit explained, under *Tellabs* a court should "discount allegations that the complaint attributes to . . . 'confidential witnesses'" because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [a court] could take account of plausible opposing inferences.  Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist."  *Id.* at 755.

SULLIVAN
&
CROMWELL LLP

that plaintiffs failed to plead sufficient detail concerning the "internal Company documents" that supposedly contained the relevant information); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1079-80 (N.D. Cal. 2001) (allegations that defendants knew of true facts because they had reviewed unspecified corporate documents, such as intake and backlog reports, insufficient to allege scienter because the complaint did not identify the *specific* intake and backlog reports allegedly reviewed by defendants).

### 4.    Lidow's Stock Sales Do Not Support an Inference of Scienter.

Plaintiffs attempt to bolster their nonexistent allegations of scienter by alleging that Lidow was somehow motivated to make the alleged misstatements in order to elevate IR's stock price prior to insider sales.  Compl. ¶¶ 291-92, 294.  Courts have long recognized, however, that "generalized allegations of greed and a desire for increased . . . compensation" are insufficient to establish scienter.  *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 218 (S.D.N.Y. 2004); *see also Lipton* v. *PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (holding that if motive and opportunity were sufficient to establish scienter, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions" (citation omitted)); *Silicon Graphics*, 183 F.3d at 974-75 (explicitly rejecting a plaintiff's ability to establish scienter by pleading motive and opportunity); *Acito* v. *IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (finding allegation "that defendants were motivated to defraud the public because an inflated stock price would increase their compensation [wa]s without merit" in meeting scienter pleading requirement).  Likewise, mere allegations of stock sales cannot suffice. *See Wenger* v. *Lumisys*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998) ("stock sales alone cannot create a strong inference of scienter"); *In re Verisign, Inc. Deriv. Litig.*, -- F. Supp. 2d --, 2007 WL 2705221 (N.D. Cal. 2007) ("even large stock sales, without more, cannot give rise to a strong inference of scienter").

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

SULLIVAN & CROMWELL LLP

Conceding this well-established principle, plaintiffs acknowledge that they "do not rely upon allegations of insider trading to establish scienter." Compl. ¶ 291-92. Instead, plaintiffs argue that Lidow's *non-discretionary* stock sales "are consistent with and augment an already strong inference of scienter." Compl. ¶ 292. This assertion fails first and foremost because alleged stock sales cannot "augment" an inference of scienter that is not otherwise available from any factual allegations in the Complaint. The Complaint simply does not allege facts even remotely showing that Lidow knew about any fraud, and allegations of stock sales, routine or otherwise, cannot fill that void.

Moreover, the alleged stock sales do not support an inference of scienter, strong or otherwise, as a matter of law. First, the Complaint does not allege any facts supporting an inference that the sales were "unusual in timing and amount." *In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (holding, in the context of suspicious insider trading, that it is a plaintiff's "burden under the PSLRA to provide clear context from which [a court] can find a strong inference of fraud"); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001) (citing *Acito* v. *IMCERA Group, Inc.*, 47 F.3d 47, 47 (2d Cir. 1995)). "[I]nsider trading is only suspicious when it is dramatically out of line with prior trading practices at times calculated to maximize personal benefit from undisclosed inside information." *Silicon Graphics,* 183 F.3d at 986. The Complaint, however, does not allege facts concerning the timing of the stock trades that suggest they were suspicious or unusual. *See* Compl. ¶ 291 (alleging only that the shares were sold "under stock trading plans, many of which were entered into during the [49-month] Class Period"). To the contrary, because the sales were non-discretionary. And, because the sales were made pursuant to a non-discretionary 10b5-1 trading plan, they raise the opposite inference – that the sales were *not* unusual or suspicious. *See, e.g.*, *Wietschner* v. *Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (2003) (citing *Gompper* v. *VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002)).

1    Second, the stock sales over a four-year period represented only 23% of

2  Lidow's holdings at the beginning of the class period,[3] well within the percentage of sales

3  regularly found to raise no inference of scienter.  *See, e.g.*, *In re Vantive Corp.*, 283 F.3d

4  at 1094 (defendant's sale of 38% of stock holdings did not raise strong inference of

5  fraud); *Ronconi* v. *Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (holding that sales

6  amounting to between 10 and 17 percent of an individual's holdings are inherently *not*

7  suspicious); *Wietschner*, 294 F. Supp. 2d at 1116 (sales of 37.7 percent of an individual's

8  holdings not sufficiently suspicious to raise an inference of scienter).  Moreover, most of

9  the sales came after additional options vested, so Lidow's holdings barely decreased over

10  the class period, and Lidow sold no shares at all in the last year of the class period.

11  Compl. ¶ 292.  The fact that after the alleged sales Lidow remained fully invested in IR,

12  holding over two million shares, or 2.9% of IR's outstanding stock,[4] categorically defeats

13  any inference of scienter.  *See In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 1000

14  (D. Ariz. 1999) ("[C]ourts have held that where an individual retained more shares than

15  he or she sold, the resulting aggregate loss will defeat an inference of fraud" and holding

16

17  [3]    *See* International Rectifier Corp.'s Form 14A, filed with the Securities and
18  Exchange Commission October 10, 2003 ("2003 Proxy").  The 2003 Proxy is
   attached as Exhibit A to the Declaration of Robert A. Sacks, filed concurrently
19  herewith.  Consideration of matters subject to judicial notice is appropriate on a
   Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  *See, e.g.*, *United States* v.
20  *Ritchie*, 342 F.3d 903, 908-909 (9th Cir. 2003); *Branch* v. *Tunnell*, 14 F.3d 449,
   454 (9th Cir. 1994), *overruled on unrelated grounds by Galbraith* v. *County of
21  Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Judicial notice of SEC filings is
   appropriate where, as here, the plaintiff relies on them in the Complaint.  *See*
22  Lidow's Request for Judicial Notice, filed concurrently herewith.  According to the
   2003 Proxy, as of September 26, 2003, two months after the class period began,
23  Lidow held 2,113,596 shares, including options that were vested or would vest
   within 60 days.  (2003 Proxy at 4.)  Plaintiffs allege that Lidow sold 490,000
24  shares during the class period, approximately 23% of the shares he held as of
   September 26, 2003.

25  [4]    *See* International Rectifier Corp.'s Form 14A filed with the SEC on October 18,
26  2006 ("2006 Proxy"), attached as Exhibit B to the Declaration of Robert A. Sacks.
   As of September 22, 2006, Lidow held 2,106,448 shares, including options that
27  were vested or would vest within 60 days.  (2006 Proxy at 5.)  Those shares
   comprised 2.9% of the Company's outstanding shares.  (*Id*.)  Lidow has not sold
28  any shares since that time.  Compl. ¶ 292.

1  that sale did not raise a strong inference of scienter).  The Complaint fails to allege facts

2  that would transform Lidow's pre-planned and proportionately modest stock sales into

3  the sort of suspicious act that might lend credence to the Complaint's nonexistent

4  allegations of scienter.  If anything, Lidow's continuing investment in IR negates any

5  possible inference of scienter.

6          **B.     Plaintiffs Have Not Pled Control Person Liability.**

7          Plaintiffs have also failed to state a claim under Section 20(a) of the

8  Exchange Act.  To establish "control person" liability under Section 20(a), a plaintiff

9  must first allege (1) a primary violation and (2) that the defendant had control over the

10 violator.  *See Hollinger* v. *Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990).  For

11 the reasons set forth herein and in the moving papers of other defendants, which are

12 incorporated herein by reference, plaintiffs have failed adequately to plead primary

13 liability as to any individual or entity subject to Lidow's "control."  Thus, plaintiffs'

14 Section 20(a) claim against Lidow must be dismissed.

15         Moreover, even if plaintiffs have succeeded in alleging primary liability as to

16 others, they have failed to plead particular facts beyond Lidow's status as IR's former

17 CEO and alleged wrongdoing by others.  Such facts are insufficient to state a claim

18 against Lidow under Section 20(a).  Plaintiffs apparently assume that Lidow's status as

19 CEO rendered him an insurer of IR's stock against any and all potential misconduct by

20 any IR employee.  That assumption is unfounded.  When Congress enacted Section 20(a),

21 it rejected a Senate version of the statute that would have imposed such "insurer's

22 liability" in favor of a statutory regime based on fiduciary principles.  *See Rochez*

23 *Brothers, Inc.* v. *Rhoades*, 527 F.2d 880, 885 (3d Cir. 1975) (discussing legislative

24 history of Section 20(a)); *Carpenter* v. *Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir.

25 1979) (same).  In rejecting the Senate's "insurer's liability" standard, Congress indicated

26 that it "did not intend anyone to be an insurer against the fraudulent activities of another."

27 *Id.*  Instead, they extended liability only to control persons who breach their fiduciary

28

1   responsibilities.  Thus, to state a claim under Section 20(a), plaintiffs must allege more

2   than a defendant's mere position in the corporate hierarchy.

3              Precisely how much more has been a source of considerable confusion in the

4   courts.  The Ninth Circuit has held that a plaintiff need not plead "culpable participation"

5   to state a control person claim under Section 20(a).  *Hollinger* v. *Titan Capital Corp.*, 914

6   F.2d 1564, 1575 (9th Cir. 1990).  *But see In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.

7   Supp. 2d 371, 418 (S.D.N.Y. 2001) (holding that "recklessness is the appropriate

8   minimum standard of culpability that plaintiffs must plead under §20(a).");  *Rochez*

9   *Brothers, Inc.*, 527 F.2d at 885 (requiring facts demonstrating "culpable participation");

10  *Boguslavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (stating that a prima facie case

11  under §20(a) required facts showing "that the controlling person was in some meaningful

12  sense a culpable participant");  *Carpenter*, 594 F.2d at 394 (requiring facts demonstrating

13  "something more than negligence to establish liability").

14             Nonetheless, even if not required to plead "culpable participation," the

15  Supreme Court has made clear that plaintiffs must allege facts establishing more than

16  mere negligence on the part of the control person.  *See Ernst & Ernst* v. *Hochfelder*, 425

17  U.S. 185, 197 (1976).  In *Hochfelder*, the Supreme Court recognized that "each of the

18  provisions of the 1934 act that expressly create civil liability . . . require something more

19  than negligence," including Section 20.  *Id.* n. 28.  Given Congress' intent, in enacting

20  the PSLRA, to make it "substantively harder for plaintiffs to bring securities fraud cases,"

21  it is evident that plaintiffs must plead particular facts showing something more than

22  negligence on the part of the alleged control person.  Plaintiffs have put forward no facts

23  beyond Lidow's position within IR.  They do not even state a claim for negligence, much

24  less the "something more" that the Supreme Court has required.  Plaintiffs have therefore

25  failed to state a *prima facie* claim under Section 20(a) as to Lidow.

26

27

28

1

**IV.    CONCLUSION**

2

       For the foregoing reasons, plaintiffs' Consolidated Class Action Complaint

3

should be dismissed as to defendant Alexander Lidow.

4

5

Dated: March 6, 2008

6

                              /s/ Robert A. Sacks

                             Robert A. Sacks

7

                             Jason de Bretteville

                             Diane L. McGimsey

8

                             Edward E. Johnson

                             SULLIVAN & CROMWELL LLP

9

                             1888 Century Park East

                             Los Angeles, California 90067

10

                             Telephone    (310) 712-6600

                             Facsimile:    (650) 461-5700

11

12

                             *Attorneys for Defendant Alexander Lidow*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sᴜʟʟɪᴠᴀɴ & Cʀᴏᴍᴡᴇʟʟ LLP