SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership Including
Professional Corporations
JOHN P. STIGI III, State Bar No. 208342
jstigi@sheppardmullin.com
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Telephone: (213) 620-1780

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership Including
Professional Corporations
CHRISTINA L. COSTLEY, State Bar No. 227134
ccostley@sheppardmullin.com
1111 Chapala Street, 3d Floor
Santa Barbara, California 93111
Telephone: (805) 879-1818

Attorneys for Defendant
INTERNATIONAL RECTIFIER
CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No. CV 07-02544 JFW (VBKx) |
| INTERNATIONAL RECTIFIER CORPORATION SECURITIES LITIGATION. | Hon. John F. Walter |
| | **DEFENDANT INTERNATIONAL RECTIFIER CORPORATION'S (1) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** *[CORRECTED VERSION]* |
| | **[[PROPOSED] ORDER LODGED CONCURRENTLY HEREWITH]** |
| | Date:      May 5, 2008<br>Time:      1:30 p.m.<br>Courtroom: 16 |
| | Complaint filed:  April 17, 2007<br>Trial Date:       None set |

INTERNATIONAL RECTIFIER'S MOTION TO
DISMISS; MEMO. OF PTS. & AUTHS.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................1

II.  STATEMENT OF THE CASE ......................................................................2

     A.   Background ..........................................................................................2

     B.   Section IV(A) – Inaccurate Revenue Recognition at Foreign
          Locations ............................................................................................3

     C.   Section IV(B) – Fictitious Accounts Receivable at Japan
          Subsidiary ...........................................................................................5

     D.   Section IV(C) – Including Operating Costs as Restructuring
          Costs ...................................................................................................5

     E.   Section IV(D) – Transfer Pricing .......................................................6

     F.   Section IV(E) – Incorrect Classification of Tax Benefits ..................7

     G.   Section IV(F) – IR Allegedly "Covers Up" the Fraud ......................7

III. ARGUMENT ................................................................................................8

     A.   Plaintiffs Fail to State a Claim Under Section 10(b) and Rule
          10b-5 ...................................................................................................8

          1.   Plaintiffs Fail to Plead Facts Giving Rise to a Strong
               Inference that the Company Acted with Scienter ......................11

               a.   Alleged Knowledge of Non-Speaking Employees
                    Does Not Support a Strong Inference of IR's
                    Scienter ..........................................................................11

               b.   Plaintiffs' CW Allegations Do Not Give Rise to a
                    Strong Inference of IR's Scienter ....................................13

               c.   Plaintiffs' Allegations Concerning IR's Disclosures
                    Do Not Give Rise to a Strong Inference of IR's
                    Scienter ..........................................................................15

               d.   Plaintiffs Fail to Plead Sufficient Facts Giving Rise

-i-

W02-EAST:1JPS1\200060532.8

INTERNATIONAL RECTIFIER'S MOTION TO
DISMISS; MEMO. OF PTS. & AUTHS.

to a Strong Inference of IR's Deliberate Recklessness in Connection With Alleged Fraud in Japan ............................................................................17

e.     Plaintiffs' Allegations of Individuals' Motives Do Not Support a Strong Inference of IR's Scienter ............18

f.     The "Partial Disclosure" Allegations Should Be Dismissed Because Plaintiffs Fail to Plead Knowledge by the Audit Committee................................19

2.     Plaintiffs Fail to Plead Loss Causation......................................20

3.     Plaintiffs Fail to Comply With Rule 8........................................21

B.     Plaintiffs Fail to State a Claim Under Section 20(a) ...........................22

C.     Plaintiffs Lack Authority to Assert Claims Based Upon the Expanded Class Period...........................................................................22

IV.     CONCLUSION ..........................................................................25

NOTICE OF MOTION & MOTION TO DISMISS;
DEFENDANTS' MEMO. OF PTS. & AUTHS.

## TABLE OF AUTHORITIES

<u>Cases</u>

*In re Acterna Corp. Sec. Litig.*,
378 F. Supp. 2d 561 (D. Md. 2005) ..................................................21

*In re Apple Computer, Inc., Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002)......................................11, 12

*In re Calpine Corp. Sec. Litig.*,
288 F. Supp. 2d 1054 (N.D. Cal. 2003)...........................................19

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ......................................................23, 24

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) .......................................................17, 18

*In re Cirrus Logic Sec. Litig.*,
946 F. Supp. 1446 (N.D. Cal. 1996)................................................16

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005)...........................................19

*In re Cyberonics Inc. Sec. Litig.*,
468 F. Supp. 2d 936 (S.D. Tex. 2006)..............................................25

*D.E. & J. Ltd. v. Conaway*,
284 F. Supp. 2d 719 (E.D. Mich. 2003) ..........................................21

*DSAM Global Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002) ...........................................................16

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................10, 21

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994) ................................................................8

*Gold v. Morrice*,
No. CV 07-00931-DDP (JTL) (C.D. Cal. Jan. 31, 2008)................11

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ...........................................................10

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007).....................................*passim*

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ...................................................*passim*

*In re LeapFrog Enterprises, Inc. Sec. Litig.*, No. CV 03-05421-RMW,
2005 U.S. Dist. LEXIS 44899 (N.D. Cal. July 5, 2005) .................25

- iii -

W02-EAST:1JPS1\200060532.8

NOTICE OF MOTION & MOTION TO DISMISS;
DEFENDANTS' MEMO. OF PTS. & AUTHS.

*Lilley v. Charren,*
  936 F. Supp. 708 (N.D. Cal. 1996)................................................................22

*Lipton v. Pathogenesis Corp.,*
  284 F.3d 1027 (9th Cir. 2002) .....................................................................22

*In re Lucent Tech., Inc. Sec. Litig.,*
  194 F.R.D. 137 (D.N.J. 2000) ......................................................................23

*In re McKesson HBOC Sec. Litig.,*
  126 F. Supp. 2d 1248 (N.D. Cal. 2000).........................................................17

*Nordstrom, Inc. v. Chubb & Son, Inc.,*
  54 F.3d 1424 (9th Cir. 1995) ...............................................................11, 12

*In re NorthPoint Communications Group, Inc. Sec. Litig.,*
  184 F. Supp. 2d 991 (N.D. Cal. 2001)..........................................................14

*In re Read-Rite Corp. Sec. Litig.,*
  335 F.3d 843 (9th Cir. 2003) .........................................................................9

*Ronconi v. Larkin,*
  253 F.3d 423 (9th Cir. 2001) ........................................................9, 10, 19

*In re Select Comfort Corp. Sec. Litig.,* No. CV 99-884-DSD (JMM),
  2000 U.S. Dist. LEXIS 22697 (D. Minn. Jan. 27, 2000) ................................25

*In re Silicon Graphics, Inc. Sec. Litig.,*
  183 F.3d 970 (9th Cir. 1999)............................................9, 13, 14, 19

*South Ferry LP #2 v. Killinger,*
  399 F. Supp. 2d 1121 (W.D. Wash. 2005) ....................................................19

*Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.,*
  365 F.3d 353 (5th Cir. 2004) .......................................................................12

*In re Splash Technology Holdings, Inc. Sec. Litig.,*
  160 F. Supp. 2d 1059 (N.D. Cal. 2001).........................................................11

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier,*
  2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005)..................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  127 S. Ct. 2499 (2007) ...................................................................*passim*

*Wenderhold v. Cylink Corp.,*
  188 F.R.D. 577 (N.D. Cal. 1999) ...............................................................23

*Wenger v. Lumisys, Inc.,*
  2 F. Supp. 2d 1231 (N.D. Cal. 1998)........................................................11, 22

*In re Worlds of Wonder Sec. Litig.,*
  35 F.3d 1407 (9th Cir. 1994).......................................................................16

- iv -

W02-EAST:1JPS1\200060532.8

NOTICE OF MOTION & MOTION TO DISMISS;
DEFENDANTS' MEMO. OF PTS. & AUTHS.

<u>Statutes, Rules and Other Authority</u>

15 U.S.C. § 78j(b) ................................................................................................*passim*

15 U.S.C. § 78t(a) ...........................................................................................3, 22

15 U.S.C. § 78u-4 ..............................................................................1, 9, 10, 23

C.D. Cal. L.R. 7-3 .....................................................................................................1

H.R. Conf. Rep. 104-369 ........................................................................................23

Fed. R. Civ. P. 8(a) .............................................................................1, 10, 11, 21

Fed. R. Civ. P. 9(b) .............................................................................1, 10, 11, 22

Fed. R. Civ. P. 12(b)(6) ..........................................................................................25

NOTICE OF MOTION & MOTION TO DISMISS;
DEFENDANTS' MEMO. OF PTS. & AUTHS.

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on May 5, 2008, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 16 of the above-referenced court located at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, California, before the Honorable John F. Walter, United States District Judge, defendant International Rectifier Corporation ("International Rectifier," "IR" or the "Company") will and hereby does move the Court pursuant to the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), 15 U.S.C. § 78u-4, *et seq.*, and Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing plaintiffs' Consolidated Class Action Complaint ("CAC").  This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities (included herein); the accompanying Request for Judicial Notice and Declaration of Christina L. Costley ("Decl."), together with attached exhibits; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

This motion is made following the conference of counsel pursuant to C.D. Cal. L.R. 7-3, which took place on February 8, 2008.

Dated:  March 6, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      <u>    */s/ JOHN P. STIGI III*    </u>
JOHN P. STIGI III
Attorneys for Defendant
INTERNATIONAL RECTIFIER
CORPORATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Reform Act imposes on plaintiffs a heavy pleading burden before they may impose on IR the massive costs of discovery in this litigation.  The Reform Act requires plaintiffs to plead detailed facts giving rise to a strong inference that IR, through its senior management based in California, issued false or misleading public statements about its financial condition while being aware of or deliberately ignoring accounting problems at foreign subsidiaries or factories.  Where, as here, plaintiffs seek to charge a parent corporation with an accounting fraud allegedly undertaken at foreign locations, plaintiffs cannot meet their burden merely by alleging that management at headquarters failed adequately to monitor internal controls at those locations, or that the parent's management had access to information that could have or should have alerted them to the alleged fraud.  Instead, plaintiffs must plead specific facts strongly implying that management at headquarters actually was aware of alleged accounting problems at the foreign locations.

Plaintiffs do not meet their burden in the CAC.  Plaintiffs' allegations here rest exclusively upon (1) IR's own disclosures that it might need to restate certain of its historical financial statements due to violations of generally accepted accounting principles ("GAAP"); (2) assertions attributed to an assortment of unidentified former lower-level employees of IR, nearly none of whom is alleged to have been part of IR's accounting department; and (3) unremarkable stock sales by some of IR's insiders.  These are precisely the kinds of allegations that courts in this Circuit, including this Court, reject as insufficient to give rise to a strong inference of defendants' scienter.  Plaintiffs also fail to plead that IR's investors suffered a cognizable loss by reason of many of the alleged false statements.  Finally, co-lead plaintiffs in this case lack authority to expand by nearly three years the original 17-month class period described in the Reform Act notice published in this case.  For the reasons discussed below, the Court should grant IR's motion to dismiss.

- 1 -

## II.   STATEMENT OF THE CASE

### A.   Background

International Rectifier designs, manufactures and markets power management product devices that use power semiconductors.  CAC ¶ 1.[1]  The Company is head-quartered in El Segundo, California. *Id.*  It employs more than 6,000 people in offices, plants and subsidiaries located across three continents.  Ex. A.

On April 9, 2007, the Company announced that the Audit Committee of its Board of Directors had determined, based upon an interim report from an internal investigation, that it might need to restate its financial statements for the quarters ended September 30, 2005 through December 31, 2006, and for the year ended June 30, 2006.  CAC ¶ 266.  This was precipitated, the Company explained, by material weaknesses in internal controls over financial reporting at a foreign subsidiary. *Id.*

Within days, the first of two complaints was filed in this Court on behalf of a putative class of purchasers of IR stock from October 27, 2005 through April 9, 2007 (the "Original Class Period").  In June 2007, the Court consolidated the two actions and appointed as co-lead plaintiffs the Massachusetts Laborers' Pension Fund and the General Retirement System of the City of Detroit.  The Court entered this order based upon co-lead plaintiffs' representations that they suffered the great-est alleged losses among the members of the putative class during the Original Class Period who sought appointment as lead plaintiff.

On January 14, 2008, plaintiffs filed the CAC.  The CAC alleges two claims for relief.  Count I asserts a claim for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  Count II asserts a claim for control-ling person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

---

[1]   On January 17, 2008, the clerk of this Court provided plaintiffs with notice that the CAC had been improperly filed pursuant to General Order 07-08.  Plaintiffs have not, to IR's knowledge, taken steps to remedy this defect.

INTERNATIONAL RECTIFIER'S MOTION TO
DISMISS; MEMO. OF PTS. & AUTHS.

The CAC names as defendants five of IR's former officers — Alex Lidow, former Chief Executive Officer; Michael P. McGee, former Chief Financial Officer (together, the "Senior Executive Defendants"); Robert Grant, former Vice President of Global Sales and Marketing; Ivo Jurek, former Vice President of Automotive Products; and Fumihide Esaka, former Vice President of the Japan subsidiary (collectively, the "Officer Defendants") — along with Eric P. Lidow, the Chairman of IR's Board (with the Officer Defendants, the "Individual Defendants"). Count I is asserted against the Company and the Officer Defendants, while Count II is asserted against all defendants.

The CAC also purports to extend the class period at both ends by nearly three years. The new class period alleged in the CAC now runs more than four years, from July 31, 2003, through August 29, 2007 (the "Extended Class Period").

Plaintiffs' claims center around a series of press releases, media interviews and filings with the Securities and Exchange Commission ("SEC"), which are recited *ad nauseam* in nearly 100 pages of the CAC. *See* CAC ¶¶ 110-278. Plaintiffs allege that the Senior Executive Defendants made all of these statements except the Forms 10-K, which Eric P. Lidow also signed, and the April 9, 2007 disclosure, which was issued by the Audit Committee. Plaintiffs allege that each of these disclosures was fraudulent.

### B.     Section IV(A) – Inaccurate Revenue Recognition at Foreign Locations

In Section IV(A) of the CAC plaintiffs allege that IR's disclosures were false because the Company improperly recognized revenue, in contravention of Staff Accounting Bulletin No. 104 ("SAB 104"), based on shipments that had not yet left the premises of IR's foreign subsidiaries and factories. CAC ¶ 41. (Because IR disclosed its revenue recognition policy only in its Forms 10-K, this disclosure does not affect any of IR's other public statements.) As plaintiffs point out, IR already has acknowledged that such practices occurred at its Japan subsidiary. *Id.* ¶ 44. The

- 3 -

Company has not, however, indicated that these practices occurred at other locations or stated whether the Senior Executive Defendants were aware of these practices in Japan.  Recognizing that IR's disclosures stopped short of making such assertions, plaintiffs rely upon information they attribute to so-called "confidential witnesses" ("CWs"), an assortment of relatively low-level former IR employees who spoke with plaintiffs' investigators.  Based upon the CW allegations, plaintiffs assert that the Senior Executive Defendants *should have known* about the fraud in Japan because they had access to internal Company records and databases.  *Id.* ¶¶ 48, 52-53.  Plaintiffs allege no other facts about these defendants that would allow this Court to infer strongly that they knew or were deliberately reckless in not knowing about improper accounting practices in Japan at the times of IR's public statements.

Plaintiffs also allege that IR improperly recognized revenue on products that purportedly had not yet shipped from its Tijuana factory.  *Id.* ¶ 47.  The Company has not disclosed accounting issues in Tijuana.  Plaintiffs' sole support for the Tijuana allegations, therefore, comes from CWs.  For example, plaintiffs allege that CW1, who worked in the automotive division in El Segundo, said that IR employees joked about a "parking lot" in Tijuana that "was full of trailers" at the end of quarters.  *Id.* ¶ 51.  Plaintiffs do not allege facts suggesting how CW1, who allegedly worked in California, would have personal knowledge of trailers located in a parking lot in Tijuana.  Nor do plaintiffs allege facts to suggest that CW1, who was *not* an accountant, would have known whether loading trailers in a Tijuana parking lot undermined the accounting method employed by IR for revenues associated with products allegedly on those trailers.  Indeed, none of the CWs to whom plaintiffs attribute the Tijuana allegations is alleged to have been an accountant.

Tellingly, plaintiffs refer to at least one CW who, presumably, *should have known* if the Tijuana parking lot was "full of trailers" at quarter end:  CW10, whom plaintiffs claim was the Director of Sales in Latin America.  *Id.* ¶ 306.  Yet plaintiffs do not attribute to this CW any allegations about the Tijuana parking lot, suggesting

- 4 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

1    that the purported Tijuana accounting issue is unsubstantiated rumor among now-

2    former employees with no personal knowledge of proper accounting practices.

3    **C.      Section IV(B) – Fictitious Accounts Receivable at Japan Subsidiary**

4        In Section IV(B) of the CAC plaintiffs allege that IR's public disclosures

5    during the Extended Class Period were false because IR improperly "factored"

6    accounts receivable at the Japan subsidiary and then improperly accounted for this

7    practice.  *Id.* ¶ 66.  The CAC contains a lengthy discussion of factoring and why it

8    supposedly requires the Company to restate its financials.  *Id.* ¶¶ 67, 70-73.  For

9    purposes of this motion, however, that discussion is irrelevant.  As plaintiffs point

10   out, IR has acknowledged that "fictitious customer invoices were sold as part of the

11   Japan subsidiary's accounts receivable financing facilities" and that the Company

12   "plans to reflect these sales as advances against the Company's accounts receivable

13   financing facilities and as short-term debt for the relevant periods."  *Id.* ¶ 68.

14       Plaintiffs do not allege that the Senior Executive Defendants were aware of

15   this practice.  *Id.* ¶ 68-73.  Nor do plaintiffs allege that this practice occurred any-

16   where besides the Japan subsidiary.

17   **D.      Section IV(C) – Including Operating Costs as Restructuring Costs**

18       In Section IV(C) of the CAC plaintiffs allege that certain unidentified indivi-

19   duals at IR manipulated the Company's gross margins, operating expenses and pro

20   forma earnings by incorrectly characterizing operating expenses as restructuring

21   costs.  *Id.* ¶ 74.  Plaintiffs acknowledge that these expenses were still reflected on

22   IR's GAAP financial statements.  *Id.* ¶ 77.  They allege, however, that this practice

23   rendered the Company's pro forma financial statements inaccurate because those

24   statements did not include the restructuring charges.  *Id.*  In support of this claim,

25   plaintiffs again rely on the Company's own disclosures.  Specifically, they point to

26   IR's disclosure, on August 31, 2007, that it had incorrectly reported ordinary operat-

27   ing costs as restructuring costs and IR's November 30, 2007 disclosure that it

28   intended to reclassify certain expenses as part of the restatement.  *Id.* ¶¶ 85-86.

- 5 -

Plaintiffs do not allege that the Senior Executive Defendants knew or should have known of this practice.  Instead, based on representations from CW1, plaintiffs lay the blame for this practice squarely at the feet of Mr. Jurek, whom they claim "regularly scrutinized and manipulated the numbers for the automotive division by reclassifying operating expenses as restructuring costs" (*id.* ¶ 88) and Mike Love, not a named defendant, who allegedly "worked with Jurek to implement Jurek's accounting manipulations."  *Id.* ¶ 90.

### E.    Section IV(D) – Transfer Pricing

In Section IV(D) of the CAC plaintiffs allege that IR's Extended Class Period statements were false because the Company understated taxable income in higher tax jurisdictions and overstated taxable income in lower tax jurisdictions by manipulating the Company's "transfer pricing" figures.  *Id.* ¶ 27.

Once again, plaintiffs' primary support for this allegation comes from IR's public disclosures.  On August 31, 2007 the Company announced that it had identified issues with its transfer pricing methodology and that, as a result of this practice, IR would restate its tax liabilities from prior years.  *Id.* ¶¶ 93-94.  As with the other allegations, plaintiffs do not allege that IR announced that the Senior Executive Defendants were aware of this practice.  Instead, they rely upon CW3, a Director of Strategic Projects in Temecula, who allegedly claims that IR's "headquarters provided a matrix to the Company's various business units that allocated profits between the Company's various manufacturing and selling entities for the Company's different products.  The matrix was completed by defendant McGee and the Company's Vice President of Tax, Chip Morgan. . . . [D]etermining the proper allocation of profit was the responsibility of McGee and Morgan."  *Id.* ¶¶ 99-100.  Plaintiffs do not describe this matrix in detail or explain how the alleged matrix was used to effectuate transfer pricing.  In fact, plaintiffs do not even allege that the allocation of profits allegedly described in the matrix, purportedly undertaken by Messrs. McGee and Morgan, was inappropriate or in any way related to the practice

- 6 -

INTERNATIONAL RECTIFIER'S MOTION TO
DISMISS; MEMO. OF PTS. & AUTHS.

of transfer pricing.  Moreover, CW3, as a Director of Strategic Projects and not a member of the Company's accounting staff, would not have had any basis to know personally how the matrix related to allegedly improper transfer pricing.

### F.     Section IV(E) – Incorrect Classification of Tax Benefits

In Section IV(E) of the CAC plaintiffs complain about a disclosure made by the Company on May 15, 2006, long before this litigation or the internal investigation commenced, in which IR announced that it was seeking a filing extension for its Form 10-Q for the quarter ended March 31, 2006, in order to complete a review of the Company's classification of excess tax benefits from the exercise of stock options under Statement of Financial Accounting Standards No. 123.  *Id.* ¶¶ 101-102, 223.  The Company added that, as a result of this error, it would be moving $4.3 million from operating activities to net cash for the two quarters ended December 31, 2005.  *Id.* ¶ 102.  On May 17, 2006 the Company filed a Form 10-Q in which it announced that the Company "did not maintain effective controls over the preparation, review and presentation of our consolidated statements of cash flow" for the quarters ended December 31, 2005 and September 30, 2005.  *Id.* ¶¶ 103-104, 224.  Plaintiffs' allege that as a result of the announcement, IR's stock price decreased by 3.3%.  *Id.* ¶ 106.  Plaintiffs do not allege that the Individual Defendants were aware that IR had improperly classified this $4.3 million tax benefit.

### G.     Section IV(F) – IR Allegedly "Covers Up" the Fraud

Finally, in Section IV(F) of the CAC plaintiffs allege, apparently, that the Company's disclosures during the Extended Class Period were false because IR laid off several accountants in 2004.  Plaintiffs' only support for this allegation comes from CW8, who herself was laid off by the Company in August 2006.  *Id.* ¶ 107.  Plaintiffs attempt to paint a nefarious picture of cover-ups and firings by alleging that CW8 told them that an internal auditor, Mark Larson, "was laid off after he started investigating suspicious activities in Japan."  *Id.* ¶ 109.  Plaintiffs do not identify CW8's basis of knowledge for this allegation, nor do they allege what Mr.

- 7 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

1   Larson supposedly discovered (if anything) through his investigation or whom he

2   told about that investigation.  Significantly, however, plaintiffs are very careful in

3   their choice of words, alleging that Mr. Larson was laid off "*after*," and not

4   "*because*," he started that investigation.  *Id.* ¶ 109 (emphasis added).

5   **III.    ARGUMENT**

6          **A.      Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5**

7          "In cases involving publicly-traded securities and purchases or sales in public

8   securities markets, the elements of an action under Section 10(b) and Rule 10b-5

9   are:  (1) a material misrepresentation or omission, (2) scienter, (3) a connection with

10   the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causa-

11   tion."  *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1152 (C.D.

12   Cal. 2007) (Walter, J.).  Federal Rule of Civil Procedure 9(b) and the Reform Act

13   govern the pleading requirements for claims under Section 10(b) and Rule 10b-5.

14   *Id.*  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

15   constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

16   To comply with Rule 9(b), "the complaint must specify such facts as the times,

17   dates, places, and benefits received, and other details of the alleged fraudulent acti-

18   vity."  *Hansen*, 527 F. Supp. 2d at 1151 (citation omitted).  Allegations of loss cau-

19   sation also must be pleaded with particularity under Rule 9(b).  *See First Nationwide*

20   *Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).

21          The Reform Act "requires a heightened pleading standard for allegations

22   regarding misleading statements and omissions that is similar to the heightened

23   pleading standard required by Rule 9(b)."  *Hansen*, 527 F. Supp. 2d at 1151.  Thus,

24   the Reform Act provides that "the complaint shall specify each statement alleged to

25   have been misleading, the reason or reasons why the statement is misleading, and, if

26   an allegation regarding the statement or omission is made on information and belief,

27   the complaint shall state with particularity *all facts* on which that belief is formed."

28   15 U.S.C. § 78u-4(b)(1) (emphasis added).  The "all facts" requirement "is the

- 8 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

[Reform Act]'s single most important weapon against pleading fraud by hindsight because it forces plaintiffs to reveal whether they base their allegations on an inference of earlier knowledge drawn from later disclosures or from contemporaneous documents or other facts." *Hansen*, 527 F. Supp. 2d at 1152 (citation omitted).

"In addition, the [Reform Act] requires a heightened pleading standard for state of mind:  'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Id.* at *21 (quoting 15 U.S.C. § 78u-4(b)(2)).  The "required state of mind" is scienter, defined as "actual knowledge" that a statement or omission is false or "deliberate recklessness" as to the truth or falsity of a statement or omission.  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 975-77 (9th Cir. 1999).  Deliberate recklessness "only satisfies scienter under § 10(b) to the extent it reflects some degree of intentional or knowing misconduct."  *Hansen*, 527 F. Supp. 2d at 1151.  To plead a strong inference of scienter, "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made."  *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)).

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007), the Supreme Court provided guidance to courts considering whether the inference of scienter raised by a complaint is sufficiently "strong":

> It does not suffice that a reasonable factfinder plausibly could infer
> from the complaint's allegations the requisite state of mind.  . . .  To
> qualify as "strong" within the intendment of [the Reform Act], we hold,
> an inference of scienter must be more than merely plausible or reason-
> able — it must be cogent and at least as compelling as any opposing
> inference of nonfraudulent intent.

- 9 -

*Tellabs*, 127 S. Ct. at 2504-05, *quoted in Hansen*, 527 F. Supp. 2d at 1155.  Thus, *Tellabs* sets out a two-part test for determining whether an inference of scienter is "strong."  First, an inference of scienter is sufficiently strong "only if a reasonable person would deem the inference of scienter *cogent* . . . ."  Tellabs, 127 S. Ct. at 2510 (emphasis added).  The Supreme Court used "cogent" as a synonym for "strong," a term to which the Court refers throughout the opinion as "powerful or cogent" (*id.*), "persuasive, effective, and cogent" (*id.* at 2510) or "powerful to demonstrate or convince."  *Id.*  Second, in addition to being "cogent," the inference of scienter offered by plaintiffs must be "at least as compelling" as any competing inference of nonfraudulent intent.  *Id.* at 2504-05.  Thus, courts must evaluate *all* inferences reasonably arising from the facts alleged in the complaint (as well as other sources ordinarily examined when ruling on a motion to dismiss) and then determine which inference is more compelling.  *Id.*; *accord Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).  It is only when plaintiffs satisfy *both* of these requirements that a complaint will survive dismissal.  *See* 15 U.S.C. § 78u-4(b)(3); *see also Ronconi*, 253 F.3d at 437 ("The heightened pleading requirements of the [Reform Act] are an unusual deviation from the usually lenient requirements of federal rules pleading.  In few other areas are motions to dismiss for failure to state a claim upon which relief can be granted so powerful.").

Finally, securities fraud complaints also must comply with Rule 8(a) of the Federal Rules of Civil Procedure.  Rule 8(a) requires plaintiffs to plead "a short and plain statement of the claim" in order to provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 1634, 161 L. Ed. 2d 577, 588 (2005).  In the context of a securities case, this rule requires plaintiffs to identify concisely each allegedly inaccurate statement and the facts allegedly supporting a cause of action based on that statement.  *See*, *e.g.*, *Gold v. Morrice*, No. CV 07-00931, slip op. at 5-6 (C.D. Cal. Jan. 31, 2008) (Pregerson, J.).  Courts routinely criticize plain-

- 10 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

tiffs for filing prolix and convoluted securities fraud complaints in violation of Rule 8(a). *See, e.g.*, *Gold*, slip op. at 7 n.6; *In re Splash Technology Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243-44 (N.D. Cal. 1998); *cf. Hansen*, 527 F. Supp. 2d at 1152 ("Plaintiff has failed to craft a Complaint in such a way that a reader can, without undue effort, divine why each alleged statement was false or misleading.") (citations omitted). "The heightened pleading standard of Rule 9(b) is not an invitation to disregard the requirement of simplicity, directness, and clarity of [Rule] 8." *Wenger*, 2 F. Supp. 2d at 1239.

### 1. Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference that the Company Acted with Scienter

#### a. Alleged Knowledge of Non-Speaking Employees Does Not Support a Strong Inference of IR's Scienter

The primary flaw in the CAC's scienter allegations is that the only specific allegations of knowledge pertain to individuals at IR who are not alleged to have been responsible for making the Company's public statements. It is settled law in the Ninth Circuit that the knowledge of lower level employees is not imputed to a corporate defendant. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995); *see also In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) ("The Ninth Circuit has rejected the concept of 'collective scienter' in attributing scienter to a corporation."). At issue in *Nordstrom* was an allegation by an insurer that the corporation had acted in bad faith by disseminating fraudulent documents despite the fact that none of the senior officers or directors were aware that the statements were fraudulent. The insurer urged the court to adopt a view of "collective scienter" that would allow knowledge to be attributed to the corporate entity based on knowledge of lower level employees at the corporation, despite the fact that none of these individuals had made the statements at issue. The Ninth Circuit squarely rejected plaintiffs' argument, noting that "there is no

- 11 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

case law supporting an independent 'collective scienter' theory." *Nordstrom*, 54
F.3d at 1435.  The Ninth Circuit then went on to note that even if "collective scien-
ter" did exist, it did not apply in that case because the insurer had produced no evi-
dence of knowledge on the part of the senior officers and directors, and it is only
their knowledge (and not the knowledge of more junior officers or employees) that
can be imputed to the corporation.  *Id.* at 1435-36.  The reason for this distinction,
the Court explained, is that only the most senior managers at a corporation, those
who have the power to halt the dissemination of information to the market and who
are expressly charged with ensuring compliance with SEC and state laws, that can
bind the company.  *Id.* at 1436.  The district court in *Apple* echoed *Nordstrom*:

> It is not enough to establish fraud on the part of a corporation that one
> corporate officer makes a false statement that another officer knows to
> be false.  A defendant corporation is deemed to have the requisite sci-
> enter for fraud *only if the individual corporate officer making the state-
> ment has the requisite level of scienter*, *i.e.*, knows that the statement is
> false, or is at least deliberately reckless as to its falsity, at the time that
> he or she makes the statement.

*Apple*, 243 F. Supp. 2d at 1023 (emphasis added); *accord Southland Secs. Corp. v.
Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004).

These cases illustrate this critical flaw in the CAC.  Plaintiffs concede that the
Senior Executive Defendants issued every one of the allegedly fraudulent statements
identified in the CAC (except the April 9, 2007 corrective disclosure issued by the
Audit Committee).[2]  Yet they attribute every specific allegation of scienter to lower
level employees, none of whom is alleged to have made (or even to have been auth-

---

[2]   The only other Individual Defendant alleged to have been involved with mak-
ing any of the challenged statements is Eric Lidow, who signed the Forms 10-
K.  Plaintiffs do not assert a Section 10(b) claim against Eric Lidow and
allege no facts regarding his conduct or knowledge.

- 12 -

orized to make) a public statement on behalf of the Company.  This, standing alone, is grounds to dismiss Count I of the CAC.

### b. Plaintiffs' CW Allegations Do Not Give Rise to a Strong Inference of IR's Scienter

The CAC also fails to support a cogent inference of scienter because the *only* allegations that tie any specific defendant to the fraud are those attributed to CWs. As the Seventh Circuit recently explained, after *Tellabs*, use of CWs is heavily disfavored:

> One upshot of the approach that *Tellabs* announced is that we must discount allegations that the complaint attributes to five "confidential witnesses."  . . .  It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences.  Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist.
>
> . . . Concealing names at the complaint stage . . . does nothing but obstruct the judiciary's ability to implement the [Reform Act].

*Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007).

The *Higginbotham* court also observed that the standard it adopted for the Seventh Circuit was more lax than the standard set forth by the Ninth Circuit.  *See Higginbotham*, 495 F.3d at 757 ("This does not mean that plaintiffs must reveal all of their sources, as one circuit has required.") (citing *Silicon Graphics*, 183 F. 3d at 985).  In *Silicon Graphics*, the Ninth Circuit emphasized that the Reform Act requires plaintiffs to "'*state with particularity all facts*' on which their belief is based." *Silicon Graphics*, 183 F.3d at 983 (emphasis added).  In that case, plaintiffs pointed to generically described "internal reports" purportedly "notifying [the defendants] of serious production and sales problems" that were inconsistent with defendants' public statements about their product.  *Id.* at 984.  The Court concluded that these allegations were insufficient to plead scienter because plaintiffs omitted from

- 13 -

INTERNATIONAL RECTIFIER'S MOTION TO
DISMISS; MEMO. OF PTS. & AUTHS.

the complaint "facts relating to the internal reports, including their contents, who prepared them, which officers reviewed them and from whom she obtained the information." *Id.* at 984.  Applying *Silicon Graphics* to CW allegations, courts in this Circuit disregard such allegations where "the complaint does not discuss what the specific duties of these individuals were, or how they came to learn of the information they provide in the complaint." *In re NorthPoint Communications Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1000 (N.D. Cal. 2001).

The CW allegations contained in the CAC are deficient.  As an initial matter, under the reasoning of *Higginbotham*, the fact that these allegations come from "confidential" witnesses is sufficient grounds, standing alone, to discount them.  With this discount applied, the CAC loses substantially all basis (1) for the allegations in Section IV(F) of the CAC, because that section relies exclusively on allegations from CW8; and (2) attributing knowledge to *any* specific defendant (or other employee, for that matter) because every particularized allegation contained in the CAC is attributed to a CW.

Even if this Court were to credit plaintiffs' CW allegations, those allegations still would be insufficient under Ninth Circuit authority.  Plaintiffs fail to offer any "basis" for the knowledge that they attribute to the vast majority of CWs.  *See* CAC ¶¶ 48-62, 88-90, 98-99, 306-310.  In fact, only three of the CW descriptions contain *any* basis for the CWs' alleged knowledge, and even those allegations are insufficient because plaintiffs fail to plead specific facts supporting the inference they urge.  Plaintiffs allege that Mr. McGee provided CW3 with a "matrix" and that determining the proper allocation of profit was the responsibility of Messrs. McGee and Morgan.  *Id.* ¶ 100.  Plaintiffs do not allege that the matrix was related to the practice of transfer pricing, as alleged in Section IV(D).  Nor do they plead facts explaining how a CW who was not in the accounting department would have known how the matrix was used, if at all, for improper accounting purposes.

The two remaining CW allegations also are not probative of defendants' sci-

- 14 -

1   enter.  Plaintiffs allege that CW5 and CW13 participated in conference calls during

2   which Mr. Grant told Mr. Esaka to "make the numbers" and checked to make sure

3   each participant was on track to meet the forecast.  *See id.* ¶¶ 59, 308.  Although

4   plaintiffs suggest that these calls had an impermissible purpose, plaintiffs do not

5   allege facts that might distinguish the statements from potentially legitimate

6   attempts by a head of sales to exhort his sales force to work harder.  Moreover, even

7   if the CWs had stated that they believed these calls were improper, plaintiffs do not

8   allege facts to suggest that these CWs, as salesmen and not accountants, knew how

9   the Company's accountants and outside auditors might handle revenue recognition

10  issues flowing from the transactions.

11              **c.      Plaintiffs' Allegations Concerning IR's Disclosures Do**

12              **Not Give Rise to a Strong Inference of IR's Scienter**

13          Plaintiffs also attempt to allege scienter by pointing to a series of disclosures

14  issued by the Company between May 2006 and September 2007 in which IR stated

15  that, as a result of weak internal controls, certain historical financial results might

16  need to be restated.  These disclosures form the *sole* basis for plaintiffs' allegations

17  in Sections IV(B) and IV(E) of the CAC and, along with the CW allegations, pro-

18  vide the only support for the allegations in the remaining subsections of Section IV.

19          Plaintiffs' efforts in this respect also fall short of the mark.  First, plaintiffs

20  suggest that admissions by the Company that it had "weak internal controls" consti-

21  tutes a sufficient basis from which to strongly infer that defendants were deliberately

22  reckless in issuing allegedly fraudulent financials.  *See*, *e.g.*, Section IV(C), (E).

23  The law is to the contrary.  As this Court has held, "allegations that Defendants had

24  deficient internal controls during the class period does not create a strong inference

25  that Defendants knowingly made false or misleading statements."  *Hansen*, 527 F.

26  Supp. 2d at 1158 (citation omitted).  The Seventh Circuit's decision in *Higginbot-*

27  *ham* is particularly instructive on this point.  As in this case, plaintiffs there argued

28  that the company, by announcing a restatement, had admitted "knowledge" that its

- 15 -

INTERNATIONAL RECTIFIER'S MOTION TO
DISMISS; MEMO. OF PTS. & AUTHS.

internal controls were weak.  The court dismissed this view out of hand:  "That's no news; by definition, *all* frauds demonstrate the 'inadequacy' of existing controls, just as all bank robberies demonstrate the failure of bank security and all burglaries demonstrate the failure of locks and alarm systems."  *Higginbotham*, 495 F.3d at 760 (emphasis in original).

Plaintiffs' attempts to plead scienter by reference to the Company's admission that GAAP had been violated are equally insufficient.  Again, this Court has held that GAAP violations, standing alone, do not support a strong inference of scienter. Rather, "the Complaint must allege GAAP violations, and those allegations must be accompanied by a statement of fraudulent intent."  *Hansen*, 527 F. Supp. 2d at 1157 (citation omitted); *see also DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."). Here, plaintiffs offer no such statement of fraudulent intent, instead concluding that because GAAP was violated, securities fraud must have occurred.  *See*, *e.g.*, Section IV(E).  Furthermore, courts in this Circuit have held that consultation with outside auditors, coupled with an unqualified audit opinion certifying the financials as presented in conformity with GAAP, negates an inference of scienter in the absence of particularized allegations that defendants withheld relevant information from the auditors or knew that the audit was unreliable.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1465 (N.D. Cal. 1996).  The CAC contains no specific allegations regarding deceit of the Company's auditors.

Thus, plaintiffs' reference to the Company's disclosures does not fill the gap left by their CW allegations.  This pleading failure provides sufficient grounds to dismiss the allegations in Section IV(B) and (E), since each of these sections relies entirely on IR's public disclosures.  It also supports dismissal of the remainder of

- 16 -

the CAC because, along with the CW allegations, the Company's disclosures form the bulk of the CAC.

### d.   Plaintiffs Fail to Plead Sufficient Facts Giving Rise to a Strong Inference of IR's Deliberate Recklessness in Connection With Alleged Fraud in Japan

With respect to the allegations of fraud arising from conduct outlined in Sections IV(A), (B), and (F), the CAC does not contain sufficient particularized facts from which the Court may strongly infer that senior management at corporate headquarters in California knew of or deliberately ignored alleged misconduct at IR's foreign locations.  The location at which the alleged accounting misconduct occurred is critical to the outcome of this motion because a litany of cases — even in circuits where the threshold for recklessness is not as high as in the Ninth Circuit — have held that a parent corporation generally cannot be charged with scienter regarding revenue recognition errors at its subsidiary.  *See*, *e.g.*, *In re McKesson HBOC Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) ("A parent is not vicariously liable for the securities fraud of its subsidiary."); *see also Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271 (2d Cir. 1996) ("[I]ntentional misconduct or recklessness cannot be presumed from a parent's reliance on its subsidiary's internal controls.").  This is true even when plaintiffs allege, as they have here, that headquarters had access to records containing the fraudulent information.  *Higginbotham*, 495 F.3d at 758 (access to computer databases containing fraudulent information insufficient to support a strong inference of scienter).

The decision by the Second Circuit in *Chill* is especially instructive.  That case was predicated on public recognition by the defendant corporation, GE, "that it had adopted financial statements from the subsidiary based on erroneous accounting practices and restated its financials."  *Chill*, 101 F.3d at 271 (internal citations omitted).  Plaintiffs argued that the parent corporation was reckless in not knowing that its subsidiary was engaged in violations of GAAP because GE had reviewed docu-

- 17 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

ments, including financial statements from the subsidiary, showing "(1) the huge increase in the dollar volume of trading at Kidder's [the subsidiary] government bonds trading desk in less than three years; (2) the large increase in reported profits from the first quarter of 1992 to March of 1994; (3) the lack of records of any cash being realized from these trades; and (4) the multi-billion dollar daily fluctuations in Kidder's balance sheet assets." *Id.* at 269.  The court disagreed, noting that "[t]he fact that GE did not automatically equate record profits with misconduct cannot be said to be reckless." *Id.* at 270.

At most, then, the allegations in Sections IV(A), (B) and (F) and in paragraphs 305-308 of the CAC support an inference that individuals at IR's headquarters had access to records that *could have* informed them that accounting misconduct was occurring in Japan.  *See*, *e.g.*, Section IV(A) (Senior Executive Defendants had "access" to records); CAC ¶ 306 (Japan was set up on the same software system as the United States); *id.* ¶ 308 (IR implemented ProChannel, a uniform system about automatic pricing).  As the court noted in *Higginbotham*, though, "there is a big difference between knowing about the reports from [a subsidiary] and knowing the reports are false."  *Higginbotham*, 495 F.3d at 758.  Since plaintiffs allege no additional facts indicating that the Senior Executive Defendants actually knew of the accounting irregularities in Japan, the allegations in Sections IV(A), (B) and (F) fail to meet the heavy pleading burden under the Reform Act.

### e.   Plaintiffs' Allegations of Individuals' Motives Do Not Support a Strong Inference of IR's Scienter

It is well settled in this Circuit that allegations of a defendant's motive and opportunity to commit fraud, without more, do not give rise to a strong inference of scienter.  *Silicon Graphics*, 183 F.3d at 979; *see also Tellabs*, 127 S. Ct. at 2511 (allegations of motive may be "relevant" but are not dispositive).  Stock sales by insiders can support an inference of scienter only when they are "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit

- 18 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

from undisclosed inside information."  *Id.* at 986 (citations omitted); *accord Ronconi*, 253 F.3d at 435 (plaintiffs must "allege unusual or suspicious stock sales").

Here, plaintiffs concede that the vast majority of stock sales by the Individual Defendants occurred pursuant to a Rule 10b5-1(c) trading plan.  CAC ¶ 291 ("Alex Lidow, Eric Lidow and Grant sold shares of IRF common stock under stock trading plans"); *see* Appendix A (all but two sales by Mr. McGee were pursuant to a Rule 10b-5(c) trading plan).  Sales pursuant to such a plan do not give rise to an inference of scienter.  *See South Ferry LP #2 v. Killinger*, 399 F. Supp. 2d 1121, 1145 (W.D. Wash. 2005).  Further, plaintiffs do not allege that the majority of insiders who disposed of stock during this time period engaged in unusual trading activity.  *Ronconi*, 253 F.3d at 435 (stock sales of 17% or less not unusual, and sales of up to 98% by one insider insufficient to raise an inference of scienter) *with* Appendix A (none of the insiders sold more than 20% and only Eric Lidow sold more than 14%).  Finally, plaintiffs allege that the Individual Defendants had motive to commit fraud "to achieve large bonus payments."  CAC ¶ 293.  Courts in this Circuit conclude routinely that such a motive does not support an inference of scienter.  *See*, *e.g.*, *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1092 (N.D. Cal. 2005); *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1087 (N.D. Cal. 2003).  Plaintiffs' motive allegations do not support a strong inference of the Company's scienter.

### f.    The "Partial Disclosure" Allegations Should Be Dismissed Because Plaintiffs Fail to Plead Knowledge by the Audit Committee

In a final effort to plead fraud, plaintiffs claim that by disclosing the existence of the internal investigation (before that investigation was complete and IR knew the extent of the fraud) the Company engaged in further acts of deception.  These claims are even more extreme than those rejected in *Higginbotham*, where plaintiffs alleged that defendants engaged in fraud by filing a Form 10-Q which made no mention of

- 19 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

any wrongdoing, although they had already been made aware of allegations of fraud at a subsidiary and launched an investigation into those allegations. *Higginbotham*, 495 F.3d at 758. As the court explained, "[k]nowing enough to launch an investigation . . . is a very great distance from convincing proof of intent to deceive." *Id.*

Here, by contrast, IR's Audit Committee voluntarily disclosed that it had commenced an investigation into its accounting. CAC ¶ 266. This disclosure further stated that the Company's financial statements for the fiscal year ended June 30, 2006, and for the quarters ended December 31 and September 30, 2006, should not be relied upon. *Id.* ¶ 266. The Audit Committee *also* disclosed that financial statements for earlier periods may have been affected by the matters discovered in the investigation. *Id.* For this Court to conclude that this statement constituted a continuation of the fraud, plaintiffs would have to allege facts giving rise to an inference — at least as strong as any nonculpable inference — that the Audit Committee knew at the time it made the April 9, 2007 statement that the accounting problems went beyond what it disclosed in the press release. Since plaintiffs have set forth absolutely no allegations showing that the Audit Committee was aware of the full extent of the accounting issues at the time it made the April disclosure, they have not met the burden imposed by *Tellabs*.

### 2.    Plaintiffs Fail to Plead Loss Causation

In *Dura*, the Supreme Court held that to plead loss causation plaintiffs must allege that the stock price declined after the alleged fraud was disclosed publicly. *See Dura*, 544 U.S. at 343. In reaching this decision, the Court rejected prior Ninth Circuit case law holding that plaintiffs were required to plead only that the stock price was inflated because of the fraud. *See id.* The CAC here suffers from two separate failures to plead loss causation as required by *Dura*.

First, in the CAC, plaintiffs allege that disclosures made by IR between July 31, 2003 and December 27, 2005 were fraudulent. Plaintiffs acknowledge that the Company disclosed for the first time that the financials for that period could not be

- 20 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

relied upon in a press release issued on August 31, 2007.  Absent from the CAC is any allegation that the price of IR stock declined following the August 31, 2007 announcement.  *See* Section VIII of the CAC (entitled "Loss Causation").  The reason for this pleading failure is that IR's stock price did not decline materially following this announcement.  Ex. L.

Second, plaintiffs allege that as a result of IR's May 15, 2006 disclosure concerning misclassification of $4.6 million in tax benefits, IR's stock price declined by 3%.  CAC ¶ 106.  Courts have held that such a small price decline is not sufficient to plead loss causation.  *See In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 588-89 (D. Md. 2005) (3% drop insufficient); *D.E. & J. Ltd. v. Conaway*, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003) (4% drop insufficient).  Because plaintiffs fail to plead that investors suffered a sufficient loss as a result of the May 15, 2006 disclosure, claims based upon the allegations in Section IV(E) must be dismissed.

### 3.      Plaintiffs Fail to Comply With Rule 8

Plaintiffs' 186-page CAC also does not comply with the requirement of Rule 8(a) to plead "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a).  The CAC here devotes nearly 100 pages just to a recitation of the alleged false statements.  *See* CAC ¶¶ 110-278.  This dwarfs the complaint in *Hansen*, for example, which contained a mere "17 pages of allegedly false statements."  *Hansen*, 527 F. Supp. 2d at 1152.  Plaintiffs then bury in the remaining 80 or so pages of the CAC the reasons the statements are false or misleading, as well as the purported factual basis for their information and belief.  As in *Hansen*, plaintiffs here have "failed to craft a Complaint in such a way that a reader can, without undue effort, divine why each alleged statement was false or misleading."  *Id.*; *see also Wenger*, 2 F. Supp. 2d at 1243-44 ("These 'puzzle-style' complaints are an 'unwelcome and wholly unnecessary strain on defendants and the court system.'") (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994)).  The Court should dismiss the

- 21 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

1   CAC for this separate and independent reason.

2   **B.      Plaintiffs Fail to State a Claim Under Section 20(a)**

3   In Count II, plaintiffs assert a claim against all defendants under Section 20(a)

4   of the Exchange Act.  Section 20(a) provides for liability of "controlling persons" of

5   "any person liable" under the federal securities laws.  15 U.S.C. § 78t(a).  A predi-

6   cate for "controlling person" liability is a finding of primary liability under Section

7   10(b) of the "controlled person."  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,

8   1035 n.15 (9th Cir. 2002); *Hansen*, 527 F. Supp. 2d at 1163.

9   The theory behind plaintiffs' Section 20(a) claim against the Company is that

10  the Company is a "controlling person" of its Japan subsidiary.  Plaintiffs, however,

11  do not assert, let alone plead with sufficient particularity under Rule 9(b) and the

12  Reform Act,[3] a primary Section 10(b) claim against IR's Japan subsidiary.  The

13  absence of a sufficiently pleaded primary Section 10(b) claim against IR's Japan

14  subsidiary defeats plaintiffs' Section 20(a) claim against the Company.

15  **C.      Plaintiffs Lack Authority to Assert Claims Based Upon the**

16  **Expanded Class Period**

17  When enacting the Reform Act, Congress believed that larger investors with

18  more at stake in the litigation, and not lawyers, should control class action litigation.

19  *See* H.R. Conf. Rep. 104-369, at 31, *reprinted in* 1995 U.S.C.C.A.N. 730.  To

20  address this, the Reform Act "establishe[d] new procedures for the appointment of

21  the lead plaintiff and lead counsel in securities class actions."  *Id.*

22  "The Reform Act provides a simple three-step process for identifying the lead

23  plaintiff . . . ."  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  "The first step

24  consists of publicizing the pendency of the action, the claims made and the purport-

25  ed class period."  *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)).  This notice must "present

26  ─────────────

27  [3]      The sufficiency of plaintiffs' Section 20(a) allegations is governed by both the Reform Act and Rule 9(b).  *See Lilley v. Charren*, 936 F. Supp. 708, 717 (N.D. Cal. 1996).

28

- 22 -

a fair recital of the subject matter of the suit and [] inform all class members of their opportunity to be heard." *In re Lucent Tech., Inc. Sec. Litig.*, 194 F.R.D. 137, 146 (D.N.J. 2000) (citing *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999)).  Members of the putative class have sixty days from the notice date to file motions for appointment as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

"In step two, the district court must consider the losses allegedly suffered" by those who filed motions for appointment as lead plaintiff "before selecting as the 'presumptively most adequate plaintiff' — and hence the presumptive lead plaintiff — the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'"  *Cavanaugh*, 306 F.3d at 729-30 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  "The third step of the process is to give other [members of the putative class] an opportunity to rebut the presumptive lead plaintiff's showing that it satis-fies Rule 23's typicality and adequacy requirements."  *Cavanaugh*, 306 F.3d at 730.  At this stage, "the process turns adversarial and other plaintiffs may present evi-dence that disputes the lead plaintiff's prima facie showing of typicality and adequacy."  *Id.*

The notice published at the outset of this case represented to investors that the class period was the Original Class Period.  On June 18, 2007, three sets of putative class members filed motions for appointment as lead plaintiff.  Two of the contes-tants later abandoned their bids, apparently believing that the remaining contestant, the co-lead plaintiffs here, suffered the greatest losses during the Original Class Period.  On July 23, 2007, the Court entered an order appointing the Massachusetts Laborers' Pension Fund and the General Retirement System of the City of Detroit as co-lead plaintiffs "to represent the interests of *the Class*" (emphasis added).[4]

---

[4]  Although "Class" was not defined in the order, it *was* defined in the co-lead plaintiffs' motion as the Original Class Period.

- 23 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

As noted above, the CAC expands the 17-month Original Class Period by nearly three years.  The Expanded Class Period starts on July 31, 2003, more than two years before the start of the Original Class Period, and ends on August 29, 2007, nearly five months after the end of the Original Class Period.  The Court's July 23, 2007 order, however, appointed the co-lead plaintiffs to be lead plaintiffs for "the Class," defined in the co-lead plaintiffs' own motion to be a class of investors who purchased IR shares during the 17-month Original Class Period.  Co-lead plaintiffs were not appointed to represent the interests of a massively larger class of investors during a nearly four-year Extended Class Period.  Co-lead plaintiffs lack the Court-ordered authority to expand the Original Class Period.

An expansion of the class period after appointment of a lead plaintiff raises the specter that the co-lead plaintiffs here might not have the largest financial inter-est in the relief sought by the class for the Expanded Class Period.  *See Cavanaugh*, 306 F.3d at 730.  Because the notice of pendency made reference only to the Origi-nal Class Period, members of the putative class for the Extended Class Period had no notice to present their own motions for appointment as lead plaintiff.  *See*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier*, 2005 U.S. Dist. LEXIS 10780, at *8 (S.D.N.Y. June 1, 2005) (requiring new notice to members of enlarged class because it was "entirely possible that other well-qualified lead plain-tiffs would have moved [to be appointed lead plaintiff] had they been notified that they were potential class members").

Courts have dismissed amended complaints in which a lead plaintiff sought to expand the class period.  In *In re Select Comfort Corp. Sec. Litig.*, No. CV 99-884-DSD (JMM), 2000 U.S. Dist. LEXIS 22697 (D. Minn. Jan. 27, 2000), for example, the initial complaint alleged a class period from January 25, 1999 to June 7, 1999.  *Id.* at *24.  The amended complaint enlarged the class period to start on December 4, 1998, an expansion of nearly two months.  *Id.*  The court dismissed the amended complaint pursuant to Rule 12(b)(6) and Reform Act on the sole basis that plaintiffs

- 24 -

INTERNATIONAL RECTIFIER'S MOTION TO DISMISS; MEMO. OF PTS. & AUTHS.

1   did not properly follow the procedures of the Reform Act for approval of lead plain-

2   tiffs. *Id.* at \*26.  Other courts have recognized the unfairness of allowing a lead

3   plaintiff to expand a class period without providing new notice to members of the

4   enlarged putative class.  *See In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936,

5   938-40 (S.D. Tex. 2006); *In re LeapFrog Enterprises, Inc. Sec. Litig.*, No. CV 03-

6   05421-RMW, 2005 U.S. Dist. LEXIS 44899, at \*10-12 (N.D. Cal. July 5, 2005).

7           The Court should dismiss the CAC in its entirety or, alternatively, dismiss all

8   claims asserted in the CAC that are based upon a class period different from the

9   Original Class Period.

10  **IV.    CONCLUSION**

11          For the foregoing reasons, defendant International Rectifier respectfully

12  requests that the Court dismiss the CAC or, alternatively, dismiss all claims based

13  upon a class period different from the Original Class Period.

14  Dated:  March 6, 2008

15                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

16

17                          By     _____*/s/ JOHN P. STIGI III*_____
                                        JOHN P. STIGI III
18                                    Attorneys for Defendant
                                   INTERNATIONAL RECTIFIER
19                                        CORPORATION

20

21

22

23

24

25

26

27

28

INTERNATIONAL RECTIFIER'S MOTION TO
                                                         DISMISS; MEMO. OF PTS. & AUTHS.