1   BERNSTEIN LITOWITZ BERGER
         & GROSSMANN LLP
2   BLAIR A. NICHOLAS (Bar No. 178428)
    (blairn@blbglaw.com)
3   NIKI L. MENDOZA (Bar No. 214646)
    (nikim@blbglaw.com)
4   BENJAMIN GALDSTON (Bar No. 211114)
    (beng@blbglaw.com)
5   JON F. WORM (Bar No. 248260)
    (jonw@blbglaw.com)
6   12481 High Bluff Drive, Suite 300
    San Diego, CA 92130
7   Tel:   (858) 793-0070
    Fax:   (858) 793-0323
8
    BERMAN DeVALERIO
9   JOSEPH J. TABACCO, JR. (Bar No. 75484)
    (jtabacco@bermandevalerio.com)
10  NICOLE LAVALLEE (Bar No. 165755)
    (nlavallee@bermandevalerio.com)
11  KRISTIN J. MOODY (Bar No. 206326)
    (kmoody@bermandevalerio.com)
12  JULIE J. BAI (Bar No. 227047)
    (jbai@bermandevalerio.com)
13  One California Street, Suite 900
    San Francisco, CA 94111
14  Tel:   (415) 433-3200
    Fax:   (415) 433-6382
15
    *Attorneys for Co-Lead Plaintiffs General Retirement*
16  *System of the City of Detroit and Massachusetts*
    *Laborers' Pension Fund*
17

18              UNITED STATES DISTRICT COURT

19              CENTRAL DISTRICT OF CALIFORNIA

20

21  IN RE INTERNATIONAL              Case No. CV 07-02544-JFW (VBKx)
    RECTIFIER CORPORATION
22  SECURITIES LITIGATION            LEAD PLAINTIFFS'
                                     MEMORANDUM OF LAW IN
23                                   SUPPORT OF LEAD PLAINTIFFS'
                                     MOTION FOR FINAL APPROVAL
24                                   OF CLASS ACTION
                                     SETTLEMENT AND APPROVAL
25                                   OF PLAN OF ALLOCATION

26                                   Date: February 8, 2010
                                     Time: 1:30 p.m.
27                                   Courtroom: 16

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

I.    INTRODUCTION ................................................................................1

II.   PROCEDURAL HISTORY ................................................................3

III.  ARGUMENT.......................................................................................5

    A.   The Standards For Judicial Approval Of
        Class Action Settlements ..........................................................5

    B.   The Settlement Meets The Ninth Circuit
        Standard For Approval .............................................................7

        1.   The Risk, Expense, Complexity, And
               Likely Duration Of Further Litigation .........................7

        2.   Lead Plaintiffs' Case Was Strong, But
               Entailed Risks ..............................................................9

        3.   The Amount Obtained In Settlement .......................10

        4.   The Extent Of Discovery Completed,
               And The Stage Of The Proceedings .........................12

        5.   The Experience And Views Of Lead
               Counsel And Lead Plaintiffs....................................12

        6.   Reaction Of The Class Members To
               The Proposed Settlement ..........................................15

    C.   The Settlement Provided Adequate Notice
        To The Class...........................................................................16

    D.   The Plan Of Allocation Is Fair And
        Reasonable And Should Be Approved...................................17

IV.   CONCLUSION................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Apollo Group, Inc. Sec. Litig.*,
  2008 WL 3072731 (D. Ariz. Aug 4, 2008) ........................................................8

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ......................................................8

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................13

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..........................................................................18

*In re Fernald Litig.*,
  1989 WL 267039 (S.D. Ohio Sept. 29, 1989) ...................................................14

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  1992 WL 226321 (C.D. Cal. June 10, 1992) .....................................................13

*Glass v. UBS Fin. Servs., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007)......................................................13

*Glass v. UBS Finan. Servs. Inc.*,
  331 Fed. Appx. 452 (9th Cir. 2009)............................................................13, 17

*Granada Invest., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ..........................................................................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................6

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal., June 10, 2005)..................................................13

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................17

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ....................................................8

*Linney v. Cellular Alaska P'Ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................11

*Lundell v. Dell, Inc.*,
    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006)..............................................14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...........................................................6, 9, 18

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)...........................................................11, 14

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .......................................................................11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982).................................................................5, 6, 7

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007)..............................................passim

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994)...............................................18

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ....................................................................5, 13

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ....................................................................18

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................16

*In re Rambus Inc. Deriv. Litig.*,
    2009 WL 166689 (N.D. Cal. Jan. 20, 2009)........................................6, 9, 13, 15

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ..................................................................11

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) .............................................6

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................17

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................5

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................11

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ...............................................................5

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ...................................................................7

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910)...............................................................................5

*Woo v. Home Loan Group, L.P.*,
  2008 WL 3925854 (S.D. Cal. Aug. 25, 2008)....................................6

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..............................................18

**OTHER AUTHORITIES**

4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West
  2008) .......................................................................................................6

Fed. R. Civ. P. 23 ...............................................................................1, 6, 16

H.R. CONF. REP. 104-369 (1995) ............................................................15

## I.    **INTRODUCTION**

This is a securities fraud class action alleging false and misleading statements and omissions in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, and control person liability under § 20(a) of the Exchange Act.  Following over two years of litigation and extensive arm's-length settlement negotiations overseen by the mediator, the Honorable Layn R. Phillips (Ret.), and just six months prior to trial, Lead Plaintiffs have succeeded in reaching a proposed settlement for $90 million in cash (the "Settlement").  The $90 million was deposited into an escrow account on or about October 9, 2009, and has been earning interest for the benefit of Class Members.[1]

Lead Plaintiffs General Retirement System of the City of Detroit and Massachusetts Laborers' Pension Fund ("Lead Plaintiffs") submit this motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  If approved, the Settlement will resolve all claims against International Rectifier Corporation ("IRF" or the "Company"), the individual defendants and their related parties. Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts, applicable law, and the decisions in this case – submit that the proposed Settlement is in the best interests of the Class and provides an excellent recovery for the Class now.[2]

---

[1] The Class is defined as follows:  all persons or entities who purchased or acquired the publicly traded securities of IRF from July 31, 2003 through February 11, 2008, inclusive, and who suffered damages as a result.  Defendants and certain other individuals, as well as those who opt out of the Settlement, are excluded from the Class.

[2] *See* Joint Declaration of Blair A. Nicholas and Nicole Lavallee in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for An Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl."), ¶¶4-6, submitted herewith; *see also* Joint Declaration of Walter Stampor and Barry C. McAnarney in Support of Class Action Settlement ("Lead Plaintiff Decl."), ¶15, attached as Exhibit ("Ex.") A to the Joint Decl.

1    In addition, Judge Phillips, an experienced mediator, agrees that the

2   settlement represents the result of an arms'-length negotiation by very experienced

3   and informed counsel and, based on his knowledge and evaluation of the merits of

4   the claims and defenses, agrees that the settlement is a fair and reasonable outcome

5   for all parties involved.  *See* Declaration of Layn R. Phillips ("Phillips Decl."), ¶2,

6   attached as Ex. B to the Joint Decl.

7    The $90 million Settlement is an excellent result for the Class.  As discussed

8   below, in reaching the Settlement, Lead Counsel and Lead Plaintiffs considered the

9   numerous risks in continued litigation against Defendants.  In addition, litigating

10   this complex securities fraud class action to completion would result in significant

11   expense and delay.  Even though Lead Counsel and Lead Plaintiffs believe that the

12   action has substantial merit, it involved complex legal and factual issues that raised

13   risks for summary judgment and at trial.  Lead Plaintiffs and their counsel believe

14   that the monetary benefits the Settlement provides to the Class outweigh the risks

15   of continued and protracted litigation in which the result was inherently uncertain.

16    On September 25, 2009, the Court issued an Order Preliminarily Approving

17   Settlement and Providing for Notice (the "Preliminary Approval Order"),

18   preliminarily approving of the Settlement.  Pursuant to the Preliminary Approval

19   Order, beginning on October 9, 2009, Lead Counsel caused the Notice to be sent to

20   potential Class Members.  *See* Declaration of Jennifer M. Keough Regarding

21   Notice and Claims Administration ("Keough Decl."), ¶¶3-9, attached as Ex. C to

22   the Joint Declaration.  In addition, a summary notice was published in *The*

23   *Investor's Business Daily* on October 20, 2009.  *Id.* ¶10.

24    Pursuant to the Preliminary Approval Order, the deadline for Class Members

25   to file objections to the Settlement, Plan of Allocation or the fee and expense

26   application, or to seek exclusion from the Class, will expire on January 25, 2010.

27   As of January 3, 2010, over 208,000 Notices have been sent to potential Class

28   Members.  *Id.* ¶9.  To date, no Class Member has objected.  In addition, the claims

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
Case No. CV 07-02544-JFW (VBKx)

administrator has received only seven exclusion requests.[3]  While the deadline for submitting claim forms does not expire until February 6, 2010, the claims administrator has already received approximately 7,500 claims representing a total of approximately 77 million shares purchased during the Class Period.  *Id.* ¶14.

## II.   <u>PROCEDURAL HISTORY</u>

A detailed description of the procedural history of the litigation, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the substantial risks and uncertainties of the litigation is contained in the accompanying Joint Declaration.  A summary description is provided below.

Beginning on or about April 17, 2007, plaintiffs filed class actions against Defendants and others in the Central District of California (case numbers: 07-cv-02544 JFW (VBKx); 07-cv-03123 JFW (PJWx)).  The complaints alleged, among other things, that defendants made false statements and omissions concerning IRF's reported financial results, gross margins, sales and business conditions.  By Order dated May 17, 2007, this Court consolidated the actions then before it and all related actions subsequently filed.  [Docket No. 6].  On July 23, 2007, this Court appointed General Retirement System of the City of Detroit and Massachusetts Laborers' Pension Fund as Lead Plaintiffs, and Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio as Lead Counsel ("Lead Counsel").  [Docket No. 34].

---

[3] As stated in the Keough Declaration (¶13), as of the execution of that Declaration, six exclusion requests had been received.  An additional exclusion request by an individual was received following execution of the Keough Declaration, resulting in seven total exclusion requests to date.  Those seeking exclusion will also be listed in Ex. 1 to the Proposed Judgment which will be submitted to the Court following expiration of the deadline for seeking exclusion.

On January 14, 2008, Lead Plaintiffs filed a first amended consolidated class action complaint ("First Amended Complaint") asserting claims under § 10(b) and §20(a) of the Exchange Act and Rule 10b-5 against Defendants and others. [Docket No. 55].  Defendants moved to dismiss, and on May 23, 2008, the Court dismissed the First Amended Complaint without prejudice.  [Docket No. 108].

On October 17, 2008, Lead Plaintiffs filed a second amended consolidated complaint ("Second Amended Complaint") asserting claims under § 10(b) and §20(a) of the Exchange Act and Rule 10b-5 against Defendants and Robert Grant. [Docket No. 140].  Defendants again moved to dismiss.  On December 31, 2008, the Court granted in part and denied in part the motions to dismiss the Second Amended Complaint, dismissing claims against Robert Grant with prejudice. [Docket No. 194].  Defendants answered the Second Amended Complaint on January 15, 2009.  [Docket Nos. 203, 205, 207, 208].

During the course of the litigation, Lead Plaintiffs and Defendants conducted extensive discovery, including the review by Lead Plaintiffs of more than 2.6 million documents produced by Defendants and third parties, and the depositions of the Lead Plaintiffs and three of the Lead Plaintiffs' investment advisors. Further, Lead Plaintiffs had noticed more than 20 witness depositions to be completed before the close of discovery, and worked closely with several experts. Additionally, Lead Plaintiffs moved to compel production from IRF, and IRF moved for protective orders.  *See* Joint Decl. ¶¶50-73.

On March 17, 2009, Lead Plaintiffs filed their motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  [Docket No. 217]. On June 29, 2009, Defendants filed their opposition to class certification.  [Docket Nos. 237, 241, 242, 243].

On April 30, 2009, Lead Plaintiffs, Defendants, and Defendants' insurance carriers participated in a mediation session with Judge Phillips in Newport Beach,

California.    The  parties  reached  an  impasse  during  the  in-person  mediation, however, and did not agree to a settlement.  *See* Phillips Decl. ¶¶3-5.

Following  the  in-person  mediation,  Judge  Phillips  continued  mediation discussions  with  the  parties  and  insurance  carriers  in  an  effort  to  negotiate  a settlement.  On July 29, 2009, after considerable additional negotiations supervised by Judge Phillips, and just six months prior to the Court's scheduled trial date, the parties agreed to a proposed settlement of the Consolidated Action for $90 million in cash to be paid by IRF and its insurance carriers.  *See* Joint Decl. ¶¶6-8.

Following  this  Court's  issuance  of  the  Preliminary  Approval  Order,  on October  9,  2009,  the  Settlement  Fund  was  deposited  into  an  interest-bearing escrow account.  *See* Joint Decl. ¶85.

## III.   ARGUMENT

### A.    The Standards For Judicial
### Approval Of Class Action Settlements

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class action lawsuits.[4]  Indeed, class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[5] "In most situations, unless the settlement is clearly inadequate, its acceptance and

---

[4]  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

[5]  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  The law always favors the compromise of disputed claims, including those asserted in stockholder class actions.  *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

approval are preferable to lengthy and expensive litigation with uncertain results." 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate. *See also Woo v. Home Loan Group, L.P.*, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008). On a motion for approval of a class action settlement, "the Court must determine whether the interests of the class will be better served by resolution of the litigation than by continuation of it." *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

A court's role in settlement approval is essentially twofold, determining whether the settlement: (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate. *Officers for Justice*, 688 F.2d at 625. In exercising its discretion to approve the settlement of a class action, a district court should consider the following factors:  (1) "the strength of the plaintiff's case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining a class action throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed and the stage of the proceedings"; (6) "the experience and views of counsel"; and (7) "the reaction of the class members to the proposed settlement." *In re Rambus Inc. Deriv. Litig.,* 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000)); *see also Omnivision,* 559 F. Supp. 2d at 1041; *Home Loan Group,* 2008 WL 3925854, at *3 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the

type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

In exercising its sound discretion, a district court should not adjudicate the merits of the case. As the Ninth Circuit has noted:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Officers for Justice,* 688 F.2d at 625 (emphasis added); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) ("in order to avoid a trial, the judge must [not] in effect conduct one").

The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's-length negotiations presided over by an experienced retired federal judge mediator. *See* Phillips Decl., ¶10. It is the considered judgment of Lead Counsel that this Settlement is a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval. *See* Joint Decl. ¶4.

**B.    The Settlement Meets The
       Ninth Circuit Standard For Approval**

**1.    The Risk, Expense, Complexity, And
        Likely Duration Of Further Litigation**

If the litigation had continued, Lead Plaintiffs faced substantial risks, including establishing Defendants' liability and the Class' full amount of damages at summary judgment or trial. Lead Plaintiffs and Lead Counsel took into account the Court's decision dismissing the First Amended Complaint in its entirety and the Court's ruling dismissing certain of the claims alleged in the Second Amended

1   Complaint and dismissing all claims against Defendant Robert Grant with
2   prejudice.  Further, they considered that certain contested issues would have been
3   decided by a jury in the event of a trial, including whether Defendants acted with
4   an intent to mislead investors, whether the alleged misrepresentations or omissions
5   were false and material to investors, whether all of the Class Members' losses were
6   caused by the alleged misrepresentations or omissions, and the amount of damages.
7   Defendants argued throughout the litigation that Lead Plaintiffs would be unable to
8   prove that Defendants' statements were false, or that they were made with scienter.
9   In particular, Defendants contended that proving the scienter of IRF would require
10  Lead Plaintiffs to demonstrate that either Alex Lidow or McGee acted with
11  scienter.  Defendants also argued that the Class Period should be shortened, which
12  would have significantly reduced recoverable damages.  Defendants undoubtedly
13  would have continued to argue that their statements were not false and they lacked
14  scienter.  While Lead Plaintiffs believe that their case is meritorious and that they
15  have strong evidence, if the Court or trier of fact agreed with Defendants, any
16  recovery would have been substantially reduced or eliminated altogether.  *See* Joint
17  Decl. ¶78.

18      Even if Lead Plaintiffs prevailed through summary judgment, risks to the
19  Class remain.  Even a meritorious case can be lost at trial.  *See In re JDS Uniphase*
20  *Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy
21  trial, jury returned a verdict against plaintiffs, the action was dismissed and
22  Plaintiffs were ordered to pay defendants the costs of defending the action).  Even
23  success at trial does not eliminate the risk.[6]

24  _____

25  [6]  *See* Joint Decl. ¶79.  For example, following a verdict in favor of plaintiffs in *In*
26  *re Apollo Group, Inc. Sec. Litig.*, the court overturned the verdict and granted
    defendants motion for judgment as a matter of law.  2008 WL 3072731 (D. Ariz.
27  Aug 4, 2008).  In *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal.
28  Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  The

If this Settlement had not been achieved, the action would likely have continued for years and the ultimate result of further litigation cannot be foreseen. Given the stakes involved in this litigation, an appeal is virtually assured regardless of the result of trial. Instead of the lengthy, costly, and uncertain course of further litigation with Defendants, the Settlement provides an immediate and certain recovery for the Class. The Settlement clearly outweighs the substantial risks associated with lengthy continued litigation. *See* Joint Decl. ¶80.

### 2. Lead Plaintiffs' Case Was Strong, But Entailed Risks

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin.*, 213 F.3d at 459; *Rambus*, 2009 WL 166689, at *2. Lead Counsel believes that the settlement terms compare favorably to the risks associated with continued litigation. As detailed in the Joint Declaration, Lead Counsel conducted an extensive investigation and analysis of the claims. Its efforts included, but were not limited to: (1) an exhaustive factual investigation into the events and circumstances underlying the claims, including contacting and interviewing confidential witnesses and reviewing and analyzing all relevant publicly available media, analyst reports, and SEC filings and public statements; (2) drafting of a detailed amended consolidated complaint and the Second Amended Complaint; (3) extensive briefing on Defendants' two rounds of motions to dismiss; (4) obtaining evidence through discovery, including review and analysis of the documents produced by Defendants and key third-parties; (5) preparing for depositions; (6)

---

court, however, overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
Case No. CV 07-02544-JFW (VBKx)

consulting with experts; (7) drafting class certification briefing and supporting documents; and (8) preparing for and participating in mediation.  *See* Joint Decl. ¶¶27-77, 82-84.

Lead Counsel also retained and conferred with experts, including an experienced damages consultant regarding the potential scope of class-wide damages and other experts in specialized areas.  As a result, Lead Counsel gained a comprehensive understanding of the strengths and weaknesses of the case and possible recoverable damages.  *Id.* ¶¶65-69.

The proposed Settlement provides Class Members with an immediate cash payment.  In sum, Lead Plaintiffs and Lead Counsel have concluded that the Settlement is in the best interests of Lead Plaintiffs and the Class and the Settlement is fair, reasonable, and adequate.  This conclusion is based on, among other things, the risk, time and expense in continuing to prosecute the case; the significant uncertainties in predicting the outcome of this complex litigation; and the substantial risk that the Class would recover less than the amount provided by the Settlement, or nothing at all.  *Id.* ¶¶4-8*; see also* Lead Plaintiff Decl. ¶15.

### 3.    **The Amount Obtained In Settlement**

As set forth above, the Settlement provides for the recovery of $90 million in cash plus interest allocated among Class Members after deduction for Court-approved fees and expenses.  As noted above, the settlement amount was obtained as a result of arm's length negotiations and is supported by the Mediator.  *See* Phillips Decl. ¶2.  The $90 million was deposited into an escrow account on or about October 9, 2009, and has been earning interest for the benefit of the Class.  *See* Joint Decl. ¶85.

If the litigation had continued, Lead Plaintiffs faced substantial risks and limitations.  As discussed above, there were substantial risks with respect to establishing proof of the claims and the Class' full amount of damages.  In addition, litigating this complex securities fraud class action to completion would

result in significant expense and delay.  *See* Joint Decl. ¶¶78-81.  This recovery, obtained in the face of the risk of no recovery at all, is particularly supportive of approval of the Settlement.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In fact, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.  *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted)).  Here the substantial amount of the Settlement clearly falls within the "range of reasonableness" and provides a tremendous benefit to the Class considering, *inter alia*, the limitations on the Class' claims and other litigation risks.

While contested issues over damages might have yielded less recovery after trial or none at all, even the possibility that the Class "might have received more if the case had been fully litigated is no reason not to approve the settlement."[7] Indeed, "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination . . . Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted).

---

[7]  *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion.").

Here, the Settlement confers an immediate and valuable cash benefit to Class Members.  Given the complexities of the litigation and the continued risks if the parties were to proceed throughout dispositive motions and trial, the Settlement presents a reasonable resolution of this action and eliminates the risk that the Class might not otherwise recover.

### 4. The Extent Of Discovery Completed, And The Stage Of The Proceedings

The stage of proceedings and discovery are additional factors supporting the Settlement.  Here, Lead Counsel advanced the case through, among other things, the investigation supporting the consolidated complaints and the operative Complaint, opposing two rounds of Defendants' motions to dismiss and related motions, consulting with experts, moving to certify the Class, and preparing for and participating in mediation overseen by Judge Phillips.  In addition, Lead Counsel conducted a thorough investigation of the facts and claims of this case, including review and analysis of the Company's SEC filings, annual reports, and other public statements; interviews with confidential witnesses; review and analysis of a substantial volume of documents produced by Defendants and third-parties; and preparation for numerous scheduled depositions. *See* Joint Decl. ¶¶27-85.  This Settlement is based upon adequate information and a sufficient investigation for an in-depth analysis of the Class' claims.

### 5. The Experience And Views Of Lead Counsel And Lead Plaintiffs

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[8]  This makes sense, as counsel is "most closely acquainted with the facts of

---

[8] *See, e.g.*, *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
Case No. CV 07-02544-JFW (VBKx)

1    the underlying litigation."[9]   This is because "[p]arties represented by competent

2    counsel are better positioned than courts to produce a settlement that fairly reflects

3    each party's expected outcome in litigation."   *Pac. Enters.*, 47 F.3d at 378.  Thus,

4    "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute

5    its own judgment for that of counsel."   *Heritage Bond*, 2005 WL 1594403, at *9

6    (internal citation omitted).

7           Here, the parties have been actively litigating this case for over two years

8    since its commencement in 2007.  Lead Counsel has many years of experience in

9    litigating securities fraud actions throughout the country, and in assessing the

10   relevant merits of each side's case.[10]   As discussed above and in the Joint

11   Declaration, Lead Counsel conducted a sophisticated and extensive investigation

12   into the claims asserted in the complaints, including but not limited to multiple

13   interviews with confidential witnesses, review of an extensive document

14   production, depositions, and consultation with experts.   Thus, by the time

15   _____

16   considerable weight"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.

17   1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* 1992
     WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the

18   proposed settlement represented the most beneficial result for the class to be a
     compelling factor in approving settlement);  *see also Omnivision*, 559 F. Supp. 2d

19   at 1043 (citation omitted) ("The recommendations of plaintiffs' counsel should be

20   given a presumption of reasonableness.") (quoting *Boyd*, 485 F. Supp. at 622).

21   [9]  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005)
     (citations omitted); *Rambus,* 2009 WL 166689, at *3; *Glass v. UBS Fin. Servs.,*

22   *Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007), *aff'd,* 331 Fed. Appx. 452

23   (9th Cir. 2009) (unpubl.).

24   [10]  *See* Firm Resumes of BLB&G and Berman DeValerio, attached, respectively, as
     Ex. 5 to the Declaration Of Blair A. Nicholas In Support Of Lead Counsel's

25   Application For Attorneys' Fees And Reimbursement Of Litigation Expenses On

26   Behalf Of BLB&G ("Nicholas Decl.," Ex. E to Joint Decl.), and Ex. 3 to the
     Declaration Of Nicole Lavallee In Support Of Lead Counsel's Application For

27   Attorneys' Fees And Reimbursement Of Litigation Expenses On Behalf Of
     Berman DeValerio (Ex. F to Joint Decl.).

28

settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and was able to engage in a rigorous negotiation process with Defendants.

Additionally, throughout the litigation and settlement negotiations, Defendant IRF has been represented by experienced counsel from a prominent law firm, Sheppard, Mullin, Richter & Hampton LLP, and Defendants Alex Lidow, Eric Lidow and Michael P. McGee have been represented by Sullivan & Cromwell LLP, Latham & Watkins, and Gibson Dunn & Crutcher LLP, respectively, firms with substantial experience in this type of litigation.   The representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class.

As a result, the parties' settlement negotiations were hard-fought.   The negotiations required not only a formal full-day mediation session – conducted under the direction of Judge Phillips, a retired federal judge and well-regarded mediator with extensive experience in the mediation of complex actions – but also extensive negotiations overseen by Judge Phillips over several months following the mediation session.   *See* Phillips Decl. ¶¶3-6.

With this background, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties, and this factor supports a finding that the Settlement is fair, adequate, and reasonable.   *See Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

Moreover, under the regime put in place with the enactment of the PSLRA, the Lead Plaintiffs' approval of a settlement should be accorded "special weight because [the Lead Plaintiffs] may have a better understanding of the case than most members of the class." *DIRECTV,* 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44).   Congress enacted the PSLRA in large part

1   to encourage sophisticated institutional investors to take control of securities class

2   actions and "increase the likelihood that parties with significant holdings in issuers,

3   whose interests are more strongly aligned with the class of shareholders, will

4   participate in the litigation and exercise control over the selection and actions of

5   plaintiff's counsel." H.R. CONF. REP. 104-369, at *32 (1995).

6       Here, Lead Plaintiffs' approval of the Settlement is compelling evidence that

7   the Settlement is fair, reasonable and adequate. *See* Lead Plaintiff Decl. ¶15.

8       **6.   Reaction Of The Class Members
            To The Proposed Settlement**

9

10       As courts have noted, the reaction of the class to the proffered settlement "is

11   perhaps the most significant factor to be weighed in considering its adequacy."

12   *Rambus,* 2009 WL 166689, at *3 (citation omitted). Indeed, courts have explained

13   that "the absence of a large number of objections to a proposed class action

14   settlement raises a strong presumption that the terms of a proposed class settlement

15   action are favorable to the class members." *Omnivision,* 559 F. Supp. 2d at 1043

16   (citation omitted).

17       Pursuant to this Court's September 25, 2009 Preliminary Approval Order,

18   the deadline for Class Members to file their requests to exclude themselves from

19   the Settlement or to object to any aspect of the Settlement, the proposed Plan of

20   Allocation or Lead Counsel's fee and expense request will expire on

21   January 25, 2010. In response to over 208,000 Notices being sent to potential

22   Class Members, to date no Class Member has objected. *See* Keough Decl. ¶9. In

23   addition, the claims administrator has received only seven exclusion requests. *See*

24   *id.* ¶13. By contrast, although the claims deadline is not until February 6, 2010, the

25   claims administrator has already received approximately 7,500 claims representing

26   a total of approximately 77 million shares purchased during the Class Period.

27   Keough Decl. ¶14.

28

1
2

The favorable reaction of the Class further supports approval of the Settlement.

3
4

**C.    The Settlement Provided**
**        Adequate Notice To The Class**

5
6
7
8
9
10
11
12
13
14
15
16

As required by the Court's Preliminary Approval Order, Lead Plaintiffs (through the Claims Administrator) notified potential Class Members of the Settlement by mailing a copy of the Notice to all persons (as stated in IRF's transfer agent's records) who purchased or acquired IRF publicly traded securities during the Class Period. *See* Keough Decl. ¶¶3-9. In addition, a Summary Notice was published in the national edition of *The Investor's Business Daily* on October 20, 2009. *Id.* ¶10. The Notice and the Summary Notice also referenced the Internet websites for Lead Counsel and the Claims Administrator where investors could view and download the Notice and Proof of Claim form. *Id.* ¶11. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

17
18
19
20
21
22
23

The Notice (attached as Ex. A to the Keough Decl.) advises Class Members of the essential terms of the Settlement, sets forth the procedure for objecting to the Settlement, and provides specifics on the date, time and place of the final approval hearing. The Notice also contains information regarding Lead Counsel's fee application and the proposed plan of allocating the settlement proceeds among Class Members. Thus, the Notice provided the necessary information for Class Members to make an informed decision regarding the proposed Settlement.

24
25
26
27
28

The Notice fairly apprises Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar

notice regimen); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *see also Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (citations omitted).

### D.   The Plan Of Allocation Is Fair And Reasonable And Should Be Approved

Lead Plaintiffs have proposed a plan to allocate the proceeds of the Settlement among Class Members who submit valid Proofs of Claim. The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged false and misleading statements and omissions set forth in the Second Amended Complaint. While all Class Members' claims arise from the same false or misleading statements, the amount of such potential damages varies. Differences of this nature among class members are common in securities litigation and are commonly addressed by a plan of allocation in class actions. *Cf. Glass,* 331 Fed. Appx. at 455 (unpubl.) (affirming plan for distributing settlement proceeds that treats various class members differently based on differences in recoverable damages).

Lead Plaintiffs considered different approaches for allocating the recovery to claimants. For the purpose of allocation, Lead Plaintiffs engaged Forensic Economics, Inc. to consult in drafting the plan to allocate the settlement proceeds among claimants, and to provide an opinion on whether the Plan of Allocation is fair and reasonable. The Declaration of Howard J. Mulcahey ("Mulcahey Decl."), attached as Ex. D to the Joint Decl., explains the methods used to determine the Recognized Losses and the basis for the analysis. As explained in the Class Notice, a "Recognized Loss" will be calculated for each purchase or acquisition of IRF securities during the Class Period as reflected on the Claim Forms timely

submitted by Class Members.  The calculation of the Recognized Loss will depend upon several factors, including how many shares of the security were purchased, when and at what price the security was purchased or otherwise acquired, and when and at what price the security was sold.

Assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate.  *Omnivision,* 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).

The goal of an equitable plan of allocation is fairness to the class as a whole, taking into consideration the strengths of claims based upon available facts and evidence, as well as the size of the fund to be distributed.   A plan of allocation that allocates settlement funds to class members based on the extent of their injuries or the strength of their claims is reasonable.  *Omnivision,* 559 F. Supp. 2d at 1045; *see also Glass,* 331 Fed. Appx. at 454; *Mego Fin.*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly).

The proposed Plan of Allocation in this case is based on such principles and therefore falls within the mainstream of allocation plans routinely approved by courts.  It was prepared in consultation with Lead Plaintiffs' damages consultant, tracks the theory of damages asserted by Lead Plaintiffs, and is fair, reasonable and adequate to the Class as a whole.  *See* Mulcahey Decl. ¶3.  In addition, the proposed Plan of Allocation was adequately explained in the Notice sent to Class Members.  Notably, in response to over 208,000 Notices, as of the date of this filing, there have been no objections to the proposed Plan of Allocation, only seven

1    requests for exclusion, and approximately 7,500 claims submitted.  *See* Keough

2    Decl. ¶¶9, 13, 14.

3    **IV.**    <u>**CONCLUSION**</u>

4         For the foregoing reasons, Lead Plaintiffs respectfully request that the Court

5    grant final approval of the Settlement and Plan of Allocation.

6

7    Dated: January 19, 2010              Respectfully submitted,

8                                 BERNSTEIN LITOWITZ BERGER

9                                   & GROSSMANN LLP

10                        *   /s/ Blair A. Nicholas   *

11                           BLAIR A. NICHOLAS

12                        BLAIR A. NICHOLAS

13                        NIKI L. MENDOZA

                         BENJAMIN GALDSTON

14                        JON F. WORM

                         12481 High Bluff Drive, Suite 300

15                        San Diego, CA 92130

                         Tel:   (858) 793-0070

16                        Fax:   (858) 793-0323

17    Dated: January 19, 2010              BERMAN DeVALERIO

18

19                        *   /s/ Nicole Lavallee   *

                         NICOLE LAVALLEE

20

21                        JOSEPH J. TABACCO, JR.

                         NICOLE LAVALLEE

22                        KRISTIN J. MOODY

                         JULIE J. BAI

23                        One California Street, Suite 900

                         San Francisco, CA 94111

24                        Tel:   (415) 433-3200

                         Fax:   (415) 433-6382

25

26                        *Attorneys for Co-Lead Plaintiffs General*

27                        *Retirement System of the City of Detroit and*
                       *Massachusetts Laborers' Pension Fund*

28