BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS  (Bar No. 178428)
(blairn@blbglaw.com)
NIKI L. MENDOZA (Bar No. 214646)
(nikim@blbglaw.com)
BENJAMIN GALDSTON  (Bar No. 211114)
(beng@blbglaw.com)
JON F. WORM  (Bar No. 248260)
(jonw@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:  (858) 793-0323

BERMAN DeVALERIO
JOSEPH J. TABACCO, JR. (Bar No. 75484)
(jtabacco@bermandevalerio.com)
NICOLE LAVALLEE (Bar No. 165755)
(nlavallee@bermandevalerio.com)
KRISTIN J. MOODY (Bar No. 206326)
(kmoody@bermandevalio.com)
JULIE J. BAI (Bar No. 227047)
(jbai@bermandevalerio.com)
One California Street, Suite 900
San Francisco, CA 94111
Tel:   (415) 433-3200
Fax:  (415) 433-6382

*Attorneys for Co-Lead Plaintiffs General Retirement System of the City of Detroit and Massachusetts Laborers' Pension Fund*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INTERNATIONAL RECTIFIER CORPORATION SECURITIES LITIGATION | Case No. CV 07-02544-JFW (VBKx) |
| | MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES |
| | Date: February 8, 2010<br>Time: 1:30 p.m.<br>Courtroom: 16 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................. ii

I.    INTRODUCTION ........................................................................1

II.   HISTORY OF THE LITIGATION .................................................3

III.  THE REQUESTED ATTORNEYS' FEES ARE
      FAIR AND REASONABLE ...........................................................5

      A.    A Reasonable Percentage Of The Fund
            Recovered Is An Appropriate Approach To
            Awarding Attorneys' Fees In Common Fund
            Cases .........................................................................5

      B.    A Fee Of 25% Is Reasonable .........................................7

      C.    Consideration Of The Relevant Factors
            Used By Courts In The Ninth Circuit
            Justifies A Fee Award Of 25% ........................................7

            1.    The Results Achieved ............................................8

            2.    Risks Of Litigation ...............................................8

            3.    The Skill Required And Quality Of
                  The Work Performed ...........................................10

            4.    The Contingent Nature Of The Fee
                  And The Financial Burden Carried By
                  Counsel ............................................................12

            5.    Awards Made In Similar Cases .............................13

            6.    Reaction Of The Class Supports The
                  Fees And Expenses Sought ...................................15

            7.    The Lodestar Crosscheck Confirms
                  The Reasonableness Of The
                  Requested Fee ...................................................16

IV.   LEAD COUNSEL'S EXPENSES ARE
      REASONABLE AND WERE NECESSARILY
      INCURRED TO ACHIEVE THE BENEFIT
      OBTAINED FOR THE CLASS .....................................................18

V.    CONCLUSION ...........................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989).................................................6, 13

*In re Apollo Group, Inc. Sec. Litig.*,
    2008 WL 3072731 (D. Ariz. Aug 4, 2008) ........................................13

*In re Bisys Sec. Litig.*,
    2007 WL 2049726 (S.D.N.Y. July 16, 2007).....................................18

*Blum v. Stenson*,
    465 U.S. 886 (1984)..........................................................................15

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...........................................................20

*In re CV Therapeutics, Inc. Sec. Litig.*,
    2007 WL 1033478 (N.D. Cal. Apr. 4, 2007).....................................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ..................................12

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) .................................................11

*Gerstein v. Micron Tech. Inc.*,
    1993 U.S. Dist. LEXIS 21215 (D. Idaho Sept. 10, 1993) ...................6

*Glass v. UBS Finan. Servs., Inc.*,
    331 Fed. Appx. 452 (9th Cir. 2009)................................................5, 7

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ...........................................................20

*Gottlieb v. Wiles*,
    150 F.R.D. 174 (D. Colo. 1993) .......................................................20

*Gustafson v. Valley Ins. Co.*,
    2004 WL 2260605 (D. Or. Oct. 6, 2004)...........................................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................7

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...................................................................19

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................8, 10

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ..........................................................14

*In re Immunex Sec. Litig.*,
  864 F. Supp. 142 (W.D. Wash. 1994) ..................................................16

*In re Informix Corp. Sec. Litig.*,
  1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999) ..................14

*In re Infospace, Inc.*,
  330 F. Supp. 2d 1203 (W.D. Wash. 2004) ...........................................17

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .......................................18

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ......................................13

*Keith v. Volpe*,
  501 F. Supp. 403 (C.D. Cal. 1980) .......................................................17

*In re KeySpan Corp. Sec. Litig.*,
  2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) .......................................9

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ..........................................................6, 15

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..............................14, 15, 16

*Kurzweil v. Philip Morris Cos., Inc.*,
  1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) .......................................17

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973) .................................................................17

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) .................................................................17

*In re Lucent Tech., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ........................................................17

*In re M.D.C. Holdings Sec. Litig.*,
    1990 WL 454747 (S.D. Cal. Aug. 30, 1990) .........................................15

*Maley v. Del Global Technologies Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................17

*In re Medical X-Ray Film Antitrust Litig.*,
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ...........................................17

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................19

*In re NASDAQ Market-Makers Anti-Trust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................passim

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .............................................................2, 5

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
    1984 WL 21981 (N.D. Ill. Sept. 14, 1984) ...........................................15

*In re Pub. Service Co. of New Mexico*,
    1992 WL 278452 (S.D. Cal. July 28, 1992) ..........................................15

*Rabin v. Concord Assets Group, Inc.*,
    1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) .........................................17

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................................17

*In re RJR Nabisco, Inc. Sec. Litig.*,
    1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .........................................14

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...............................................................5

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) .....................................................18

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .................................................................14

*Thornberry v. Delta Air Lines, Inc.*,
    676 F.2d 1240 (9th Cir. 1982), *vacated and remanded on other grounds*,
    461 U.S. 952 (1983)................................................................................20

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .....................................................................5

*In re United States Bioscience Sec. Litig.*,
    155 F.R.D. 116 (E.D. Pa. 1994)..............................................................15

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ........................................................17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..........................................................passim

*In re Warner Communc'ns Sec. Litig.*,
    618 F. Supp. 735 (D.C.N.Y. 1985) ........................................................17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ...........................................8, 12, 16, 17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................18

*In re WorldCom, Inc. Sec. Litig.*,
    2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)........................................17

**OTHER AUTHORITIES**

15 U.S.C § 78u-4(a)(6) ...................................................................................7

Ronald I. Miller, et al.,
    *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*, at 4 (NERA Apr. 2006) ...........................9

# I.   **INTRODUCTION**

Lead Counsel succeeded in reaching a Settlement with Defendants in this securities fraud class action for $90 million in cash.[1]  The substantial monetary recovery obtained for the Class was achieved only after over two years of hard-found litigation and just six months prior to trial, through the skill, work, tenacity, and effective advocacy of plaintiffs' Lead Counsel.   As detailed in the accompanying Joint Declaration of Lead Counsel,[2] Lead Counsel's efforts included:  (i) conducting an extensive pre-filing investigation; (ii) locating and interviewing numerous former IRF employees and additional witnesses; (iii) completing an extensive review and analysis of IRF's Securities and Exchange Commission ("SEC") filings and other documents related to the alleged false and misleading statements as alleged in the Complaint, including analyst reports and press releases; (iv) preparing and filing the detailed amended consolidated complaint and the Second Amended Complaint; (v) opposing Defendants' successive motions to dismiss; (vi) retaining and consulting with experts; (vii) reviewing and analyzing over 2.6 million pages of documents produced by

---

[1] Defendants include International Rectifier Corporation ("IRF" or the "Company"), Alexander Lidow ("Alex Lidow"), Eric Lidow, and Michael P. McGee ("McGee").   Pursuant to the Court's Order Preliminarily Approving Settlement And Providing For Notice filed September 25, 2009 ("Preliminary Approval Order"), the Class is defined as follows:  all persons or entities who purchased or acquired the publicly traded securities of IRF from July 31, 2003 through February 11, 2008, inclusive, and who suffered damages as a result. Defendants and certain other individuals, as well as those who opt out of the Settlement, are excluded from the Class.  All terms not otherwise defined herein shall have the meaning given them in the Stipulation of Settlement ("Stipulation") dated September 22, 2009, and previously filed with the Court (Docket No. 290-1).

[2] "Joint Declaration" or "Joint Decl." refers to the Joint Declaration of Blair A. Nicholas and Nicole Lavallee In Support Of Motion For Final Approval Of Settlement And Plan Of Allocation, And Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses, submitted herewith.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

Defendants and third parties; (viii) briefing class certification and participating in depositions related thereto; (ix) preparing for numerous merits and expert depositions; and (x) preparing for and participating in an in-person mediation session and subsequent settlement discussions before an experienced mediator. *See* Joint Decl. ¶¶27-84; *see also* Declaration Of Layn R. Phillips ("Phillips Decl."), attached as Exhibit ("Ex.") B to the Joint Decl.

Lead Counsel undertook the prosecution of this action on an entirely contingent basis.   As compensation for the efforts expended to achieve the recovery for the Class, Lead Counsel is applying for fees constituting 25% of the Settlement Fund, and for reimbursement of $680,339.03 in out-of-pocket expenses. The percentage fee requested was agreed to and approved by Lead Plaintiffs, both sophisticated institutional investor with experience in prosecuting securities class actions under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* Joint Declaration Of Walter Stampor And Barry C. McAnarney In Support Of Class Action Settlement ("Lead Plaintiffs Decl."), ¶¶15-18, attached as Ex. A to the Joint Decl.

Furthermore, the requested fee percentage is equal to the 25% benchmark established by the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989)).  In addition, a lodestar cross-check affirms the reasonableness of the requested fee award.   Lead Counsel devoted substantial resources to prosecuting this action for years, spending over 25,846.30 hours for a total lodestar of $9,502,492.25.  *See* Joint Decl. Exs. E and F.

The reaction from Class Members further supports Lead Counsel's request for attorneys' fees and expenses.   Beginning on October 9, 2009, the Court-approved Class Notice was sent to over 208,000 Class Members and informed them of Lead Counsel's proposed fee application. *See* Declaration Of Jennifer M.

1  Keough Regarding Notice And Claims Administration ("Keough Decl."), ¶¶3-9,

2  attached as Ex. C to the Joint Decl.

3      The deadline for Class Members to object to the Settlement and/or Lead

4  Counsel's fee application, or to seek exclusion from the Class, expires on

5  January 25, 2010.   To date, not a single Class Member has objected, and only

6  seven requests for exclusion have been received.[3]   Moreover, although the deadline

7  for submitting claim forms does not expire until February 6, 2010, already the

8  claims administrator has received approximately 7,500 claims representing a total

9  of approximately 77 million shares.   *Id.* ¶14.

10 ## II.   HISTORY OF THE LITIGATION

11     A detailed description of the procedural history of the litigation, the

12 investigation and discovery undertaken, the negotiation and substance of the

13 Settlement, and the substantial risks and uncertainties of the litigation is contained

14 in the accompanying Joint Declaration.   A summary description is provided below.

15     Beginning on or about April 17, 2007, plaintiffs filed class actions against

16 Defendants and others in the Central District of California (case numbers: 07-cv-

17 02544 JFW (VBKx); 07-cv-03123 JFW (PJWx)).   The complaints alleged, among

18 other things, that defendants made false statements and omissions concerning

19 IRF's reported financial results, gross margins, sales and business conditions.   By

20 Order dated May 17, 2007, this Court consolidated the actions then before it and

21 all related actions subsequently filed.   [Docket No. 6].   On July 23, 2007, this

22 Court appointed General Retirement System of the City of Detroit and

23

24 ───────────────

25 [3]  *Id.* ¶13.   As stated in the Keough Declaration, as of the execution of that

26 Declaration, six exclusion requests had been received.   An additional exclusion
   request by an individual was received following execution of the Keough

27 Declaration, resulting in seven total exclusion requests to date.   Those seeking
   exclusion will also be listed in Ex. 1 to the Proposed Judgment which will be

28 submitted to the Court following expiration of the deadline for seeking exclusion.

Massachusetts Laborers' Pension Fund as Lead Plaintiffs, and Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio as Lead Counsel ("Lead Counsel").  [Docket No. 34].

On January 14, 2008, Lead Plaintiffs filed a first amended consolidated class action complaint ("First Amended Complaint") asserting claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 against Defendants and others. [Docket No. 55].  Defendants moved to dismiss, and on May 23, 2008, the Court dismissed the First Amended Complaint without prejudice.  [Docket No. 108].

On October 17, 2008, Lead Plaintiffs filed a second amended consolidated complaint ("Second Amended Complaint") asserting claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 against Defendants and Robert Grant. [Docket No. 140].  Defendants again moved to dismiss.  On December 31, 2008, the Court granted in part and denied in part the motions to dismiss the Second Amended Complaint, dismissing claims against Robert Grant with prejudice. [Docket No. 194].  Defendants answered the Second Amended Complaint on January 15, 2009.  [Docket Nos. 203, 205, 207, 208].

During the course of the litigation, Lead Plaintiffs and Defendants conducted extensive discovery, including the review by Lead Plaintiffs of more than 2.6 million documents produced by Defendants and third parties, and the depositions of the Lead Plaintiffs and three of the Lead Plaintiffs' investment advisors. Further, Lead Plaintiffs had noticed more than 20 witness depositions to be completed before the close of discovery, and worked closely with several experts. Additionally, Lead Plaintiffs moved to compel production from IRF, and IRF moved for protective orders.  *See* Joint Decl. ¶¶50-73.

On March 17, 2009, Lead Plaintiffs filed their motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  [Docket No. 217]. On June 29, 2009, Defendants filed their opposition to class certification.  [Docket Nos. 237, 241, 242, 243].

On April 30, 2009, Lead Plaintiffs, Defendants, and Defendants' insurance carriers participated in a mediation session with Judge Phillips in Newport Beach, California. The parties reached an impasse during the in-person mediation, however, and did not agree to a settlement. *See* Phillips Decl. ¶¶3-5.

Following the in-person mediation, Judge Phillips continued mediation discussions with the parties and insurance carriers in an effort to negotiate a settlement. On July 29, 2009, after considerable additional negotiations supervised by Judge Phillips, and just six months prior to the Court's scheduled trial date, the parties agreed to a proposed settlement of the Consolidated Action for $90 million in cash to be paid by IRF and its insurance carriers. *See* Joint Decl. ¶¶6-8.

Following this Court's issuance of the Preliminary Approval Order, on October 9, 2009, the Settlement Fund was deposited into an interest-bearing escrow account. *See* Joint Decl. ¶85.

## III. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A. A Reasonable Percentage Of The Fund Recovered Is An Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases

Lead Counsel seeks a reasonable percentage of the common fund recovered for the benefit of the Class. The Ninth Circuit has recently confirmed its approval of the percentage-of-recovery approach, and this approach has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit. *See Glass v. UBS Finan. Servs., Inc.,* 331 Fed. Appx. 452, 456-57 (9th Cir. 2009) (unpubl.) (affirming 25% fee award, overruling objection based on use of percentage-of-the-fund approach); *see also Paul, Johnson*, 886 F.2d at 268; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Vizcaino,*

290 F.3d 1043; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citations omitted).

The percentage method is desirable because it most fairly correlates the compensation of counsel with the benefit conferred upon the class.   *See Omnivision,* 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of using the percentage method).   First, it closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[4]   Second, the percentage method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.   *See Gerstein v. Micron Tech. Inc.,* 1993 U.S. Dist. LEXIS 21215, at *14 (D. Idaho Sept. 10, 1993) ("This court favors the percentage approach [in common fund cases] because it conserves scarce judicial resources by saving the court from having to make a series of largely judgmental decisions with respect to the actual fees claimed."); *see also In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989).   It is also consistent with the practice in the private marketplace

---

[4]   The court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), identified the aligning of lawyers' and clients' interest as among the merits of the percentage approach:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.   The lawyer gains only to the extent his client gains . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours.   Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants...

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

1    where contingent-fee attorneys are customarily compensated by a percentage of the

2    recovery, and with the PSLRA's mandate that attorneys' fees "shall not exceed a

3    ***reasonable percentage***" of the class recovery.  15 U.S.C § 78u-4(a)(6) (emphasis

4    added).

5         **B.     A Fee Of 25% Is Reasonable**

6         After the decision is made to apply the percentage method of fee

7    determination, courts must determine what percentage to apply.  The Ninth Circuit

8    has recognized 25% of the settlement amount as the appropriate benchmark for

9    attorneys' fees awarded under the percentage method.  *See, e.g., Glass,* 331 Fed.

10   Appx. at 457; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)

11   (referring to 25% in attorneys' fees as a "benchmark award")).

12        Here, in view of, among other circumstances, the litigation risks faced; the

13   result achieved; the skill required and the quality of the representation; the

14   endorsement of the fee by the sophisticated institutional Lead Plaintiffs; and the

15   support of the Class, an award of 25% of the Settlement Fund is eminently

16   justified.

17        **C.     Consideration Of The Relevant
                   Factors Used By Courts In The Ninth
18                 Circuit Justifies A Fee Award Of 25%**

19        The ultimate task for this Court in awarding attorneys' fees is to ensure that

20   Lead Counsel is fairly compensated for the work they performed and the results

21   they achieved.  Courts in this Circuit consider the following factors:  (1) the results

22   achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4)

23   the contingent nature of the fee and financial burden carried by the plaintiffs; (5)

24   awards made in similar cases; (6) the reaction of the class to the proposed fee and

25   expense request; and (7) the amount of a lodestar cross-check.  *See Vizcaino,* 290

26   F.3d at 1048-50; *Omnivision,* 559 F. Supp. 2d at 1046-48.  As discussed below,

27   application of these factors here confirms that the 25% fee is justified.

28

### 1.   The Results Achieved

Lead Counsel has succeeded in obtaining a $90 million cash Settlement for the Class.   This achievement was the result of Lead Counsel's vigorous prosecution and settlement negotiations.   Class Members will receive immediate compensation for their losses due to federal securities laws violations by Defendants.   The immediate Settlement will avoid the substantial risks of lesser or no recovery due to the defenses to liability and limitations on the recoverable damages.

Courts have consistently recognized that the settlement achieved is a major and perhaps the most important factor to be considered in determining an appropriate fee award.   *See Omnivision,* 559 F. Supp. 2d at 1046 (citation omitted).

As detailed in the Joint Declaration and discussed below, Lead Plaintiffs faced numerous obstacles in this litigation.   The expense and length of continued proceedings necessary to prosecute the action through dispositive motions, further discovery, trial and appeals would be substantial.   Lead Plaintiffs, aided by Lead Counsel, carefully considered the likelihood of success against Defendants, the potential total damages that could be recovered against Defendants, as well as the uncertain outcome and risk of any litigation, especially in complex actions such as this, and the difficulties and delays inherent in such litigation.   *See* Joint Decl. ¶¶78-81.   Particularly in light of these circumstances, the amount obtained is a substantial achievement on behalf of the Class, and weighs in favor of granting the requested 25% fee.

### 2.   Risks Of Litigation

Risk that further litigation might result in plaintiffs not recovering at all is an important factor in determining a fair fee award.   *See, e.g., Omnivision,* 559 F. Supp. 2d at 1047; *In re Washington Pub. Power Supply Sys. Sec. Litig.,* *("WPPSS"),* 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *see also In re Heritage Bond Litig.,* 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks

1  assumed by Class Counsel, particularly the risk of non-payment or reimbursement

2  of expenses, is a factor in determining counsel's proper fee award.").

3      While courts have always recognized that securities class actions carry

4  significant risks, post-PSLRA rulings make it clear that the risk of no recovery has

5  increased exponentially.  Courts have noted that "securities actions have become

6  more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon*

7  *Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000).  According

8  to an April 2006 NERA study, dismissal rates have doubled since the PSLRA,

9  accounting for 40.3% of dispositions.  *See* Ronald I. Miller, et al., *Recent Trends in*

10  *Shareholder Class Action Litigation:  Beyond the Mega-Settlements, is*

11  *Stabilization Ahead?*, at 4 (NERA Apr. 2006).

12      In this action, Lead Counsel, like the Class Members, faced the substantial

13  risk of lesser or no recovery.  The Court granted Defendants' first round of motions

14  to dismiss, and granted in part and denied in part Defendants' second round of

15  motions to dismiss.  Myriad risks remained in this case.  Defendants argued

16  throughout the litigation that Lead Plaintiffs would be unable to prove that

17  Defendants' statements were false or that they were made with scienter.  In

18  particular, Defendants contended that proving the scienter of IRF would require

19  Lead Plaintiffs to demonstrate that either Alex Lidow or McGee acted with the

20  requisite state of mind.  Defendants also argued that the Class Period should be

21  shortened, which could have significantly reduced recoverable damages.

22  Defendants undoubtedly would have continued to argue that their statements were

23  not false and they lacked scienter.  While Lead Plaintiffs believe that their case is

24  meritorious and that they have strong evidence, if the Court at summary judgment

25  or trier of fact at trial agreed with Defendants, any recovery could have been

26  substantially reduced or eliminated altogether.  *See* Joint Decl. ¶¶78-81.

27      In the face of these risks, Lead Counsel achieved a $90 million recovery for

28  the Class.  Under these circumstances, the requested fee is fully justified.

### 3.   The Skill Required And Quality Of The Work Performed

The third factor to consider in determining what fee to award is the skill required and quality of work performed.  *Gustafson v. Valley Ins. Co.,* 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004).  "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' [citation omitted].  This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision,* 559 F. Supp. 2d at 1047; *see also Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award.").

Here, the attorneys at Bernstein Litowitz Berger & Grossmann ("BLB&G") and Berman DeValerio ("Berman DeValerio") are among the most experienced and skilled practitioners in the securities litigation field, and the firms have long and successful track records in such cases.[5]   From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class.  Lead Counsel demonstrated that they would work to develop sufficient evidence to support a convincing case.  As detailed in the Joint Declaration, through Lead Counsel's persistent and skillful work, Lead Plaintiffs were able to plead detailed allegations based on their investigation, and largely defeat Defendants' motions to dismiss.  *See* Joint Decl. ¶¶33-48.

---

[5] *See* Firm Resumes of BLB&G and Berman DeValerio, attached, respectively, as Ex. 5 to the Declaration Of Blair A. Nicholas In Support Of Lead Counsel's Application For Attorneys' Fees And Reimbursement Of Litigation Expenses On Behalf Of BLB&G ("Nicholas Decl.," Ex. E to Joint Decl.), and Ex. 3 to the Declaration Of Nicole Lavallee In Support Of Lead Counsel's Application For Attorneys' Fees And Reimbursement Of Litigation Expenses On Behalf Of Berman DeValerio (Ex. F to Joint Decl.).

1     Lead Counsel also successfully obtained and reviewed voluminous

2  documents from Defendants and third parties during discovery, noticed and

3  prepared for numerous depositions, and filed a motion for class certification and

4  supporting documents and participated in related depositions.  Lead Counsel's skill

5  and experience was also key in communicating with the experts it necessarily

6  retained in this complicated securities class action.  *See* Joint Decl. ¶¶50-77.  Lead

7  Counsel accomplished this high quality work under an expedited pretrial schedule

8  set by the Court.

9     The fact that Lead Counsel has demonstrated a willingness and ability to

10  prosecute complex cases such as this throughout trial and appeals was undoubtedly

11  a factor that encouraged Defendants to engage in settlement discussions, and added

12  valuable leverage in the negotiations, ultimately resulting in the recovery for the

13  Class.  *See* Joint Decl. ¶103.

14     As a result of Lead Counsel's skill and efforts, by the time the Settlement

15  negotiations began, Lead Counsel and Lead Plaintiffs had a thorough

16  understanding of the strengths and weaknesses of the claims asserted in the case.

17  Lead Counsel engaged in hard-found and protracted settlement negotiations.

18  Although the in-person mediation with Defendants under the auspices of Judge

19  Phillips, a retired federal judge and experienced mediator, failed to bring about an

20  agreement, the parties thereafter engaged in further negotiation, under the

21  supervision of Judge Phillips, and Lead Counsel eventually achieved the

22  settlement.  *See* Phillips Decl. ¶¶3-7.  Lead Counsel's extensive efforts and skill

23  leading to the settlement strongly support the requested percentage fee.

24     The quality and vigor of opposing counsel is also important in evaluating the

25  services rendered by Lead Counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec.*

26  *Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Here, Defendants have been

27  represented by experienced counsel from prominent law firms with substantial

28  experience in this type of litigation:  IRF by Sheppard, Mullin, Richter & Hampton

LLP, and Defendants Alex Lidow, Eric Lidow and Michael P. McGee by Sullivan & Cromwell LLP, Latham & Watkins, and Gibson Dunn & Crutcher LLP, respectively.  The fact that Lead Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work.

### 4.     The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.[6]

Here, Lead Counsel received no compensation during the course of this action and invested $9,502,492.25 in time, and incurred expenses (totaling $680,339.03) in obtaining the Settlement for the benefit of the Class.  *See* Joint Decl. ¶¶107, 111.  Additional work in connection with the Settlement and claims administration will also be required.  In addition to the advancement of costs, lawyers working on the case have forgone the business opportunity to devote time

---

[6] *WPPSS*, 19 F.3d at 1299; *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007) ("Plaintiffs' counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation."); *see also Omnivision,* 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.") (citations omitted).

to other cases.  *See Vizcaino*, 290 F.3d at 1050.  Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

Indeed, the risk of no recovery in complex cases is very real.  Lead Counsel knows from personal experience that, despite the most vigorous and competent efforts, their success in contingent litigation such as this is never guaranteed.  The commencement of a class action is no guarantee of success.  These cases are not always settled, nor are plaintiffs' lawyers always successful.[7]  Hard, diligent work by skilled counsel is required to develop facts and theories to prosecute a case or persuade defendants to settle on terms favorable to the Class.

## 5.   Awards Made In Similar Cases

Lead Counsel seeks a fee equal to the Ninth Circuit's 25% benchmark for common fund cases.  "However, in most common fund cases, the award exceeds that benchmark."  *Omnivision,* 559 F. Supp. 2d at 1047 (approving 28% fee award in securities class action) (citing *Activision,* 723 F. Supp. at 1377-78 (surveying securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%")); *see also In re THQ, Inc. Sec. Litig.,* Master File No. CV-00-01783 (C.D. Cal.) (Walter, J.), Order Awarding Lead Counsel's Attorneys' Fees And Reimbursement Of Expenses filed June 30, 2003, Docket No. 128 (granting fees equaling 30% of the settlement amount in a securities class action); *In re CV Therapeutics, Inc. Sec. Litig.,* 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) (approving 30% fee award in

---

[7]  Indeed, the accompanying Motion For Final Approval Of Settlement And Plan Of Allocation describes two recent cases where plaintiffs' class counsel has either lost at trial (and was forced to pay all of defendants' costs) or won at trial only to have a substantial judgment overturned through post-trial motions.  *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) and *In re Apollo Group, Inc. Sec. Litig.*, Slip Copy, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008).

securities class action); *In re Informix Corp. Sec. Litig.,* 1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of $132 million settlement fund in securities class action); *see also Silva v. Banco Popular North America,* Case No. CV 08-06300 (C.D. Cal.) (Walter, J.), Order Granting Final Approval Of Settlement And Awarding Fees And Costs filed June 22, 2009, Docket No. 42 (granting fees equaling 28% of the class settlement fund); *Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (approving 30% fee award).

In addition, many courts weigh the customary fee in the marketplace for non-class action contingency cases as a significant measure in approving fees. *See e.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern such [fee]awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases"); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services . . . .").

Although the Ninth Circuit has not adopted the marketplace analogy as a factor to consider in setting fees in class actions, the Circuit expressly recognized it as at least "probative" of what fee is reasonable. *Vizcaino*, 290 F.3d at 1049. If this was a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.[8]

---

[8] *See, e.g., Ikon*, 194 F.R.D. at 194 ("in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

Lead Counsel's work was performed, and the results achieved, on a wholly contingent basis in the face of determined opposition.  Under these circumstances, it necessarily follows that Lead Counsel is entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained.  Under all of the circumstances present here, a 25% fee is fair and reasonable.

### 6.   Reaction Of The Class Supports The Fees And Expenses Sought

The reaction of the class to a proposed settlement and fee request is a significant factor in approving fees.  *See Red Door Salons,* 2009 WL 248367, at *7; *Omnivision,* 559 F. Supp. 2d at 1048.  Here, beginning on October 9, 2009, the Notice was sent to over 208,000 potential Class Members and the Publication Notice ("Summary Notice") was published in the *Investor's Business Daily* on October 20, 2009.  *See* Keough Decl. ¶¶9-10.  The Court-approved Notice (attached as Ex. A to the Keough Decl.) informed Class Members that Lead Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund plus

---

between thirty and forty percent of any recovery"); *accord Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (concurring opinion); *In re United States Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action); *see also Kirchoff*, 786 F.2d at 323 (observing that 40% is the customary fee in tort litigation); *In re Pub. Service Co. of New Mexico*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992); ("[i]f this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery"); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("[i]n private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984) ("[t]he percentages agreed on [in non-class-action damage lawsuits] vary, with one-third being particularly common").

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

interest at the same rate and for the same period as earned by the Settlement Fund. The Notice further advised Class Members of their right to opt out of the Settlement or to object to the Settlement, the Plan of Allocation or the request for attorneys' fees and expenses.   The deadline for submitting any objections or exclusion requests will expire on January 25, 2010.  To date, no Class Member has objected, and only seven exclusion requests have been received.  *Id.* ¶13.   In addition, although the claims deadline does not expire until February 6, 2010, already approximately 7,500 claims, representing approximately 77 million shares, have been submitted.  *Id.* ¶14.  This factor further supports the requested award of 25% of the Settlement Fund.  *See Silva v. Banco Popular North America,* Case No. CV 08-06300 (C.D. Cal.) (Walter, J.), Order Granting Final Approval Of Settlement And Awarding Fees And Costs filed June 22, 2009, Docket No. 29 (awarding 28% based in part on no objections); *Red Door Salons,* 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision,* 559 F. Supp. 2d at 1048 (only three objections supports 28% award).

### 7.   The Lodestar Crosscheck Confirms The Reasonableness Of The Requested Fee

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common-fund cases, courts may use a lodestar analysis "as a cross-check on the percentage method."  *See Vizcaino*, 142 F. Supp. 2d at 1302; *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 144 (W.D. Wash. 1994); *WPPSS*, 19 F.3d at 1296-98.   Here, such a "cross-check" confirms that the requested fee amount is reasonable.

In *Vizcaino,* the Ninth Circuit noted that

"courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." . . .  In common fund cases, "attorneys whose compensation depends on their winning the

case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'"

290 F.3d at 1051 (quoting *WPPSS*, 19 F.3d at 1300-01).

There, the Ninth Circuit affirmed a fee awarded in this District that equaled 28% of the settlement fund and a multiplier of 3.65.[9]  Indeed, in cases applying the lodestar method, fee "'multipliers of between 3 and 4.5 have been common.'"[10]

_____

[9]   Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work. *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), *subsequently refined in Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*).  Courts are encouraged to award a multiplier because calculation of the lodestar is "simply the beginning of the analysis."  *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (quoting *In re Warner Communc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (D.C.N.Y. 1985).

[10]   *Rabin v. Concord Assets Group, Inc.,* 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4) (citation omitted); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *see also Keith v. Volpe,* 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *In re Brocade Sec. Litig.*, No. 05-CV-2042-CRB, Final Order and Judgment, at 13 (N.D. Cal. Jan. 26, 2009) (Docket No. 496) (awarding 25% of $160 million settlement fund, resulting in a 3.5 multiplier); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203 (W.D. Wash. 2004) (awarding multiplier of 3.5 on a $34.4 million settlement fund); *see also In re NASDAQ Market-Makers Anti-Trust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding a 3.97 multiplier on a $1.0 billion settlement and finding fee awards of 3 to 4.5 to be "common"); *see also In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *17 (S.D.N.Y. Nov. 12, 2004) (multiplier of 2.46); *In re Lucent Tech., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004); *Kurzweil v. Philip Morris Cos., Inc.*, 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (recognizing that multipliers of between 3 and 4.5 are common in federal securities cases); *Wal-Mart Stores, Inc. v. VISA USA, Inc.*, 396 F.3d 96 (2d Cir. 2005) (affirming fee award equaling a 3.5 multiplier); *Maley v.*

Here, Lead Counsel's lodestar is $9,502,492.25. *See* Joint Decl. ¶107. Thus, Lead Counsel's request for an award of $22.5 million, amounts to a multiplier of less than 2.4. Courts have routinely held that much larger positive multipliers are fair and reasonable. *See, e.g., Vizcaino,* 290 F.3d 1043 (affirming fee award equaling 28% of the settlement fund, resulting in a 3.65 multiplier); *see also supra note* 10. Further, Lead Counsel's lodestar does not account for the additional time that will be required of Lead Counsel to participate in the final approval process and to oversee the claims administration process and the distribution of the net settlement funds to eligible claimants.

## IV.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

Lead Counsel also requests that the Court grant its application for $680,339.03 to reimburse costs in connection with the prosecution of this litigation.[11] The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See,*

---

*Del Global Technologies Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 33 1/3% of the common fund, equaling a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (approving fee representing multiplier of 3.96 times lodestar and noting that "[I]n recent years multipliers of between 3 and 4.5 have been common in federal securities cases.") (quoting *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)) (27.5% fee of $116.6 million settlement fund, equaling a 2.5 multiplier)); *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005 (approving fee award equaling 4.0 multiplier); *In re Bisys Sec. Litig.,* 2007 WL 2049726 (S.D.N.Y. July 16, 2007) (approving fee award of 30%, equaling 2.99 multiplier).

[11]  *See* Joint Decl. ¶111. For a summary of all requested expenses, see Ex. 2 to the Nicholas Decl.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

1  *e.g., Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their
2  reasonable expenses that would typically be billed to paying clients in non-
3  contingency matters."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)
4  ("Harris may recover as part of the award of attorney's fees those out-of-pocket
5  expenses that 'would normally be charged to a fee paying client.'") (citations
6  omitted).

7      From the beginning of the case, Lead Counsel was aware that they might not
8  recover any of their expenses, and, at the very least, would not recover anything
9  until the action was successfully resolved.   Lead Counsel also understood that,
10 even assuming that the case was ultimately successful, an award of expenses would
11 not compensate them for the lost use of the funds advanced to prosecute this
12 action.   Thus, Lead Counsel was motivated to, and did, take significant steps to
13 minimize expenses whenever practicable without jeopardizing the vigorous and
14 efficient prosecution of the action.  *See* Joint Decl. ¶110.

15     The expenses which Lead Counsel seek are the type of expenses routinely
16 charged to hourly paying clients.   For example, a large portion of the litigation
17 expenses for which reimbursement is sought were incurred for professional expert
18 fees.   Of the total amount of expenses, $449,914.56, or over 66%, was expended
19 on investigators and experts in the areas of liability, loss causation, market
20 efficiency, damages, and to assist with the Plan of Allocation.   The expertise and
21 assistance provided by these investigators and experts was critical to the
22 prosecution and successful resolution of this action.  *See* Joint Decl. ¶112.

23     The expenses also include the costs of on-line legal and factual research in
24 the total amount of $76,737.64.  *See* Joint Decl. ¶113.   These are the charges for
25 computerized factual and legal research services such as *Lexis-Nexis* and *Westlaw*.
26 It is standard practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them
27 in researching legal and factual issues.  *See In re Media Vision Tech. Sec. Litig.*,
28 913 F. Supp. 1362, 1371 (N.D. Cal. 1996).   Indeed, courts recognize that these

1  tools create efficiencies in litigation and, ultimately, save clients and the class
2  money.  *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).  In
3  approving expenses for computerized research, the court in *Gottlieb v. Wiles*
4  underscored the time-saving attributes of computerized research as a reason
5  reimbursement should be encouraged.  150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd*
6  *and remanded on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir.
7  1994).

8      Further, Lead Counsel were required to travel in connection with
9  prosecuting and mediating this matter and, thus, incurred the related costs of travel
10 tickets, meals, and lodging.  Included in the expense request is $26,346.77 for out-
11 of-town travel expenses necessarily incurred for the prosecution of this Litigation.
12 *See* Joint Decl. ¶114.  The expenses in this category are reasonable in amount, and
13 are properly charged against the fund created.  The other expenses for which
14 reimbursement is sought are the types of expenses that are necessarily incurred in
15 litigation and routinely charged to clients billed by the hour.  These expenses
16 include, among others, long distance telephone and facsimile charges, postage and
17 delivery expenses, filing fees, photocopying, and document/litigation support.[12]

18      And finally, the Court-approved Notice provided to potential Class Members
19 informed them that Lead Counsel intends to apply for the reimbursement of
20 litigation expenses in an amount not to exceed $1 million, plus interest at the same

23 [12]  *Id.*; *see Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir.
24 1982), *vacated and remanded on other grounds*, 461 U.S. 952 (1983); *see also Red*
25 *Door Salon,* 2009 WL 248367, at *7 (approving of expenses relating to "online
legal research, travel, postage and messenger services, phone and fax charges,
26 copying, court costs, and the costs of travel"); *Omnivision,* 559 F. Supp. 2d at 1048
27 (approving of expenses relating to "photocopying, printing, postage and messenger
services, court costs, legal research on Lexis and Westlaw, experts and consultants,
28 and the costs of travel for various attorneys and their staff throughout the case").

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 07-02544-JFW (VBKx)

rate and for the same time period as earned by the Settlement Fund.[13] The amount of expenses now sought – $680,339.03 – is *less* than the amount included in the Notice. The deadline for objecting to the fee and expense application or opting out of the Settlement expires on January 25, 2010. To date, no Class Member has objected, and only seven requests for exclusion have been received. *See* Keough Decl. ¶13.

## V. **CONCLUSION**

From the beginning of this litigation, Lead Plaintiffs have faced determined adversaries represented by experienced counsel. With no assurance of success, Lead Plaintiffs and Lead Counsel pursued the action, and successfully obtained a $90 million cash Settlement. The Settlement reflects Lead Counsel's efforts in the face of significant risk, and under an accelerated pretrial schedule. Accordingly, Lead Counsel respectfully submits that the Court should approve the fee and expense application and award Lead Counsel 25% of the Settlement Fund, or $22,500,000 in fees, plus interest at the rate accrued by the Settlement Fund, and $680,339.03 in expenses, plus interest at the rate accrued by the Settlement Fund.


Dated: January 19, 2010                  Respectfully submitted,

                                        BERNSTEIN LITOWITZ BERGER
                                          & GROSSMANN LLP


                                            */s/ Blair A. Nicholas*
                                        BLAIR A. NICHOLAS

                                        BLAIR A. NICHOLAS
                                        NIKI L. MENDOZA
                                        BENJAMIN GALDSTON
                                        JON F. WORM
                                        12481 High Bluff Drive, Suite 300
                                        San Diego, CA 92130

---

[13] Pursuant to the PSLRA, the Notice further informed Class Members that if the Court approves Lead Counsel's fee and expense application, the average cost per damaged share of common stock will be approximately $0.17.

Tel:   (858) 793-0070
Fax:   (858) 793-0323

Dated: January 19, 2010          BERMAN DeVALERIO


                                 */s/ Nicole Lavallee*
                                 NICOLE LAVALLEE

                                 JOSEPH J. TABACCO, JR.
                                 NICOLE LAVALLEE
                                 KRISTIN J. MOODY
                                 JULIE J. BAI
                                 One California Street, Suite 900
                                 San Francisco, CA 94111
                                 Tel:   (415) 433-3200
                                 Fax:   (415) 433-6382

                                 *Attorneys for Co-Lead Plaintiffs General
                                 Retirement System of the City of Detroit and
                                 Massachusetts Laborers' Pension Fund*